# Exhibit B

| 26SV00145 | MARVIN HAVEN V<br>ENTERTAINMENT PARTNERS, LLC,<br>ET AL | DOUGLAS STATE | AUTOMOBILE TORT |

## Case Information

| Case Initiation Date | Assigned Judge |
|---|---|
| 01/23/2026 | BRIAN K. FORTNER |

Why subscribe to PeachCourt+? Well, for one thing... you could get an automagic email alert when anyone files anything into this case. You don't have to come back here day after day after day just to check the docket. We'll take care of that for you. All you have to do is subscribe!

## Party Information

Plaintiff:

**HAVEN, MARVIN**

Defendants:

**ENTERTAINMENT PARTNERS, LLC,**

**ARMORED FILMS, LLC,**

**RITZI INC.,**

**DURHAM STUNTS, INC.,**

**MINX NATION PRODUCTIONS, INC.,**

**A & A WARD GROUP, INC.,**

**GROFFUNIT ACTION INC.,**

**PERFORMANCE STUNTS, LLC,**

**RITZI, STEVE**

**GEDDINGS, LEX**

**SKLOV, COREY**

**WARD, ANDREW**

**WADDLE, GREG**

**GROFF, JEF**

**ADAMS, KEITH**

## Attorney/Filer Information

**KILDAY, BLAKE L.**

**MASON, JONATHAN B**

Add to Cart

| Docket # | Document Type | Description | Filer | Filing Date | Source | ☐ |
|---|---|---|---|---|---|---|
| 1 | Petition | COMPLAINT FOR DAMAGES | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 2 | Rule 5.2 Certificate | RULE 5.2 CERTIFICATE OF SERVICE | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 3 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ENTERTAINMENT PARTNERS, LLC | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 4 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ANDREW WARD | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 5 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT GREG WADDLE | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 6 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT COREY SKLOV | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 7 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STEVE RITZI | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 8 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JEF GROFF | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 9 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LEX GEDDINGS | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 10 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT KEITH ADAMS | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 11 | Discovery | PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ARMORED FILMS, LLC | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 12 | Summons | SUMMONS FOR ENTERTAINMENT PARTNERS, LLC. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 13 | Summons | SUMMONS FOR ARMORED FILMS, LLC. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 14 | Summons | SUMMONS FOR RITZI INC.. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 15 | Summons | SUMMONS FOR DURHAM STUNTS, INC.. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 16 | Summons | SUMMONS FOR MINX NATION PRODUCTIONS, INC.. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 17 | Summons | SUMMONS FOR A & A WARD GROUP, INC.. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 18 | Summons | SUMMONS FOR GROFFUNIT ACTION INC.. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 19 | Summons | SUMMONS FOR PERFORMANCE STUNTS, LLC. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 20 | Summons | SUMMONS FOR RITZI, STEVE. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 21 | Summons | SUMMONS FOR GEDDINGS, LEX. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |

| 22 | Summons | SUMMONS FOR SKLOV, COREY. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 23 | Summons | SUMMONS FOR WARD, ANDREW. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 24 | Summons | SUMMONS FOR WADDLE, GREG. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 25 | Summons | SUMMONS FOR GROFF, JEF. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 26 | Summons | SUMMONS FOR ADAMS, KEITH. | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 27 | Case Information Form | FORM CIVIL CASE FILING | Kilday, Blake | 01/23/2026 | EFile: PeachCourt | ☐ |
| 28 | Sheriff's Entry Of Service | TO SHERIFF SHERIFF ENTRY OF SERV ENTERTAINMENT PARTNERS LLC | | 01/28/2026 | Manual | |
| 29 | Sheriff's Entry Of Service | TO SHERIFF SHERIFF ENTRY OF SERV FOR ARMORED FILMS LLC | | 01/28/2026 | Manual | |
| 30 | Sheriff's Entry Of Service | TO SHERIFF SHERIFF ENTRY OF SERV STEVE RITZI | | 01/28/2026 | Manual | |
| 31 | Sheriff's Entry Of Service | TO SHERIFF SHERIFF ENTRY OF SERV LEX GEDDINGS | | 01/28/2026 | Manual | |
| 32 | Sheriff's Entry Of Service | TO SHERIFF SHERIFF ENTRY OF SERV FOR WADDLE GREG | | 01/28/2026 | Manual | |
| 33 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- ENTERTAINMENT PARTNERS LLC 01/29/26 | Kilday, Blake | 02/03/2026 | EFile: PeachCourt | ☐ |
| 34 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- RITZI INC 2/3/26 | Kilday, Blake | 02/05/2026 | EFile: PeachCourt | ☐ |
| 35 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- STEVE RITZI 2/3/26 | Kilday, Blake | 02/05/2026 | EFile: PeachCourt | ☐ |
| 36 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- ARMORED FILMS-LEGAL INC 2/3/26 | Kilday, Blake | 02/05/2026 | EFile: PeachCourt | ☐ |
| 37 | Leave Of Absence | LOA BLAKE KILDAY | Kilday, Blake | 02/06/2026 | EFile: PeachCourt | ☐ |
| 38 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- GREG WADDLE 2/4/26 | Kilday, Blake | 02/06/2026 | EFile: PeachCourt | ☐ |
| 39 | Miscellaneous | SHERIFF ENTRY OF SERV NON-EST. GOR GREG WADDLE | | 02/10/2026 | Manual | |
| 40 | Miscellaneous | SHERIFF ENTRY OF SERV NON-EST. FOR ENTERTAINMENT PARTNERS, LLC 02/09/2026 | | 02/10/2026 | Manual | |
| 41 | Miscellaneous | SHERIFF ENTRY OF SERV NON-EST. FOR LEX GEDDINGS 02/09/2026 | | 02/10/2026 | Manual | |
| 42 | Miscellaneous | SHERIFF ENTRY OF SERV NON-EST. FOR STEVE RITZI 02/09/2026 | | 02/10/2026 | Manual | |
| 43 | Miscellaneous | SHERIFF ENTRY OF SERV NON-EST. FOR ARMORED FILMS LLC 02/09/2026 | | 02/10/2026 | Manual | |
| 44 | Miscellaneous | SHERIFF ENTRY OF SERV NON-EST. FOR GREG WADDLE 02/09/2026 | | 02/10/2026 | Manual | |
| 45 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- GOFFUNIT ACTION INC 2/4/26 | Kilday, Blake | 02/11/2026 | EFile: PeachCourt | ☐ |
| 46 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- JEF GROFF 2/6/26 | Kilday, Blake | 02/11/2026 | EFile: PeachCourt | ☐ |
| 47 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- GROFFUNIT ACTION INC 2/3/26 | Kilday, Blake | 02/12/2026 | EFile: PeachCourt | ☐ |
| 48 | Affidavit | AFFIDAVIT NON-SERVICE LEX GEDDINGS | Kilday, Blake | 02/18/2026 | EFile: PeachCourt | ☐ |
| 49 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- DURHAM STUNTS 2/18/26 | Kilday, Blake | 02/23/2026 | EFile: PeachCourt | ☐ |
| 50 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- GROFFUNIT ACTION INC 2/4/26 | Kilday, Blake | 02/24/2026 | EFile: PeachCourt | ☐ |
| 51 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS | Kilday, Blake | 02/25/2026 | EFile: PeachCourt | |

| 51 | Affidavit | SERVER- LEX GEDDINGS 2/18/26 | Kilday, Blake | 02/25/2026 | EFile: PeachCourt | ☐ |
| 52 | Entry Of Appearance | NOTICE APPEARANCE OF COUNSEL | Barrett, Daniel F | 02/26/2026 | EFile: PeachCourt | ☐ |
| 53 | Complaint | STIPULATION EXTENS OF TIME TO FILE ANSWER, MORE, OR OTHERWISE RESPOND TO COMPLAINT THROUGH AND INCLUDING 3/16/26 | Barrett, Daniel F | 02/26/2026 | EFile: PeachCourt | ☐ |
| 54 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- ANDREW WARD 2/13/26 | Kilday, Blake | 03/03/2026 | EFile: PeachCourt | ☐ |
| 55 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- PERFORMANCE STUNTS LLC 2/9/26 | Kilday, Blake | 03/03/2026 | EFile: PeachCourt | ☐ |
| 56 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- KEITH ADAMS 2/9/26 | Kilday, Blake | 03/03/2026 | EFile: PeachCourt | ☐ |
| 57 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- A&A WARD GROUP 2/13/26 | Kilday, Blake | 03/03/2026 | EFile: PeachCourt | ☐ |
| 58 | Affidavit | AFFIDAVIT PROOF SERVICE/PROCESS SERVER- COREY SKLOV 2/13/26 | Kilday, Blake | 03/03/2026 | EFile: PeachCourt | ☐ |
| 59 | Affidavit | AFFIDAVIT | Kilday, Blake | 03/05/2026 | EFile: PeachCourt | ☐ |

The clerk's office maintains the official record for this case. The information we provide is our best attempt at reflecting the official record. Despite our best efforts, you may find discrepancies between the information on this page and the clerk's official record. The clerk's official record is always official and is always THE record.

⚜ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
**JAN 23, 2026 11:01 AM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MARVIN HAVEN,**<br><br>          **Plaintiff,**<br>**vs.**<br><br>**ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,**<br><br>          **Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

**COMES NOW** MARVIN HAVEN ("Plaintiff"), by and through his undersigned counsel, and states his Complaint for Damages against Defendants ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC, GROFFUNIT ACTION, INC.; A&A WARD GROUP, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z (collectively "Defendants") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff MICHAEL HAVEN is a resident of the State of Georgia and submits to the jurisdiction and venue of this Court. Plaintiff can be served with all pleadings and filings in this case by and through undersigned counsel, Blake L. Kilday, Esq. of Morgan & Morgan, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009.

2.

Plaintiff served as a Dolly Grip on the production of *The Pickup*, a heist comedy movie filmed primarily in Georgia, with the Subject Incident of this lawsuit occurring at Earl L. Small Jr. Field/Stockmar Airport, 9382 Stockmar Road, Villa Rica, Douglas County, Georgia 30180.

3.

Plaintiff's services as a Dolly Grip were provided to Defendant ENTERTAINMENT PARTNERS, LLC ("Entertainment Partners").

4.

Defendant Entertainment Partners is a Delaware corporation with a principal office address in California and registered to do business in Georgia. Entertainment Partners is a production services company that operates in Georgia and, at all times relevant to the events made the basis of this Complaint, was involved in the production and funding of *The Pickup*. Entertainment Partners may be served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process, Cogency Global, Inc., 900 Old Roswell Lakes Parkway, Suite 31, Roswell, Georgia 30076. Entertainment Partners is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

5.

Defendant ARMORED FILMS, LLC ("Armored Films") is a California corporation with a principal office address in California and registered to do business in Georgia. Armored Films is a production services company that operates in Georgia and, at all times relevant to the events made the basis of this Complaint, was involved in the production and funding of *The Pickup*. Armored Films may be served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process, Legal Inc Corporate Services, Inc., 1870 The Exchange, STE 200#44, Atlanta, Georgia 30339. Armored Films is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

6.

Defendant STEVE RITZI ("Ritzi") served as the 2nd Unit Director for *The Pickup*. Ritzi contributed to the dangerous conditions on *The Pickup*, and may be served with process by delivering a summons and a copy of this Complaint to him at his place of residence, 235 Forrest Lake Drive, Atlanta, 30327. Ritzi is subject to the jurisdiction of this Court.

7.

Defendant RITZI, INC. ("Ritzi Inc.") served as a "loan-out" corporation for STEVE RITZI for production of *The Pickup*. A "loan-out" corporation is a company formed as a separate legal entity that enters into contracts with producers, production companies, etc. to "loan" or furnish the services of the producer, director, writer, actor, skilled laborer, or artist that it employs. Ritzi Inc. is a Florida corporation with a principal office address in Florida. Ritzi Inc. may be served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process, STEVEN RITZI at 17 Tiffany Circle, Ormond Beach, Florida 32174. Ritzi Inc. is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

8.

Defendant LEX GEDDINGS ("Geddings") served as the Stunt Coordinator for *The Pickup*. Geddings contributed to the dangerous conditions on *The Pickup*, and may be served with process by delivering a summons and a copy of this Complaint to him at his place of residence, 110 Berry Lane, Canton, Georgia 30115. Geddings is subject to the jurisdiction of this Court.

9.

Defendant DURHAM STUNTS, INC. ("Durham Stunts") served as a "loan-out" corporation for LEX GEDDINGS for production of *The Pickup*. Durham Stunts is a foreign corporation with a principal office address in Louisiana. Durham Stunts may be served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process, LEX GEDDINGS at 2514 Gates Circle, Apt 22, Baton Rouge, Louisiana 70809. Durham Stunts is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

10.

Defendant COREY SKLOV ("Sklov") served as the Unit Production Manager for *The Pickup*. Sklov contributed to the dangerous conditions on *The Pickup*, and may be served with process by delivering a summons and a copy of this Complaint to him at his place of residence, 1982 Lansdowne Avenue, Los Angeles, California 90032. Sklov is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

11.

Defendant MINX NATION PRODUCTIONS, INC. ("Minx Nation") served as a "loan-out" corporation for CORY SKLOV for production of *The Pickup*. Minx Nation is a foreign corporation with a principal office address in California. Minx Nation may be served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process,

MIRANDA PACHECO, at 1982 Lansdowne Avenue, Los Angeles, CA 90032. Minx Nation is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

12.

Defendant ANDREW WARD ("Ward") served as the 1st Assistant Director for *The Pickup*. Ward contributed to the dangerous conditions on *The Pickup*, and may be served with process by delivering a summons and a copy of this Complaint to him at his place of residence, 6316 Lomitas Drive, Los Angeles, California 90042. Ward is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

13.

Defendant A&A WARD GROUP, INC. ("A&A") served as a "loan-out" corporation for ANDREW WARD for production of *The Pickup*. A&A is a foreign corporation with a principal office address in California. A&A may be served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process, ANDREW WARD at 6316 Lomitas Drive, Los Angeles, California 90042. A&A is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

14.

Defendant GREG WADDLE ("Waddle") served as the International Alliance of Theatrical Stage Employees 479 ("IATSE") President at the time of the Subject Incident, and was aware of the dangerous conditions on *The Pickup*, but made no attempt to intervene on behalf of Plaintiff or the other members to which he1 owed a fiduciary duty. Waddle may be served with process by delivering a summons and a copy of this Complaint to him at his place of residence, 5362 Muirwood Place, Powder Springs, Georgia 30127. Waddle is subject to the jurisdiction of this Court.

15.

Defendant JEF GROFF ("Groff") served as a Stunt Driver on *The Pickup*. Groff contributed to the dangerous conditions on *The Pickup*, and may be served with Process by delivering a summons and a copy of this Complaint to him at his place of residence, 11613 Teddington Court, Bentonville, Arkansas 72712. Groff is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

16.

Defendant GROFFUNIT ACTION INC. ("Groffunit") served as a "loan-out" corporation for JEF GROTH for production of *The Pickup*. Groffunit is a foreign corporation with a principal office address in Arkansas. Groffunit may be served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process, UNITED STATES CORPORATION AGENTS, INC. at 1003 Bishop Street, Ste 2700, Honolulu, Hawaii 96813. Groffunit is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

17.

Defendant KEITH ADAMS ("Adams") served as a Stunt Driver on *The Pickup*. Adams contributed to the dangerous conditions on *The Pickup*, and may be served with Process by delivering a summons and a copy of this Complaint to him at his place of residence, 8383 Wilshire Boulevard, Ste 260, Beverly Hills, California 90211. Adams is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

18.

Defendant PERFORMANCE STUNTS, LLC ("Performance Stunts") served as a "loan-out" corporation for KEITH ADAMS for production of *The Pickup*. Performance Stunts is a foreign corporation with a principal office address in California. Performance Stunts may be

served with process by delivering a summons and a copy of this Complaint to its registered agent for service of process, KEITH ADAMS at 8383 Wilshire Boulevard, Ste 260, Beverly Hills, California 90211. Performance Stunts is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

19.

Plaintiff has conducted a thorough and diligent investigation to learn the identities of all entities responsible for the wrongdoing alleged herein. However, Plaintiff believes that additional persons and/or entities may exist that are presently unnamed due to Plaintiff's inability to discover their identities or the extent of their involvement at this time. To that end, Defendants JOHN DOE A-M and ABC CORPORATIONS A-M are not-yet-identified parties that contracted with one or more of the Defendants to provide the services of its principles for *The Pickup*. Defendants JOHN DOE N-Z and ABC CORPORATIONS N-Z are not-yet-identified parties that form part of the corporate structure that creates, manages, or enforces the production budget for *The Pickup*, or that derives profits from *The Pickup*.

20.

At the time of the events made the basis of this Complaint, Plaintiff was working as an independent contractor on *The Pickup*, alongside Defendants Entertainment Partners, Armored Films, Ritzi, Geddings, Sklov, Ward, Waddle, Adams, Groff, and their respective loan-out corporations (referred to collectively as the "Defendants' Loan-Out Corporations").

21.

All Defendants operated as independent contractors of each other.

22.

Venue is proper as to all Defendants residing, domiciled, organized, existing under, or

authorized to do business in Georgia pursuant to O.C.G.A. §§ 9-10-31 and 14-2-510.

23.

Venue is proper as to all nonresident Defendants pursuant to O.C.G.A. § 9-10-93.

## FACTUAL BACKGROUND

24.

Plaintiff re-alleges and incorporates the preceding Paragraphs as if fully set forth herein.

25.

Plaintiff is an established, experienced Dolly Grip, having worked on numerous film and television projects over a twenty-five year career.

26.

In early 2024, Plaintiff entered into a contract with Entertainment Partners, to provide his services as a Dolly Grip and for the rental of filming equipment for the production of *The Pickup*.

27.

The production of *The Pickup* had an emphasis on keeping production budgets low, and profits high, while working on short and expedited deadlines. Specifically, Entertainment Partners put pressure on Armored Films and other defendants to produce *The Pickup* as quickly and cheaply as possible.

28.

Entertainment Partners and Armored Films orchestrated and enforced a pattern of filming and producing *The Pickup* quickly, cheaply, and ultimately, unsafely.

29.

As part of this emphasis, Entertainment Partners and Armored Films pressured Defendants Geddings, Sklov, Ward, Ritzi, and their loan-out corporations to maintain unreasonably low

budgets, including budgets for stunts. Accordingly, the production of *The Pickup* repeatedly cut corners on safety precautions, including as it pertained to stunt performances.

30.

Defendant Geddings, as Stunt Coordinator for *The Pickup*, was responsible for designing the action sequences and coordinating all the personnel and equipment needed to safely execute the action sequences. As Stunt Coordinator, Geddings casts the stunt personnel, and supervises and oversees stunt and principal performers during stunt performances to ensure that the performances are done safely and in a manner consistent with industry practice and standards. As Stunt Coordinator, Geddings was also responsible for working with the First Assistant Director to hold safety meetings before every action sequence. Upon information and belief, Geddings' services as Stunt Coordinator were provided and contracted to Entertainment Partners through his loan-out corporation, Durham Stunts.

31.

As 2nd Unit Director for *The Pickup*, Defendant Ritzi retained responsibility for the ultimate decision making when filming certain footage and scenes, including the one that is the Subject Incident of this lawsuit. Ritzi was ultimately responsible for ensuring such scenes were filmed safely and in compliance with applicable laws, regulations, and industry standards. On information and belief, Ritzi's services as 2nd Unit Director through his loan-out corporation, Ritzi Inc.

32.

Defendant Sklov served as Unit Production Manager for *The Pickup*. As the Unit Production Manager, Sklov was responsible for managing the production and regulating the cost and budget of *The Pickup*, including the scene that is the Subject Incident of this lawsuit. On

information and belief, Sklov provided his services as Unit Production Manager through his loan-out corporation, Minx Nation.

33.

Defendant Ward served as First Assistant Director for The Pickup. As First Assistant Director, Ward was assigned primary responsibility for taking care of the health and safety of the crew, by, among other things, holding safety meetings, ensuring safety precautions are in place, arranging for appropriate medical personnel and facilities at filming locations, and reporting any unsafe conditions. On information and belief, Ward provided his services through his loan-out corporation, A&A.

34.

Defendant Waddle served as the IATSE President at the time of the Subject Incident, and was informed and aware of the dangerous conditions on *The Pickup*, but made no attempt to intervene on behalf of Plaintiff or the other members of the IATSE to which it had owed a fiduciary duty. Plaintiff has been a union member of IATSE since the year 2000.

35.

Defendants Adams and Goff served as professional stunt drivers on *The Pickup* at the time of the Subject Incident and directly contributed to the dangerous conditions of the subject scene by performing their duties in a manner inconsistent with industry safety standards.

36.

On April 20, 2024, as part of the filming of *The Pickup*, Entertainment Partners and Armored Films planned to film a stunt that required Plaintiff to perform duties as a Key Grip in the back of an armored vehicle, wherein another vehicle would perform a Precision Immobilization

Technique ("PIT") maneuver on that armored vehicle while the front-passenger tire of the armored vehicle was simultaneously blown.

37.

During the PIT maneuver, the armored vehicle Plaintiff was travelling in rolled 360 degrees and spun 180 degrees, causing significant injury to the occupants therein, including Plaintiff ("Subject Incident").

38.

After the Subject Incident, there was no ambulance on site and Plaintiff's Life Flight helicopter was cancelled due to inclement weather. It took over 35 minutes from the time of the Subject Incident before Plaintiff was evacuated from the scene for medical treatment.

39.

As a result of the Subject Incident, Plaintiff suffered significant injuries to his face, teeth, right scapula, ribs, right bicep, head, right shoulder, left knee, right ankle, lungs, neck, and back. To date, Plaintiff has incurred over $300,000.00 in medical expenses for treatment related to injuries received from the Subject Incident.

## **NEGLIGENCE**

40.

Plaintiff realleges and incorporates herein the preceding Paragraphs as if the same were restated herein verbatim.

41.

The Defendants failed to properly and safely produce, direct, and perform the subject scene using reasonable, minimum safety precaution. Among other things, the Defendants failed to properly prepare for the hazards of the subject scene in the following ways:

a.  Failing to provide appropriate harnessing, catch, restraint, or deceleration system for safety of the occupants of the armored vehicle;

b.  Failure to ensure all occupants of the armored vehicle were safely secured prior to the Subject Incident;

c.  Failure to provide appropriate padding to the interior of the armored vehicle to protect the occupants therein;

d.  Failure to reduce speed of the vehicle(s) in the Subject Incident to speeds reasonable for safely performing the subject scene;

e.  Failure to provide and require the use of personal protective equipment that may have reduced the injury to Plaintiff;

f.  Failure to secure the services of an independent safety specialist to assess the potential hazards and develop appropriate risk reduction strategies;

g.  Failure to provide emergency medical services when filming a dangerous and high-risk scene;

h.  Failure to inform the occupants of the Armored Vehicle of the dangers of the subject scene;

i.  Failure to have an ambulance on site at the filming location, in keeping with industry standards; and

j.  Failure to account for time for medical transport when filming in a remote location.

42.

By committing these acts, or failures to act, the Defendants, individually and collectively, operated without minimum reasonable safety precautions, putting the film crew and performers at an unreasonable risk of bodily harm.

43.

Entertainment Partners and Armored Films' failures to take reasonably safety precautions were the direct result of the pattern of policies, pressure, and decisions they made to produce *The Pickup* with minimum cost and maximum speed.

44.

Entertainment Partners and Armored Films breached their duties owed to Plaintiff by failing to exercise ordinary care in the production of *The Pickup* through their pattern and policy of prioritizing profits and speed of ever reasonable expenditures to secure the safety of *The Pickup* cast and crew, including Plaintiff. Entertainment Partners and Armored Films are each independently and collectively responsible for the failure of *The Pickup* production to take reasonable safety precautions to protect Plaintiff.

45.

Each of the Defendants owed Plaintiff an independent duty to take reasonable safety precautions to protect the Plaintiff in the filming of the subject scene.

46.

Each of the named Defendants had knowledge, actual or constructive, that the filming of the subject scene of *The Pickup* was not performed in a safe manner in accordance with industry standards.

47.

Each of the Defendants had knowledge, both actual and constructive, of the dangers presented by failing to take appropriate safety measures during the filming of *The Pickup* and the subject scene.

48.

Each of the Defendants failed to warn Plaintiff of the dangers presented by the failure(s) to take appropriate safety measures during the filming of the subject scene.

49.

Each of the Defendants negligently breached their duty owed to Plaintiff by failing to exercise ordinary and/or reasonable care for their respective responsibilities on and leading up to April 20, 2024, when the Subject Incident occurred.

50.

Each of the Defendants' acts and omissions described in this Complaint constitutes an independent act of negligence on part of the Defendant(s), and one or more of all the acts or failures to act described herein were a proximate cause of Plaintiff's injuries. As a result, Defendants are joint tortfeasors, and their individual and combined negligence renders them liable to Plaintiff for all damages recoverable under Georgia law.

51.

Defendants' negligence actually and proximately caused Plaintiff's injuries and medical expenses, rendering Defendants liable to Plaintiff for his injuries, pain and suffering, past and future medical expenses, lost wages, loss of earning capacity, and all other elements of damages allowed under Georgia law.

## **DAMAGES**

52.

Plaintiff realleges and incorporates herein the preceding Paragraphs as if the same were restated herein verbatim.

53.

Plaintiff is entitled to past and future, general and special damages resulting from Plaintiff's injuries, pain and suffering, lost wages, and loss of earning capacity in an amount to be determined by the enlightened conscience of the jury.

54.

Each of the Defendants' respective wrongful actions and/or inactions showed willful misconduct, wantonness, oppression, or the entire want of care which raises the presumption of a conscious indifference to the consequences.

55.

As such, punitive damages should be imposed in an amount sufficient to penalize the Defendants and to deter such willful, wanton, and reckless conduct in the future, pursuant to O.C.G.A. § 51-12-5.1.

56.

Defendants have been stubbornly litigious, causing Plaintiff unnecessary trouble and expense in forcing Plaintiff to file this lawsuit to recover damages for his injuries.

57.

As such, Plaintiff is entitled to attorney's fees and expensed of litigation pursuant to O.C.G.A. § 13-6-11.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff MICHAEL HAVEN prays and demands as follows:

a.  That Process and Summons issue, as provided by law, requiring Defendants to appear and answer Plaintiff's Complaint;

b.  That service be had upon Defendants as provided by law;

c.  That this matter be tried to a jury of twelve;

d.  That judgment be entered against Defendants in the favor of Plaintiff;

e.  That Plaintiff have and recover general damages from Defendants, as the jury deems is liable to Plaintiff and in such an amount as the jury deems just and appropriate to fully and completely compensate Plaintiff for all of his injuries, and pain and suffering, mental, physical, and emotional, past, present, and future;

f.  That Plaintiff have and recover from Defendants, special damages for past and future medical expenses, loss of income, and earning capacity, in the past and future, in such an amount as shall be proven at trial;

g.  That Plaintiff have and recover from Defendants, punitive damages in accordance with O.C.G.A §51-12-5.1;

h.  That Plaintiff be awarded all attorneys' fees, costs, expenses, and interest attributable to this action;

i.  That all costs be cast against the Defendants; and

j.  For such other and further relief as this Court deems just and appropriate.

Respectfully submitted, this 30th day of December, 2025.


*/s/ Blake Kilday*
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**JAN 23, 2026 11:01 AM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| MARVIN HAVEN, <br><br>        **Plaintiff,** <br> **vs.** <br><br> ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z, <br><br>       **Defendants.** | **CIVIL ACTION FILE NO:** <br><br><br> **JURY TRIAL DEMANDED** |

### RULE 5.2 CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of this pleading upon all counsel of record via electronic service through the Court's electronic filing system in accordance with O.C.G.A.§ 9-11-5 (b) by STATUTORY ELECTRONIC SERVICE.

1. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ENTERTAINMENT PARTNERS, LLC;**

2. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ARMORED FILMS,**

**LLC;**

3. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LEX GEDDINGS;**

4. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STEVE RITZI;**

5. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT COREY SKLOV;**

6. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ANDREW WARD;**

7. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT KEITH ADAMS;**

8. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JEF GROFF; and**

9. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT GREG WADDLE.**

Respectfully submitted, this 23rd day of January 2026.

*s/ Blake L. Kilday*
 BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
Attorney for Plaintiff

MORGAN & MORGAN ATLANTA, PLLC.
11605 Haynes Bridge Road, Suite 490.
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⚖ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER
JAN 23, 2026 11:01 AM

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**IN STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| MARVIN HAVEN,<br><br>                 **Plaintiff,**<br>**vs.**<br><br>ENTERTAINMENT PARTNERS, LLC;<br>ARMORED FILMS, LLC; STEVE<br>RITZI; LEX GEDDINGS; COREY<br>SKLOV; ANDREW WARD; GREG<br>WADDLE; JEF GROFF; KEITH<br>ADAMS; MINX NATION<br>PRODUCTIONS, INC.; A&A WARD<br>GROUP, INC.; DURHAM STUNTS,<br>INC.; RITZI, INC.; PERFORMANCE<br>STUNTS, LLC; GROFFUNIT ACTION,<br>INC.; JOHN DOE A-Z; and ABC<br>CORPORATIONS A-Z,<br><br>                 **Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

<u>**PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR**</u>
<u>**PRODUCTION OF DOCUMENTS TO DEFENDANT**</u>
<u>**ENTERTAINMENT PARTNERS, LLC**</u>

TO:    Entertainment Partners, LLC
       Registered Agent Cogency Global, Inc.
       900 Old Roswell Lakes Parkway, Suite 31
       Roswell, Georgia 30076

       Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith to the above-

named Defendant (hereinafter referred to as "you" or "your") for response within forty-five (45) days

after service hereof, in the form provided by law, the following interrogatories and request for

production of documents.

You are required, when answering these interrogatories, to furnish all information that is available to you, your attorneys or agents, and anyone else acting on your behalf. If the complete answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan Atlanta, PLLC at 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

I.    **DEFINITIONS**

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)    an individual, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)    a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)    <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book, telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## **<u>INTERROGATORIES</u>**

1.    Identify all persons who participated in the conception, planning, design, approval, budgeting, scheduling, or risk assessment of the Subject Stunt, and for each such person describe their role, responsibilities, and authority with respect to the stunt.

2.    Describe in detail the original concept, purpose, and intended appearance of the Subject Stunt, including how it was supposed to be executed, the planned movements of each vehicle, the positions of all occupants, and any special effects or rigging to be used.

3.    State the timeline from initial conception to final approval of the Subject Stunt, including key dates for (a) initial proposal, (b) risk assessment, (c) safety review, (d) rehearsals, and (e) final approval to perform the stunt on the date of the Incident, and identify all persons who granted or withheld approval at each stage.

4.  Identify each person who had decision-making authority to approve, modify, postpone, or cancel the Subject Stunt and describe the scope of that authority, including any limits placed upon it by Defendant or any insurer, studio, or other entity.

5.  Describe all safety policies, procedures, protocols, manuals, or guidelines in effect at the time of the Incident that governed or were intended to govern (a) automobile stunts, (b) on-set safety, and (c) emergency response, and explain how those policies were applied specifically to the Subject Stunt.

6.  Describe in detail each safety measure implemented for the Subject Stunt, including but not limited to restraints, harnesses, roll cages, kill switches, speed limitations, communication systems, safety zones, barriers, emergency medical presence, and any special rules for cast and crew positioning.

7.  State whether any safety meetings, toolbox talks, briefings, or rehearsals were conducted in connection with the Subject Stunt, and for each such meeting or briefing, identify: (a) the date and time; (b) the location; (c) the person who led it; (d) all persons in attendance; and (e) the topics discussed, including any warnings or instructions given.

8.  State whether any risk assessments, hazard analyses, job safety analyses, or similar evaluations were performed for the Subject Stunt. If so, identify who performed each assessment, the date, the methodology used, the risks identified, and any recommended controls or modifications, and state whether each recommendation was implemented.

9.  State whether the plan for the Subject Stunt changed in any way between initial conception and the moment of the Incident, including changes to vehicle speed, camera angles, positions of vehicles or occupants, safety equipment, or number/type of personnel involved; describe each change and explain the reason for it and who approved it.

10. Identify all stunt coordinators, assistant stunt coordinators, or other employees/contractors responsible for the Subject Stunt, and for each state their qualifications, training, certifications, years of experience with vehicle stunts, and prior work history on similar stunts.

11. Identify each driver and stunt performer involved in the Subject Stunt, and for each state (a) the nature of their role, (b) their driving or stunt-related training and certifications, (c) years of experience with similar stunts, and (d) any special instructions given to them for the Subject Stunt.

12. Describe any training, orientation, safety briefings, or written materials provided by Defendant to employees, independent contractors, stunt personnel, and other crew concerning stunt safety, vehicle operations, or emergency procedures for *The Pickup*, including dates, content, and attendees.

13. For each Vehicle involved in the Subject Stunt, identify the year, make, model, VIN, owner, lessor, or supplier, any special modifications or rigging made for the stunt, and the purpose or function of each vehicle in the stunt.

14. Describe the maintenance history and mechanical condition of each vehicle used in the Subject Stunt for the twelve (12) months preceding the Incident, stating any known mechanical issues, prior accidents, repairs, or modifications, and whether any such issues were known to Defendant before the Incident.

15. State whether any pre-use inspections, safety checks, or test runs were conducted on each vehicle involved in the Subject Stunt on the day of or immediately before the Subject Stunt, and for each such inspection identify who performed it, what was inspected, any issues discovered, and any corrective actions taken.

16. Describe the weather, lighting, road surface, terrain, and any other physical or environmental conditions at the time and location of the Incident, and state whether any of these conditions were identified as potential hazards prior to the Subject Stunt.

17. Provide a detailed, step-by-step narrative of how the Incident occurred from Defendant's perspective, beginning with the moments before "action" was called through the conclusion of the emergency response, including the movements and speeds of each Vehicle, communications among personnel, and any deviations from the planned stunt.

18. Identify all persons who witnessed any aspect of the Subject Stunt or the Incident (including planning, rehearsals, and the accident itself), and for each witness describe what Defendant understands that person saw, heard, or did in relation to the Incident.

19. State whether any person raised concerns, reservations, or objections regarding the safety of the Subject Stunt before the Incident, and if so, identify each such person and describe the substance of their concerns, when and to whom they were communicated, and what response or action, if any, was taken by Defendant.

20. Describe all communications on the day of the Incident relating to the Subject Stunt, including but not limited to communications about weather, time pressures, changes to the stunt, vehicle issues, crew availability, or safety concerns, identifying each person involved and the substance of each communication.

21. State whether Defendant prepared any incident reports, accident reports, or internal memoranda concerning the Incident, and for each such report identify its author(s), date, recipients, purpose, and summarize its findings or conclusions (excluding only information withheld under a specific claim of privilege).

22. Describe any internal investigation, root-cause analysis, or review conducted by or for Defendant as a result of the Incident, including (a) who conducted the investigation, (b) the methods used (e.g., interviews, site inspections, document review), (c) the conclusions reached regarding the cause of the Incident, and (d) any corrective or remedial measures recommended or implemented.

23. State whether any governmental, regulatory, or industry body (including OSHA or state equivalent, film commissions, or workplace safety agencies) investigated or was notified of the Incident, and for each such body identify the agency, the nature and dates of its involvement, any citations or findings issued, and Defendant's response to such findings.

24. State whether any other accidents, injuries, or "near-miss" incidents occurred during the production of *The Pickup* involving (a) vehicle stunts, (b) stunts generally, or (c) on-set safety issues, and for each describe the date, nature of the event, persons involved, injuries (if any), and any corrective actions taken.

25. State whether Defendant is aware of any prior accidents, injuries, or claims involving similar automobile stunts or vehicle-related incidents on any other productions in which Defendant was involved, and for each such incident provide the date, general description, location, and nature of any claims made.

26. Describe the budget and scheduling considerations that applied to the scenes involving the Subject Stunt, and state whether any financial constraints, time pressures, schedule changes, or production demands influenced decisions about how, when, or under what conditions the Subject Stunt was executed.

27. Identify all insurance policies that may provide coverage for claims arising from the Incident, including the insurer, policy number, type of coverage (e.g., general liability,

workers' compensation, stunt coverage, auto, excess/umbrella), effective dates, and applicable limits of liability.

28.    State whether Defendant provided notice of the Incident to any insurer or insurance representative, and if so, identify each such insurer/representative and describe the nature of the notice, the date given, and summarize any coverage positions, reservations of rights, or claim-related communications known to Defendant (excluding only information withheld under a specific claim of privilege).

29.    Identify all categories of documents and electronically stored information (ESI) Defendant possesses, controls, or has access to that relate to the planning, approval, execution, or aftermath of the Subject Stunt and/or Incident, including but not limited to emails, texts, call sheets, stunt plans, risk assessments, meeting minutes, videos, photographs, and reports, and state their general locations or custodians.

30.    Describe Defendant's policies and procedures in effect at the time of the Incident for reporting, documenting, and responding to on-set injuries and workers' compensation claims, and explain how those policies were followed or not followed in connection with the Incident involving Plaintiff.

31.    State whether any employee, contractor, stunt coordinator, driver, or other person was counseled, disciplined, reassigned, terminated, or otherwise subject to personnel action as a result of or in connection with the Incident, and for each such person describe the action taken and the reasons given.

32.    State whether Defendant made any changes to its policies, procedures, training, equipment, or stunt practices following the Incident, including for future work on *The Pickup* or other

productions, and describe each change, the date it was implemented, and the reasons for the change.

33. State in detail Defendant's contentions as to the cause or causes of the Incident, including all facts, circumstances, acts, or omissions that Defendant contends contributed to the Incident, and identify each person and entity (including Plaintiff, if applicable) whom Defendant contends bears responsibility, in whole or in part, and the factual basis for each such contention.

## **REQUEST FOR PRODUCTION**

Defendant is requested to produce and identify each of the following:

1. All contracts, agreements, amendments, and addenda relating to the production of *The Pickup*, including but not limited to agreements with employees, independent contractors, producers, stunt coordinators, stunt performers, drivers, vehicle suppliers, transportation coordinators, and any third-party vendors involved in the Subject Stunt.

2. All contracts, deal memos, work-for-hire agreements, and engagement letters specifically related to the planning, coordination, performance, or supervision of the Subject Stunt, including those for the stunt coordinator(s), assistant stunt coordinator(s), stunt drivers, precision drivers, and any consultants retained regarding vehicle stunts or safety.

3. All written safety policies, safety manuals, standard operating procedures, and health and safety guidelines in effect during the production of *"The Pickup"* that governed or addressed stunts, vehicle operations, on-set safety, risk management, or emergency response.

4. All stunt-specific safety protocols, method statements, safe work plans, standard operating procedures, or similar documents that were prepared, adopted, or utilized for the Subject Stunt, whether drafted by Defendant, an independent contractor, an employee, or others.

5. All risk assessments, hazard analyses, job safety analyses, safety checklists, and risk matrices prepared at any time relating to the Subject Stunt or any other automobile stunts performed during *The Pickup*, including drafts, revisions, and any approvals or sign-offs.

6. All stunt coordination plans, breakdowns, diagrams, drawings, storyboards, shot lists, and other planning documents that describe or depict the design, setup, choreography, timing, or execution of the Subject Stunt.

7. All call sheets, shooting schedules, daily production reports, unit production reports, and related documents for all days on which the Subject Stunt was rehearsed or performed, including any revisions or annotated versions reflecting changes or issues regarding the stunt.

8. All documents relating to any rehearsals, tests, or trial runs of the Subject Stunt, including rehearsal schedules, rehearsal notes, risk reassessments, safety meeting notes, and any documents showing differences between the planned stunt and the stunt as actually performed.

9. All documents reflecting or relating to safety meetings, toolbox talks, tailgate meetings, or briefings held before, during, or after the Subject Stunt, including agendas, minutes, sign-in sheets, attendance logs, notes, handouts, and materials distributed to attendees.

10. All training records, certifications, licenses, and qualifications of all stunt coordinators, assistant stunt coordinators, stunt performers, and drivers involved in the Subject Stunt,

including but not limited to driving certifications, stunt training, safety training, first aid/CPR training, union training, or industry safety programs.

11. All training and certification records of production managers, directors, assistant directors, safety officers, or other supervisory personnel responsible for safety oversight or approval of the Subject Stunt, including any documents reflecting their authority and responsibilities regarding safety.

12. All written or electronic communications (including emails, text messages, messaging app communications, and internal platforms such as Slack, Teams, or similar) between and among Defendant's personnel, stunt personnel, insurers, and third parties concerning the conception, planning, design, budgeting, or approval of the Subject Stunt.

13. All communications in which any person raised, discussed, or responded to safety concerns, reservations, or objections regarding the Subject Stunt, including any suggestions for changes, alternative methods, modifications, or cancellations of the stunt.

14. All communications sent or received on the day of the Incident that reference or relate to the Subject Stunt, including communications about weather, timing, equipment, vehicles, personnel, safety conditions, delays, or any reported near-misses or problems.

15. All incident reports, accident reports, injury reports, near-miss reports, or similar documents created in connection with the Incident, whether prepared by Defendant, its insurers, safety officers, medical personnel, or any other person or entity.

16. All documents relating to any internal investigation, review, or analysis conducted by or for Defendant regarding the Incident, including investigatory notes, witness statements, recorded or transcribed interviews, timelines, internal memoranda, findings, conclusions, recommendations, and any corrective action plans.

17. All documents received from, provided to, or exchanged with any governmental, regulatory, or industry body (including OSHA or state equivalent, film commissions, or workplace safety regulators) regarding the Incident, including citations, notices, responses, and correspondence.

18. All insurance policies, binders, declarations pages, endorsements, riders, and certificates of insurance applicable to *The Pickup* or to the Subject Stunt, including but not limited to general liability, workers' compensation, employer's liability, stunt or hazardous activity coverage, automobile coverage, and any excess/umbrella policies.

19. All communications with any insurer or insurance representative concerning the Incident, any claim made as a result of the Incident, coverage analysis, reservation of rights, or claim handling, including notices of claim, claim forms, adjuster reports, and coverage position letters (with privileged mental impressions redacted as appropriate).

20. All documents identifying each vehicle involved in the Subject Stunt, including titles, registrations, rental or lease agreements, contracts with vehicle suppliers, and any documents showing the ownership, control, or custody of each such vehicle at the time of the Incident.

21. All maintenance logs, repair records, inspection reports, pre-use checklists, and service records for each vehicle involved in the Subject Stunt for the period of twelve (12) months preceding the Incident through six (6) months thereafter, including any documentation of mechanical problems, modifications, or customizations.

22. All documents describing or reflecting any modifications, rigging, special effects installations, remote driving systems, roll cages, harnesses, or other alterations made to any

vehicle used in the Subject Stunt, including engineering drawings, specifications, approvals, and communications with vendors or fabricators.

23. All video, audio, still photographs, and raw or edited footage (including multi-camera footage, behind-the-scenes footage, rehearsals, dailies, and "B-roll") that depict any aspect of the planning, setup, rehearsal, or performance of the Subject Stunt and the Incident, including any recordings made by crew members on personal devices.

24. All post-incident debrief reports, "lessons learned" documents, after-action reviews, safety meeting records, or other evaluations generated after the Incident that discuss its cause, contributing factors, preventability, or recommended changes to procedures or protocols.

25. The complete personnel files (subject to appropriate redaction of purely personal information such as Social Security numbers) for any stunt coordinator or assistant stunt coordinator responsible for or involved in the Subject Stunt, including performance evaluations, disciplinary records, incident histories, and prior complaints or concerns relating to safety or stunt performance.

26. The personnel files (similarly redacted for purely personal identifiers) for each driver and stunt performer involved in the Subject Stunt, including hiring documents, resumes, qualifications, prior incident or accident reports, disciplinary actions, and notes or evaluations regarding driving or stunt performance.

27. All documents reflecting any prior accidents, injuries, near-misses, or safety incidents involving stunts or vehicle operations on the production of *The Pickup*, including any incident logs, corrective action reports, or safety bulletins, and any documents comparing those incidents to the Incident or informing changes to the Subject Stunt.

28. All documents relating to the budget, time schedule, or production deadlines for the Subject Stunt or the scenes in which it appears, including any communications or notes that discuss time constraints, cost-cutting, staffing reductions, or other pressures that may have affected decisions about safety or the manner in which the Subject Stunt was executed.

29. All files, invoices, purchase orders, scopes of work, proposals, and communications with any third-party vendors, contractors, or consultants retained in connection with the Subject Stunt, including vehicle suppliers, stunt equipment providers, safety consultants, and any company providing drivers or stunt personnel.

30. All written policies, procedures, and guidelines in effect at the time of the Incident for reporting, responding to, and documenting employee injuries, workers' compensation claims, and medical treatment during production, as well as all documents showing how those policies were applied or not applied in connection with the Incident.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

Respectfully submitted,

/s/ Blake Kilday
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⚡ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
BRIAN K. FORTNER
JAN 23, 2026 11:01 AM

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MARVIN HAVEN,**<br><br>**Plaintiff,**<br>**vs.**<br><br>**ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,**<br><br>**Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ANDREW WARD

TO:    Defendant, Andrew Ward
       6316 Lomitas Drive
       Los Angeles, California 90042

Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-five (45) days after service hereof, in the form provided by law, the following interrogatories and request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is available to you, your attorneys or agents, and anyone else acting on your behalf.  If the complete

answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan, PLLC, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

## I.    **DEFINITIONS**

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not

limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)     an <u>individual</u>, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)     a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)     <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book,

telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## II.    INTERROGATORIES

1. Describe in detail your role, duties, and responsibilities with respect to the Subject Stunt, including any authority you had to design, approve, modify, supervise, postpone, or cancel the stunt.

2. Describe how you came to be involved with *The Pickup* and the Subject Stunt, including: (a) whether you were an employee, independent contractor, or otherwise engaged; (b) who hired or retained you; (c) the terms of your engagement; and (d) any written or oral agreements or understandings concerning your responsibilities.

3. Identify all persons who, to your knowledge, participated in the planning, approval, or supervision of the Subject Stunt and describe your interactions with each regarding the Subject Stunt.

4. Describe in detail how the Subject Stunt was conceived and designed, including: (a) who proposed it; (b) its intended visual effect; (c) the planned movements and speeds of each vehicle; (d) the positions and roles of occupants; and (e) any special effects, rigging, or camera considerations that influenced the design.

5. Provide a chronological timeline of key events relating to the Subject Stunt from initial conception through the day of the Incident, including dates of planning meetings,

rehearsals, risk assessments, safety reviews, and final approvals, and identify all persons who approved the stunt at each stage.

6.  State whether you had the authority to stop, postpone, or modify the Subject Stunt at any time for safety reasons, and if so, describe the scope of that authority and any instructions or limitations that were communicated to you concerning its exercise.

7.  Identify and describe all safety policies, procedures, guidelines, manuals, or industry standards that you understood to apply to the Subject Stunt and to your role, including any instructions you received from the film's Production Company or others about compliance with such policies.

8.  Describe in detail each safety measure that you personally proposed, approved, or implemented for the Subject Stunt, including but not limited to: (a) restraints or harnesses; (b) helmets or padding; (c) roll cages; (d) speed limitations; (e) communication protocols; (f) safety perimeters or exclusion zones; and (g) presence of medical personnel.

9.  State whether you participated in, ordered, reviewed, or were aware of any risk assessment, hazard analysis, job safety analysis, or similar evaluation relating to the Subject Stunt. For each such assessment, identify who conducted it, when it occurred, the risks identified, and any recommendations made—and describe whether and how those recommendations were implemented.

10. Describe all changes, if any, that were made to the original plan for the Subject Stunt (including vehicle speed, number of takes, camera positions, vehicle positions, safety equipment, or personnel) from the time of initial planning up to the Incident, including who proposed the changes, why they were made, and whether you agreed with or objected to any such changes.

11. Describe what you knew, before the Subject Stunt was performed, about the physical and environmental conditions under which it would occur (e.g., lighting, weather, road surface, obstacles, space limitations), and state whether you considered any of those conditions to present safety risks and what you did in response.

12. Identify each driver, stunt performer, and crew member involved in the Subject Stunt, and for each state what you knew regarding their training, experience with similar stunts, and qualifications at the time of the Incident.

13. Describe all training, briefings, demonstrations, or instructions you personally provided (verbally or in writing) to any person involved in the Subject Stunt, including Plaintiff, regarding how the stunt was to be performed, what safety procedures were to be followed, and what risks were associated with participation.

14. Identify and describe all safety meetings, toolbox talks, or briefings that you attended or led relating to the Subject Stunt or to stunts/vehicle operations on the day of the Incident, including the date, attendees, topics discussed, and any warnings or instructions you recall being given.

15. State whether, before the Incident, you received or were aware of any concerns, reservations, or objections raised by any person (including Plaintiff) about the safety of the Subject Stunt or the condition of any Vehicle. For each such concern, identify who raised it, when and how it was communicated, the substance of the concern, and what you did in response.

16. For each vehicle involved in the Subject Stunt, describe what you knew prior to the Incident about that vehicle's make, model, modifications, rigging, safety equipment, and

mechanical condition, including any issues, limitations, or prior damage that were known or reported to you.

17. State whether you performed, observed, requested, or were aware of any pre-use inspections, safety checks, or test runs of any vehicle or of the Subject Stunt as a whole, and for each such inspection or test run describe who performed it, when it occurred, what was checked, any problems discovered, and any corrective actions taken.

18. Describe your understanding, at the time of the Incident, of Plaintiff's role in connection with the Subject Stunt and *The Pickup,* including: (a) whether you understood Plaintiff to be an employee or independent contractor; (b) who, if anyone, you believed to be Plaintiff's employer; and (c) the extent to which you believed you had the right to direct and control Plaintiff's work.

19. Describe all directions, instructions, or commands you gave to Plaintiff on the day of the Incident concerning Plaintiff's participation in the Subject Stunt, including where to sit or stand, what to do inside the Vehicle, any safety measures to take, and any warnings about risks.

20. Provide a detailed, step-by-step narrative of the events as you recall them from immediately before the Subject Stunt began through the occurrence of the Incident and the immediate aftermath, including your location, what you observed, any communications you heard or made, and any deviations from the stunt plan that you noticed.

21. Identify all persons known to you who witnessed any aspect of the Subject Stunt or the Incident (including planning, rehearsals, and the accident itself), and for each describe what you understand that person saw, heard, or did in relation to the Incident.

22. State whether you prepared or gave any written or oral statements, notes, reports, emails, texts, or other communications concerning the Subject Stunt or the Incident (including to the Production Company, insurers, investigators, or regulatory agencies). For each, identify the date, the recipient(s), the general subject matter, and the current custodian of any written or recorded materials.

23. Describe any investigations of the Incident in which you participated (internal or external), including: (a) who conducted the investigation; (b) when it occurred; (c) what information or documents you provided; (d) whether you were interviewed; and (e) any findings, conclusions, or recommendations that were communicated to you.

24. State whether, before the Incident, you were aware of any other accidents, injuries, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup*. For each such event, describe the date, nature of the event, persons involved, and any safety changes you are aware were made as a result.

25. State whether you personally notified or communicated with any insurance company, insurance broker, or insurance representative regarding the Incident or claims arising from it. For each such communication, identify the insurer/representative, the date, the method of communication, and the subject matter.

26. Identify all insurance policies of which you are aware that might provide coverage to you for claims arising out of the Subject Stunt or the Incident, including the insurer, type of policy, policy number, and policy period.

27. State in detail your contentions and understanding as to how and why the Incident occurred, including all factors you believe contributed to it (e.g., human error, mechanical issues, environmental conditions, inadequate safety measures), and identify any person or entity

whom you contend bears responsibility, in whole or in part, and the factual basis for each such contention.

28. Describe any changes you have made to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident, including changes in how you plan, approve, supervise, or conduct risk assessments for stunts.

29. Identify all categories of documents and electronically stored information in your possession, custody, or control that relate to the Subject Stunt, the Incident, Plaintiff's involvement, or any investigation or claim arising from the Incident (including but not limited to emails, text messages, call sheets, stunt plans, notes, photographs, and videos), and state where each category is maintained/stored.

### III.    REQUEST FOR PRODUCTION OF DOCUMENTS

1. All contracts, deal memos, engagement letters, emails, or other documents that describe, reflect, or relate to your hiring, engagement, or role on *The Pickup,* including any documents describing your responsibilities regarding the planning, approval, supervision, or execution of the Subject Stunt.

2. All job descriptions, role summaries, crew lists, or similar documents that identify your title, position, or responsibilities on *The Pickup,* including any documents showing your authority regarding stunt safety, vehicle operations, or on-set decision-making.

3. All documents you created, received, or reviewed that relate to the conception, planning, design, or approval of the Subject Stunt, including stunt plans, diagrams, breakdowns, outlines, shot lists, or written descriptions of how the Subject Stunt was to be performed.

4. All communications between you and any person or entity concerning the design, choreography, approval, modification, postponement, or cancellation of the Subject Stunt.

5. All documents that describe or reflect the scope of your authority with respect to the Subject Stunt, including authority to approve, modify, supervise, postpone, or cancel the stunt for safety or any other reason.

6. All safety manuals, policies, procedures, guidelines, or similar documents provided to you, or made available to you, in connection with *The Pickup* that address stunts, vehicle operations, on-set safety, or emergency response.

7. All stunt-specific safety protocols, method statements, safe work plans, or written procedures that you drafted, reviewed, or received relating specifically to the Subject Stunt, including all drafts, revisions, and versions.

8. All risk assessments, hazard analyses, job safety analyses, checklists, or similar evaluations that you created, reviewed, or received relating to the Subject Stunt or any other automobile stunt performed for *The Pickup,* including notes you made on such documents.

9. All documents reflecting or relating to any safety meetings or briefings that you attended, led, or were invited to concerning the Subject Stunt or vehicle stunts from *The Pickup*, including agendas, notes, sign-in sheets, handouts, and any written talking points.

10. All documents in your possession or control reflecting the training, certifications, licenses, or qualifications of any stunt coordinator, assistant stunt coordinator, driver, or stunt performer involved in the Subject Stunt, to the extent such documents were provided to you or maintained by you.

11. All documents reflecting your own training, certifications, licenses, and experience relating to stunts, stunt coordination, vehicle operations, risk assessment, or safety management, including resumes, CVs, union or guild records, or professional profiles you used or provided in connection with *The Pickup*.

12. All call sheets, shooting schedules, daily production reports, or similar documents in your possession or control that relate to any day on which the Subject Stunt was planned, rehearsed, or performed.

13. All documents relating to any rehearsals, test runs, or trial versions of the Subject Stunt that you participated in, observed, or were informed about, including rehearsal schedules, notes, videos, emails, or messages describing differences between rehearsals and the stunt as executed during the Incident.

14. All communications in your possession or control in which any person raised, discussed, or responded to safety concerns, reservations, complaints, or objections regarding the Subject Stunt or the condition of any vehicle used in it, including any suggestions for changes or recommendations to cancel or postpone the stunt.

15. All communications sent or received by you on the day of the Incident that reference or relate to the Subject Stunt, the vehicles used, staffing or crew availability, weather or environmental conditions, time pressures, or safety issues.

16. All documents in your possession or control that identify, describe, or relate to any vehicle used in the Subject Stunt, including descriptions of modifications or rigging, safety equipment, or any special features relevant to the stunt.

17. All documents you created, received, or reviewed that relate to the condition, maintenance, repair, inspection, or mechanical issues of any vehicle used in the Subject

Stunt, including any reports or communications about problems, limitations, prior damage, or needed repairs.

18. All photographs, videos, audio recordings, or other media in your possession, custody, or control depicting (a) the Subject Stunt (including rehearsals, setup, and execution), (b) the Incident, and/or (c) the scene, vehicles, or injuries immediately before or after the Incident, whether taken with professional equipment or personal devices.

19. All incident reports, accident reports, written or recorded statements, notes, diaries, logs, or memoranda prepared by you, or prepared at your direction, concerning the Subject Stunt, the Incident, or Plaintiff's injuries.

20. All communications (emails, texts, messages, letters, social media messages, etc.) you sent or received after the Incident that discuss, describe, or analyze how the Incident occurred, why it occurred, who was involved, or who may be at fault, including communications with Production Company personnel, other crew, or third parties.

21. All documents relating to any internal or external investigation of the Incident in which you participated, including interview requests, interview notes or transcripts, statements, questionnaires, draft or final investigation reports provided to you, and any responses or comments you made.

22. All communications between you and any insurance company, insurance broker, insurance adjuster, or other insurance representative relating to the Subject Stunt or any claim arising from it.

23. All insurance policies, endorsements, declarations pages, or certificates of insurance in your possession or control that may provide coverage to you for claims arising from the

Subject Stunt including but not limited to general liability, professional liability, errors and omissions, or personal liability policies.

24. All documents in your possession or control that relate to any other accidents, injuries, complaints, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup,* including incident reports, emails, texts, or notes describing such events and any resulting safety changes.

25. All documents in your possession or control relating to any prior accidents, injuries, claims, or "near-miss" incidents involving similar automobile stunts on other productions in which you were involved, to the extent you retained or were provided with documents about those incidents.

26. All documents in your possession or control that relate to Plaintiff's role, duties, or status in connection with *The Pickup* or the Subject Stunt, including any communications regarding whether Plaintiff was an employee or independent contractor, who was believed to be Plaintiff's employer, and who had the right to direct and control Plaintiff's work.

27. All documents reflecting or relating to instructions, directions, or warnings given to Plaintiff regarding participation in the Subject Stunt, including any written communications, notes, or diagrams you used or provided to explain where Plaintiff should be positioned and what Plaintiff was to do.

28. All documents in your possession or control reflecting any post-incident reviews, "lessons learned," self-evaluations, emails, or notes in which you discussed changes to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident.

29. All entries from any personal or professional notebooks, journals, calendars (paper or electronic), or logs maintained by you that reference the Subject Stunt, Plaintiff, or any related planning meetings, rehearsals, or investigations of the Subject Stunt.

30. All remaining documents and electronically stored information in your possession, custody, or control that relate in any way to (a) the planning, approval, or execution of the Subject Stunt; (b) the Incident; (c) Plaintiff's injuries; or (d) any claim, complaint, or legal proceeding arising from the Incident, that are not otherwise produced in response to the preceding Requests.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

/s/ Blake Kilday
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER

**JAN 23, 2026 11:01 AM**

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

|  |  |
|---|---|
| **MARVIN HAVEN,**<br><br>       **Plaintiff,**<br>**vs.**<br><br>**ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,**<br><br>       **Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT GREG WADDLE

TO:    Defendant, Greg Waddle
       5362 Muirwood Place
       Powder Springs, Georgia 30127

COMES NOW Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith

to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-

five (45) days after service hereof, in the form provided by law, the following interrogatories and

request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is

available to you, your attorneys or agents, and anyone else acting on your behalf.  If the complete

answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan, PLLC, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

## I.    <u>DEFINITIONS</u>

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not

limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)    an <u>individual</u>, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)    a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)    <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book,

telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## II.    <u>INTERROGATORIES</u>

1. Identify your current position, title, and responsibilities with the International Alliance of Theatrical Stage Employees Local 479 ("IATSE" or the "Union"), including the date you first assumed the office of President, all prior officer or leadership positions held within the Union, and a description of your duties in each such position.

2. Describe in detail your understanding of the nature, scope, and content of any fiduciary duties, duties of fair representation, or other legal or contractual obligations that you, as President of IATSE, owed to members of the Union, including Plaintiff, at the time of the incident in which Plaintiff was injured during an automobile stunt on the production of the motion picture titled *The Pickup*.

3. State whether, at any time prior to Plaintiff's injury on the production of *The Pickup*, you were aware that Plaintiff was working on that production, and if so, specify when and how you first became aware of Plaintiff's involvement and what you understood Plaintiff's job position to be.

4. State your understanding of Plaintiff's employment status at the time of the automobile stunt (i.e., whether Plaintiff was an employee or an independent contractor, and of whom), and identify all facts, documents, and communications upon which you base that understanding.

5. Describe in detail all steps (if any) taken by you, as President of IATSE, to determine or verify the employment status of Union members, including Plaintiff, working on the production of *The Pickup*.

6. State whether, at any time prior to Plaintiff's injury, you became aware that an automobile stunt involving Plaintiff (or involving vehicles in which Plaintiff would be present) was to be performed on *The Pickup*, and if so, specify: (a) the date or approximate date when you first learned of the stunt; (b) how you learned of it; and (c) the nature and level of detail of the information you received about the stunt.

7. Describe your understanding, at the time and based on information available to you then, of the inherent dangers, risks, or hazards associated with the Subject Stunt, and state when you first acquired that understanding.

8. Identify and describe all steps you personally took, if any, upon becoming aware of the Subject Stunt to assess, address, reduce, or mitigate the risks to Plaintiff or other IATSE members, including any communications, site visits, consultations, or safety interventions.

9. State whether you contend that you had no duty, obligation, or authority to intervene, advocate, or act on Plaintiff's behalf with respect to the planning, approval, or execution of the Subject Stunt; if you so contend, describe in detail all factual and legal bases for that contention.

10. Describe all policies, procedures, written guidelines, bylaws, or constitutional provisions of IATSE that, at the time of Plaintiff's injury, related to: (a) workplace safety; (b) stunt work or high-risk activities; (c) reporting unsafe conditions; and (d) the Union's duty to act on individual members' safety concerns during a production.

11. Describe all policies, procedures, or practices in effect at IATSE at the time of Plaintiff's injury regarding how the Union, and specifically you as President, would respond when notified that a member faced potentially unsafe working conditions on a set, including any escalation process, investigation protocol, or communication with employers or production companies.

12. State whether you, in your capacity as President, were aware of any complaints, reports, or concerns raised by IATSE members, Plaintiff, or on Plaintiff's behalf, regarding safety or working conditions on *The Pickup* at any time before the incident, and if so, identify: (a) the nature of each complaint or concern; (b) the date you became aware of it; (c) how you became aware; and (d) what, if anything, you did in response.

13. Identify all communications (oral or written, including emails, texts, letters, or in-person or telephone conversations) you had with any representative of the production company for *The Pickup*, or any associated employer, regarding: (a) Plaintiff; (b) Plaintiff's employment status; (c) safety conditions on the production; or (d) the Subject Stunt, and describe in detail the substance of each such communication.

14. Identify all communications you had with any agent, officer, steward, business representative, or other official of IATSE regarding: (a) Plaintiff; (b) Plaintiff's injury; (c) Plaintiff's employment status; (d) the Subject Stunt; or (e) safety conditions on *The Pickup*, and state the date, participants, and substance of each such communication.

15. Describe any training, seminars, instructions, or written materials that IATSE provided to its officers, agents, or members between the time you assumed the presidency and the date of Plaintiff's injury concerning workplace safety, stunt safety, hazard recognition, or reporting unsafe conditions on film productions.

16. Describe any safety-related programs, initiatives, or policies that you implemented, championed, modified, or discontinued as President of IATSE Local 479 during your tenure prior to Plaintiff's injury, and explain how those programs or policies were intended to protect members, including Plaintiff, from injury.

17. State whether, prior to Plaintiff's injury, IATSE, under your leadership, had any formal or informal policy regarding Union involvement in reviewing, monitoring, or commenting on stunt design, stunt coordination, or other high-risk sequences on productions where its members worked, and if so, describe that policy in detail.

18. State whether, at any time prior to Plaintiff's injury, IATSE or you personally were provided with, requested, or had access to any call sheets, safety bulletins, risk assessments, stunt plans, or other safety-related documents for *The Pickup* that referenced the Subject Stunt, and if so, identify such documents and describe how they came to your or the IATSE's attention.

19. Describe in detail all actions you took after learning of Plaintiff's injury on *The Pickup*, including: (a) when and how you first learned of the injury; (b) any investigation you initiated or participated in; (c) any communications you had with Plaintiff; (d) any communications you had with the production company, insurers, or other unions or named defendants; and (e) any steps you took to protect Plaintiff's rights or to address ongoing safety concerns on the production.

20. State whether you, in your capacity as President of IATSE, reported, referred, or otherwise communicated Plaintiff's injury or the circumstances of the automobile stunt to any governmental agency, safety organization, or industry, and if so, identify each such entity and describe the substance and date of each report or communication.

21. Describe any internal Union investigations, inquiries, or reviews conducted by IATSE or, in which you participated or which you authorized, regarding the automobile stunt on *The Pickup* and Plaintiff's injury, including: (a) who conducted the investigation; (b) what information was gathered; (c) what findings or conclusions were reached; and (d) what actions, if any, were taken as a result.

22. State whether, at any time, you recommended, requested, or directed that any grievance, complaint, or charge be filed or pursued on Plaintiff's behalf in connection with safety conditions on *The Pickup* or Plaintiff's injury, and describe the nature, timing, and outcome of any such grievance, complaint, or charge.

23. State whether you contend that IATSE fully complied with all of its duties and obligations to Plaintiff in connection with Plaintiff's work on *The Pickup*, including the automobile stunt and resulting injury; if so, describe in detail all facts, actions, and omissions upon which you base that contention.

24. State whether you contend that any aspect of Plaintiff's employment status as an independent contractor or employee was outside the scope of your responsibilities or concern as President of IATSE; if so, explain the basis for that contention and identify any Union policies, bylaws, or governing documents that support that contention.

25. Identify all insurance policies, benefit plans, or member-protection programs of which you were aware, and which you understood might apply to injuries sustained by IATSE members in the course and scope of work on film productions, and describe your understanding of any role you, as President, had in assisting members to access such coverage or benefits.

26. State whether you, in your capacity as President, ever communicated with Plaintiff directly about: (a) Plaintiff's work on *The Pickup*; (b) Plaintiff's employment status; (c) safety concerns on that production; or (d) the automobile stunt at issue, and, for each such communication, state the date, method of communication, participants, and substance of what was said.

27. Describe all prior incidents, complaints, or grievances, if any, that came to your attention during your tenure as President, in which an IATSE member alleged unsafe working conditions, inadequate stunt safety, or misclassification as an independent contractor/employee on a film production, and explain how you and the Union responded in each instance.

28. State whether, at any time prior to Plaintiff's injury, you considered or discussed implementing additional safety-related training, oversight, or advocacy measures within IATSE specifically focused on stunt work or high-risk sequences, and if so, describe what measures were considered, who was involved in such discussions, and why they were or were not implemented before Plaintiff's injury.

29. Identify all persons (including officers, business agents, stewards, or committee members) within IATSE to whom you delegated, in whole or in part, responsibilities relating to member safety, workplace conditions, or response to member complaints on productions such as *The Pickup*, and describe the nature of the delegation and any oversight you exercised.

30. State all facts upon which you contend that you did not breach any fiduciary duty, duty of fair representation, or other legal or contractual obligation owed to Plaintiff in connection with the planning, execution, and aftermath of the automobile stunt on *The Pickup*,

including identification of all actions you affirmatively took to protect Plaintiff's interests and safety.

### III.    <u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

1. All documents that reflect, describe, or relate to your role, duties, and responsibilities as IATSE at any time from the beginning of pre-production of the motion picture titled *The Pickup* through the present, including but not limited to Union constitutions, bylaws, job descriptions, policy statements, or internal memoranda describing the President's obligations to members.

2. All documents that reflect, describe, or relate to any fiduciary duties, duties of fair representation, or other legal or contractual obligations that you, as President of IATSE, owed to Union members at the time of Plaintiff's injury on the production of *The Pickup*, including but not limited to constitutions, bylaws, policy manuals, training materials, and correspondence with IATSE regarding such duties.

3. All documents that reflect, describe, or relate to your knowledge that Plaintiff was working on the production of *The Pickup*, including documents identifying Plaintiff's job title, craft, department, or classification, and any records or communications showing when and how you first became aware of Plaintiff's involvement in that production.

4. All documents that reflect, describe, or relate to your understanding, at any time prior to Plaintiff's injury, of Plaintiff's employment status on *The Pickup* (including whether Plaintiff was treated as an employee or independent contractor, and of whom), including but not limited to emails, letters, membership records, production rosters, call sheets, or communications with production representatives or other Union officials.

5.  All documents that reflect, describe, or relate to any steps taken by you, or at your direction, to determine, verify, challenge, or address Plaintiff's employment status or classification (employee versus independent contractor) on *The Pickup*, including any internal Union notes, emails, grievance files, or correspondence with Plaintiff, the production company, payroll companies, or third-party employers.

6.  All documents that reflect, describe, or relate to your knowledge or awareness, at any time prior to Plaintiff's injury, that an automobile stunt in which Plaintiff would be present, or that would materially affect Plaintiff's safety, was planned or scheduled on the production of *The Pickup*, including any call sheets, stunt notices, safety bulletins, risk assessments, or communications you received or reviewed.

7.  All documents that reflect, describe, or relate to your understanding of the inherent risks, hazards, or dangers associated with the Subject Stunt, including any safety bulletins, industry guidelines, training materials, expert communications, or internal memoranda addressing stunt safety or high-risk activities relevant to that stunt.

8.  All documents that reflect, describe, or relate to any steps you personally took, or directed others to take, upon becoming aware of the planned automobile stunt on *The Pickup* to assess, address, reduce, or mitigate risks to Plaintiff or other IATSE members, including but not limited to emails, letters, notes of conversations, meeting minutes, and internal reports.

9.  All documents that reflect, describe, or relate to any decision by you not to act, intervene, or advocate on Plaintiff's behalf with respect to the planning, approval, or execution of the automobile stunt on *The Pickup*, including any internal communications, memoranda, or notes explaining or discussing the reasons for such inaction.

10. All policies, procedures, guidelines, manuals, bulletins, or written materials in effect at IATSE at the time of Plaintiff's injury that relate to workplace safety, stunt work, high-risk activities, reporting unsafe conditions, or injury prevention on film productions, including any versions or revisions that you reviewed, approved, or helped implement as President.

11. All documents that reflect, describe, or relate to the procedures or practices of IATSE, under your leadership, for responding to reports or complaints by members about unsafe working conditions, hazardous stunts, or misclassification of employment status, including any flow charts, standard operating procedures, training materials, or internal memoranda.

12. All documents that reflect, describe, or relate to any complaints, concerns, reports, or communications made by Plaintiff, or on Plaintiff's behalf, to you or to IATSE, regarding safety conditions, stunt risks, or employment status on *The Pickup*, including the Union's records, notes, emails, and any response, investigation, or follow-up.

13. All communications between you and any representative, officer, agent, or employee of the production company for *The Pickup*, or any related production entity, that relate to: (a) Plaintiff; (b) Plaintiff's employment status; (c) safety conditions on the production; or (d) the Subject Stunt.

14. All communications between you and any officer, steward, business agent, committee member, or other representative of IATSE that relate to: (a) Plaintiff; (b) Plaintiff's work on *The Pickup*; (c) Plaintiff's injury; (d) Plaintiff's employment status; or (e) the automobile stunt or safety conditions on *The Pickup*.

15. All documents that reflect, describe, or relate to any training, seminars, workshops, written materials, or safety programs concerning workplace safety, stunt safety, hazard recognition, or reporting unsafe conditions that were developed, sponsored, mandated, or

disseminated by IATSE under your leadership during the period from the start of your presidency through the date of Plaintiff's injury.

16. All documents that reflect, describe, or relate to any safety-related initiatives, policies, or programs that you implemented, modified, discontinued, or promoted as President of IATSE that were intended, in whole or in part, to protect Union members from injury on film productions.

17. All documents that reflect, describe, or relate to any Union policy or practice, in effect under your leadership prior to Plaintiff's injury, concerning IATSE's involvement in reviewing, monitoring, or addressing stunt design, stunt coordination, or other high-risk sequences on productions where its members work.

18. All call sheets, safety bulletins, stunt notices, risk assessments, stunt plans, or other safety-related documents for *The Pickup* that referenced the Subject Stunt and were in your possession, custody, or control, or that were provided or made available to you or to IATSE during your presidency.

19. All documents that reflect, describe, or relate to your actions and communications after learning of Plaintiff's injury on *The Pickup*, including but not limited to: emails, notes, letters, text messages, internal reports, meeting minutes, and memoranda regarding any investigation, follow-up, member assistance, or communications with Plaintiff, the production company, insurers, or regulatory bodies.

20. All documents that reflect, describe, or relate to any internal Union investigations, inquiries, or reviews conducted by IATSE regarding the automobile stunt on *The Pickup* and/or Plaintiff's injury, including but not limited to investigation plans, witness interview notes, summaries, draft and final reports, findings, conclusions, and recommended actions.

21. All documents that reflect, describe, or relate to any grievances, complaints, unfair labor practice charges, or other formal or informal proceedings that were filed, considered, or discussed by you or IATSE in connection with safety conditions on *The Pickup* or Plaintiff's injury, including all related correspondence, notes, and resolutions or outcomes.

22. All documents that reflect, describe, or relate to any prior incidents, complaints, or grievances that came to your attention during your tenure as President in which IATSE members alleged unsafe working conditions, inadequate stunt safety on film productions and all documents reflecting how such matters were handled, investigated, or resolved.

23. All documents that reflect, describe, or relate to any insurance policies, benefit plans, assistance programs, or member-protection programs of which you were aware, and which you understood might apply to injuries sustained by IATSE members in the course and scope of their work on film productions, including any documents describing your role or the Union's role in assisting members to access such coverage or benefits.

24. All personal or official notes, memoranda, diaries, journals, calendars, or log entries maintained by you, in any format (paper or electronic), that reference: (a) Plaintiff; (b) *The Pickup*; (c) the Subject Stunt; (d) Plaintiff's employment status; or (e) safety concerns or Union actions relating to *The Pickup*.

25. All remaining documents and electronically stored information in your possession, custody, or control that concern, refer, or relate in any way to: (a) your fiduciary duties, duties of fair representation, or other obligations to Plaintiff; (b) Plaintiff's work and employment status on *The Pickup*; (c) the planning, approval, or execution of the automobile stunt during which Plaintiff was injured; or (d) any alleged breach of duty or

potential liability arising from the events at issue in this lawsuit, that have not been produced in response to the preceding Requests.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

/s/ Blake Kilday
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**JAN 23, 2026 11:01 AM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**IN STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| MARVIN HAVEN,<br><br>        **Plaintiff,**<br><br>**vs.**<br><br>ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,<br><br>        **Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT COREY SKLOV**

TO:    Defendant, Corey Sklov
       1982 Lansdowne Avenue
       Los Angeles, California 90032

Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-five (45) days after service hereof, in the form provided by law, the following interrogatories and request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is available to you, your attorneys or agents, and anyone else acting on your behalf.  If the complete

1

answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan, PLLC, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

## I.    **DEFINITIONS**

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not

limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)    an <u>individual,</u> shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)    a <u>firm, partnership, corporation, proprietorship, association or other organization or entity,</u> shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)    <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book,

3

telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## II.    INTERROGATORIES

1. Describe in detail your role, duties, and responsibilities with respect to the Subject Stunt, including any authority you had to design, approve, modify, supervise, postpone, or cancel the stunt.

2. Describe how you came to be involved with *The Pickup* and the Subject Stunt, including: (a) whether you were an employee, independent contractor, or otherwise engaged; (b) who hired or retained you; (c) the terms of your engagement; and (d) any written or oral agreements or understandings concerning your responsibilities.

3. Identify all persons who, to your knowledge, participated in the planning, approval, or supervision of the Subject Stunt and describe your interactions with each regarding the Subject Stunt.

4. Describe in detail how the Subject Stunt was conceived and designed, including: (a) who proposed it; (b) its intended visual effect; (c) the planned movements and speeds of each vehicle; (d) the positions and roles of occupants; and (e) any special effects, rigging, or camera considerations that influenced the design.

5. Provide a chronological timeline of key events relating to the Subject Stunt from initial conception through the day of the Incident, including dates of planning meetings,

rehearsals, risk assessments, safety reviews, and final approvals, and identify all persons who approved the stunt at each stage.

6. State whether you had the authority to stop, postpone, or modify the Subject Stunt at any time for safety reasons, and if so, describe the scope of that authority and any instructions or limitations that were communicated to you concerning its exercise.

7. Identify and describe all safety policies, procedures, guidelines, manuals, or industry standards that you understood to apply to the Subject Stunt and to your role, including any instructions you received from the film's Production Company or others about compliance with such policies.

8. Describe in detail each safety measure that you personally proposed, approved, or implemented for the Subject Stunt, including but not limited to: (a) restraints or harnesses; (b) helmets or padding; (c) roll cages; (d) speed limitations; (e) communication protocols; (f) safety perimeters or exclusion zones; and (g) presence of medical personnel.

9. State whether you participated in, ordered, reviewed, or were aware of any risk assessment, hazard analysis, job safety analysis, or similar evaluation relating to the Subject Stunt. For each such assessment, identify who conducted it, when it occurred, the risks identified, and any recommendations made—and describe whether and how those recommendations were implemented.

10. Describe all changes, if any, that were made to the original plan for the Subject Stunt (including vehicle speed, number of takes, camera positions, vehicle positions, safety equipment, or personnel) from the time of initial planning up to the Incident, including who proposed the changes, why they were made, and whether you agreed with or objected to any such changes.

11. Describe what you knew, before the Subject Stunt was performed, about the physical and environmental conditions under which it would occur (e.g., lighting, weather, road surface, obstacles, space limitations), and state whether you considered any of those conditions to present safety risks and what you did in response.

12. Identify each driver, stunt performer, and crew member involved in the Subject Stunt, and for each state what you knew regarding their training, experience with similar stunts, and qualifications at the time of the Incident.

13. Describe all training, briefings, demonstrations, or instructions you personally provided (verbally or in writing) to any person involved in the Subject Stunt, including Plaintiff, regarding how the stunt was to be performed, what safety procedures were to be followed, and what risks were associated with participation.

14. Identify and describe all safety meetings, toolbox talks, or briefings that you attended or led relating to the Subject Stunt or to stunts/vehicle operations on the day of the Incident, including the date, attendees, topics discussed, and any warnings or instructions you recall being given.

15. State whether, before the Incident, you received or were aware of any concerns, reservations, or objections raised by any person (including Plaintiff) about the safety of the Subject Stunt or the condition of any Vehicle. For each such concern, identify who raised it, when and how it was communicated, the substance of the concern, and what you did in response.

16. For each vehicle involved in the Subject Stunt, describe what you knew prior to the Incident about that vehicle's make, model, modifications, rigging, safety equipment, and

mechanical condition, including any issues, limitations, or prior damage that were known or reported to you.

17. State whether you performed, observed, requested, or were aware of any pre-use inspections, safety checks, or test runs of any vehicle or of the Subject Stunt as a whole, and for each such inspection or test run describe who performed it, when it occurred, what was checked, any problems discovered, and any corrective actions taken.

18. Describe your understanding, at the time of the Incident, of Plaintiff's role in connection with the Subject Stunt and *The Pickup,* including: (a) whether you understood Plaintiff to be an employee or independent contractor; (b) who, if anyone, you believed to be Plaintiff's employer; and (c) the extent to which you believed you had the right to direct and control Plaintiff's work.

19. Describe all directions, instructions, or commands you gave to Plaintiff on the day of the Incident concerning Plaintiff's participation in the Subject Stunt, including where to sit or stand, what to do inside the Vehicle, any safety measures to take, and any warnings about risks.

20. Provide a detailed, step-by-step narrative of the events as you recall them from immediately before the Subject Stunt began through the occurrence of the Incident and the immediate aftermath, including your location, what you observed, any communications you heard or made, and any deviations from the stunt plan that you noticed.

21. Identify all persons known to you who witnessed any aspect of the Subject Stunt or the Incident (including planning, rehearsals, and the accident itself), and for each describe what you understand that person saw, heard, or did in relation to the Incident.

22. State whether you prepared or gave any written or oral statements, notes, reports, emails, texts, or other communications concerning the Subject Stunt or the Incident (including to the Production Company, insurers, investigators, or regulatory agencies). For each, identify the date, the recipient(s), the general subject matter, and the current custodian of any written or recorded materials.

23. Describe any investigations of the Incident in which you participated (internal or external), including: (a) who conducted the investigation; (b) when it occurred; (c) what information or documents you provided; (d) whether you were interviewed; and (e) any findings, conclusions, or recommendations that were communicated to you.

24. State whether, before the Incident, you were aware of any other accidents, injuries, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup.* For each such event, describe the date, nature of the event, persons involved, and any safety changes you are aware were made as a result.

25. State whether you personally notified or communicated with any insurance company, insurance broker, or insurance representative regarding the Incident or claims arising from it. For each such communication, identify the insurer/representative, the date, the method of communication, and the subject matter.

26. Identify all insurance policies of which you are aware that might provide coverage to you for claims arising out of the Subject Stunt or the Incident, including the insurer, type of policy, policy number, and policy period.

27. State in detail your contentions and understanding as to how and why the Incident occurred, including all factors you believe contributed to it (e.g., human error, mechanical issues, environmental conditions, inadequate safety measures), and identify any person or entity

whom you contend bears responsibility, in whole or in part, and the factual basis for each such contention.

28. Describe any changes you have made to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident, including changes in how you plan, approve, supervise, or conduct risk assessments for stunts.

29. Identify all categories of documents and electronically stored information in your possession, custody, or control that relate to the Subject Stunt, the Incident, Plaintiff's involvement, or any investigation or claim arising from the Incident (including but not limited to emails, text messages, call sheets, stunt plans, notes, photographs, and videos), and state where each category is maintained/stored.

### III.    REQUEST FOR PRODUCTION OF DOCUMENTS

1. All contracts, deal memos, engagement letters, emails, or other documents that describe, reflect, or relate to your hiring, engagement, or role on *The Pickup,* including any documents describing your responsibilities regarding the planning, approval, supervision, or execution of the Subject Stunt.

2. All job descriptions, role summaries, crew lists, or similar documents that identify your title, position, or responsibilities on *The Pickup,* including any documents showing your authority regarding stunt safety, vehicle operations, or on-set decision-making.

3. All documents you created, received, or reviewed that relate to the conception, planning, design, or approval of the Subject Stunt, including stunt plans, diagrams, breakdowns, outlines, shot lists, or written descriptions of how the Subject Stunt was to be performed.

4. All communications between you and any person or entity concerning the design, choreography, approval, modification, postponement, or cancellation of the Subject Stunt.

5. All documents that describe or reflect the scope of your authority with respect to the Subject Stunt, including authority to approve, modify, supervise, postpone, or cancel the stunt for safety or any other reason.

6. All safety manuals, policies, procedures, guidelines, or similar documents provided to you, or made available to you, in connection with *The Pickup* that address stunts, vehicle operations, on-set safety, or emergency response.

7. All stunt-specific safety protocols, method statements, safe work plans, or written procedures that you drafted, reviewed, or received relating specifically to the Subject Stunt, including all drafts, revisions, and versions.

8. All risk assessments, hazard analyses, job safety analyses, checklists, or similar evaluations that you created, reviewed, or received relating to the Subject Stunt or any other automobile stunt performed for *The Pickup,* including notes you made on such documents.

9. All documents reflecting or relating to any safety meetings or briefings that you attended, led, or were invited to concerning the Subject Stunt or vehicle stunts from *The Pickup*, including agendas, notes, sign-in sheets, handouts, and any written talking points.

10. All documents in your possession or control reflecting the training, certifications, licenses, or qualifications of any stunt coordinator, assistant stunt coordinator, driver, or stunt performer involved in the Subject Stunt, to the extent such documents were provided to you or maintained by you.

11. All documents reflecting your own training, certifications, licenses, and experience relating to stunts, stunt coordination, vehicle operations, risk assessment, or safety management, including resumes, CVs, union or guild records, or professional profiles you used or provided in connection with *The Pickup.*

12. All call sheets, shooting schedules, daily production reports, or similar documents in your possession or control that relate to any day on which the Subject Stunt was planned, rehearsed, or performed.

13. All documents relating to any rehearsals, test runs, or trial versions of the Subject Stunt that you participated in, observed, or were informed about, including rehearsal schedules, notes, videos, emails, or messages describing differences between rehearsals and the stunt as executed during the Incident.

14. All communications in your possession or control in which any person raised, discussed, or responded to safety concerns, reservations, complaints, or objections regarding the Subject Stunt or the condition of any vehicle used in it, including any suggestions for changes or recommendations to cancel or postpone the stunt.

15. All communications sent or received by you on the day of the Incident that reference or relate to the Subject Stunt, the vehicles used, staffing or crew availability, weather or environmental conditions, time pressures, or safety issues.

16. All documents in your possession or control that identify, describe, or relate to any vehicle used in the Subject Stunt, including descriptions of modifications or rigging, safety equipment, or any special features relevant to the stunt.

17. All documents you created, received, or reviewed that relate to the condition, maintenance, repair, inspection, or mechanical issues of any vehicle used in the Subject

Stunt, including any reports or communications about problems, limitations, prior damage, or needed repairs.

18. All photographs, videos, audio recordings, or other media in your possession, custody, or control depicting (a) the Subject Stunt (including rehearsals, setup, and execution), (b) the Incident, and/or (c) the scene, vehicles, or injuries immediately before or after the Incident, whether taken with professional equipment or personal devices.

19. All incident reports, accident reports, written or recorded statements, notes, diaries, logs, or memoranda prepared by you, or prepared at your direction, concerning the Subject Stunt, the Incident, or Plaintiff's injuries.

20. All communications (emails, texts, messages, letters, social media messages, etc.) you sent or received after the Incident that discuss, describe, or analyze how the Incident occurred, why it occurred, who was involved, or who may be at fault, including communications with Production Company personnel, other crew, or third parties.

21. All documents relating to any internal or external investigation of the Incident in which you participated, including interview requests, interview notes or transcripts, statements, questionnaires, draft or final investigation reports provided to you, and any responses or comments you made.

22. All communications between you and any insurance company, insurance broker, insurance adjuster, or other insurance representative relating to the Subject Stunt or any claim arising from it.

23. All insurance policies, endorsements, declarations pages, or certificates of insurance in your possession or control that may provide coverage to you for claims arising from the

Subject Stunt including but not limited to general liability, professional liability, errors and omissions, or personal liability policies.

24. All documents in your possession or control that relate to any other accidents, injuries, complaints, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup,* including incident reports, emails, texts, or notes describing such events and any resulting safety changes.

25. All documents in your possession or control relating to any prior accidents, injuries, claims, or "near-miss" incidents involving similar automobile stunts on other productions in which you were involved, to the extent you retained or were provided with documents about those incidents.

26. All documents in your possession or control that relate to Plaintiff's role, duties, or status in connection with *The Pickup* or the Subject Stunt, including any communications regarding whether Plaintiff was an employee or independent contractor, who was believed to be Plaintiff's employer, and who had the right to direct and control Plaintiff's work.

27. All documents reflecting or relating to instructions, directions, or warnings given to Plaintiff regarding participation in the Subject Stunt, including any written communications, notes, or diagrams you used or provided to explain where Plaintiff should be positioned and what Plaintiff was to do.

28. All documents in your possession or control reflecting any post-incident reviews, "lessons learned," self-evaluations, emails, or notes in which you discussed changes to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident.

29. All entries from any personal or professional notebooks, journals, calendars (paper or electronic), or logs maintained by you that reference the Subject Stunt, Plaintiff, or any related planning meetings, rehearsals, or investigations of the Subject Stunt.

30. All remaining documents and electronically stored information in your possession, custody, or control that relate in any way to (a) the planning, approval, or execution of the Subject Stunt; (b) the Incident; (c) Plaintiff's injuries; or (d) any claim, complaint, or legal proceeding arising from the Incident, that are not otherwise produced in response to the preceding Requests.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

/s/ Blake Kilday
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER
**JAN 23, 2026 11:01 AM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MARVIN HAVEN,** | |
| **Plaintiff,** | **CIVIL ACTION** |
| **vs.** | **FILE NO:** |
| **ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STEVE RITZI

TO:    Defendant, Steve Ritzi
       235 Forrest Lake Drive
       Atlanta, 30327

COMES NOW Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith

to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-

five (45) days after service hereof, in the form provided by law, the following interrogatories and

request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is

available to you, your attorneys or agents, and anyone else acting on your behalf.  If the complete

answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan, PLLC, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

## I.   DEFINITIONS

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not

limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)    an <u>individual</u>, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)    a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)    <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book,

telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## II.    INTERROGATORIES

1. Describe in detail your role, duties, and responsibilities with respect to the Subject Stunt, including any authority you had to design, approve, modify, supervise, postpone, or cancel the stunt.

2. Describe how you came to be involved with *The Pickup* and the Subject Stunt, including: (a) whether you were an employee, independent contractor, or otherwise engaged; (b) who hired or retained you; (c) the terms of your engagement; and (d) any written or oral agreements or understandings concerning your responsibilities.

3. Identify all persons who, to your knowledge, participated in the planning, approval, or supervision of the Subject Stunt and describe your interactions with each regarding the Subject Stunt.

4. Describe in detail how the Subject Stunt was conceived and designed, including: (a) who proposed it; (b) its intended visual effect; (c) the planned movements and speeds of each vehicle; (d) the positions and roles of occupants; and (e) any special effects, rigging, or camera considerations that influenced the design.

5. Provide a chronological timeline of key events relating to the Subject Stunt from initial conception through the day of the Incident, including dates of planning meetings,

rehearsals, risk assessments, safety reviews, and final approvals, and identify all persons who approved the stunt at each stage.

6.  State whether you had the authority to stop, postpone, or modify the Subject Stunt at any time for safety reasons, and if so, describe the scope of that authority and any instructions or limitations that were communicated to you concerning its exercise.

7.  Identify and describe all safety policies, procedures, guidelines, manuals, or industry standards that you understood to apply to the Subject Stunt and to your role, including any instructions you received from the film's Production Company or others about compliance with such policies.

8.  Describe in detail each safety measure that you personally proposed, approved, or implemented for the Subject Stunt, including but not limited to: (a) restraints or harnesses; (b) helmets or padding; (c) roll cages; (d) speed limitations; (e) communication protocols; (f) safety perimeters or exclusion zones; and (g) presence of medical personnel.

9.  State whether you participated in, ordered, reviewed, or were aware of any risk assessment, hazard analysis, job safety analysis, or similar evaluation relating to the Subject Stunt. For each such assessment, identify who conducted it, when it occurred, the risks identified, and any recommendations made—and describe whether and how those recommendations were implemented.

10. Describe all changes, if any, that were made to the original plan for the Subject Stunt (including vehicle speed, number of takes, camera positions, vehicle positions, safety equipment, or personnel) from the time of initial planning up to the Incident, including who proposed the changes, why they were made, and whether you agreed with or objected to any such changes.

11. Describe what you knew, before the Subject Stunt was performed, about the physical and environmental conditions under which it would occur (e.g., lighting, weather, road surface, obstacles, space limitations), and state whether you considered any of those conditions to present safety risks and what you did in response.

12. Identify each driver, stunt performer, and crew member involved in the Subject Stunt, and for each state what you knew regarding their training, experience with similar stunts, and qualifications at the time of the Incident.

13. Describe all training, briefings, demonstrations, or instructions you personally provided (verbally or in writing) to any person involved in the Subject Stunt, including Plaintiff, regarding how the stunt was to be performed, what safety procedures were to be followed, and what risks were associated with participation.

14. Identify and describe all safety meetings, toolbox talks, or briefings that you attended or led relating to the Subject Stunt or to stunts/vehicle operations on the day of the Incident, including the date, attendees, topics discussed, and any warnings or instructions you recall being given.

15. State whether, before the Incident, you received or were aware of any concerns, reservations, or objections raised by any person (including Plaintiff) about the safety of the Subject Stunt or the condition of any Vehicle. For each such concern, identify who raised it, when and how it was communicated, the substance of the concern, and what you did in response.

16. For each vehicle involved in the Subject Stunt, describe what you knew prior to the Incident about that vehicle's make, model, modifications, rigging, safety equipment, and

mechanical condition, including any issues, limitations, or prior damage that were known or reported to you.

17. State whether you performed, observed, requested, or were aware of any pre-use inspections, safety checks, or test runs of any vehicle or of the Subject Stunt as a whole, and for each such inspection or test run describe who performed it, when it occurred, what was checked, any problems discovered, and any corrective actions taken.

18. Describe your understanding, at the time of the Incident, of Plaintiff's role in connection with the Subject Stunt and *The Pickup,* including: (a) whether you understood Plaintiff to be an employee or independent contractor; (b) who, if anyone, you believed to be Plaintiff's employer; and (c) the extent to which you believed you had the right to direct and control Plaintiff's work.

19. Describe all directions, instructions, or commands you gave to Plaintiff on the day of the Incident concerning Plaintiff's participation in the Subject Stunt, including where to sit or stand, what to do inside the Vehicle, any safety measures to take, and any warnings about risks.

20. Provide a detailed, step-by-step narrative of the events as you recall them from immediately before the Subject Stunt began through the occurrence of the Incident and the immediate aftermath, including your location, what you observed, any communications you heard or made, and any deviations from the stunt plan that you noticed.

21. Identify all persons known to you who witnessed any aspect of the Subject Stunt or the Incident (including planning, rehearsals, and the accident itself), and for each describe what you understand that person saw, heard, or did in relation to the Incident.

22. State whether you prepared or gave any written or oral statements, notes, reports, emails, texts, or other communications concerning the Subject Stunt or the Incident (including to the Production Company, insurers, investigators, or regulatory agencies). For each, identify the date, the recipient(s), the general subject matter, and the current custodian of any written or recorded materials.

23. Describe any investigations of the Incident in which you participated (internal or external), including: (a) who conducted the investigation; (b) when it occurred; (c) what information or documents you provided; (d) whether you were interviewed; and (e) any findings, conclusions, or recommendations that were communicated to you.

24. State whether, before the Incident, you were aware of any other accidents, injuries, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup.* For each such event, describe the date, nature of the event, persons involved, and any safety changes you are aware were made as a result.

25. State whether you personally notified or communicated with any insurance company, insurance broker, or insurance representative regarding the Incident or claims arising from it. For each such communication, identify the insurer/representative, the date, the method of communication, and the subject matter.

26. Identify all insurance policies of which you are aware that might provide coverage to you for claims arising out of the Subject Stunt or the Incident, including the insurer, type of policy, policy number, and policy period.

27. State in detail your contentions and understanding as to how and why the Incident occurred, including all factors you believe contributed to it (e.g., human error, mechanical issues, environmental conditions, inadequate safety measures), and identify any person or entity

whom you contend bears responsibility, in whole or in part, and the factual basis for each such contention.

28. Describe any changes you have made to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident, including changes in how you plan, approve, supervise, or conduct risk assessments for stunts.

29. Identify all categories of documents and electronically stored information in your possession, custody, or control that relate to the Subject Stunt, the Incident, Plaintiff's involvement, or any investigation or claim arising from the Incident (including but not limited to emails, text messages, call sheets, stunt plans, notes, photographs, and videos), and state where each category is maintained/stored.

## III.    REQUEST FOR PRODUCTION OF DOCUMENTS

1. All contracts, deal memos, engagement letters, emails, or other documents that describe, reflect, or relate to your hiring, engagement, or role on *The Pickup,* including any documents describing your responsibilities regarding the planning, approval, supervision, or execution of the Subject Stunt.

2. All job descriptions, role summaries, crew lists, or similar documents that identify your title, position, or responsibilities on *The Pickup,* including any documents showing your authority regarding stunt safety, vehicle operations, or on-set decision-making.

3. All documents you created, received, or reviewed that relate to the conception, planning, design, or approval of the Subject Stunt, including stunt plans, diagrams, breakdowns, outlines, shot lists, or written descriptions of how the Subject Stunt was to be performed.

4. All communications between you and any person or entity concerning the design, choreography, approval, modification, postponement, or cancellation of the Subject Stunt.

5. All documents that describe or reflect the scope of your authority with respect to the Subject Stunt, including authority to approve, modify, supervise, postpone, or cancel the stunt for safety or any other reason.

6. All safety manuals, policies, procedures, guidelines, or similar documents provided to you, or made available to you, in connection with *The Pickup* that address stunts, vehicle operations, on-set safety, or emergency response.

7. All stunt-specific safety protocols, method statements, safe work plans, or written procedures that you drafted, reviewed, or received relating specifically to the Subject Stunt, including all drafts, revisions, and versions.

8. All risk assessments, hazard analyses, job safety analyses, checklists, or similar evaluations that you created, reviewed, or received relating to the Subject Stunt or any other automobile stunt performed for *The Pickup,* including notes you made on such documents.

9. All documents reflecting or relating to any safety meetings or briefings that you attended, led, or were invited to concerning the Subject Stunt or vehicle stunts from *The Pickup*, including agendas, notes, sign-in sheets, handouts, and any written talking points.

10. All documents in your possession or control reflecting the training, certifications, licenses, or qualifications of any stunt coordinator, assistant stunt coordinator, driver, or stunt performer involved in the Subject Stunt, to the extent such documents were provided to you or maintained by you.

11. All documents reflecting your own training, certifications, licenses, and experience relating to stunts, stunt coordination, vehicle operations, risk assessment, or safety management, including resumes, CVs, union or guild records, or professional profiles you used or provided in connection with *The Pickup.*

12. All call sheets, shooting schedules, daily production reports, or similar documents in your possession or control that relate to any day on which the Subject Stunt was planned, rehearsed, or performed.

13. All documents relating to any rehearsals, test runs, or trial versions of the Subject Stunt that you participated in, observed, or were informed about, including rehearsal schedules, notes, videos, emails, or messages describing differences between rehearsals and the stunt as executed during the Incident.

14. All communications in your possession or control in which any person raised, discussed, or responded to safety concerns, reservations, complaints, or objections regarding the Subject Stunt or the condition of any vehicle used in it, including any suggestions for changes or recommendations to cancel or postpone the stunt.

15. All communications sent or received by you on the day of the Incident that reference or relate to the Subject Stunt, the vehicles used, staffing or crew availability, weather or environmental conditions, time pressures, or safety issues.

16. All documents in your possession or control that identify, describe, or relate to any vehicle used in the Subject Stunt, including descriptions of modifications or rigging, safety equipment, or any special features relevant to the stunt.

17. All documents you created, received, or reviewed that relate to the condition, maintenance, repair, inspection, or mechanical issues of any vehicle used in the Subject

Stunt, including any reports or communications about problems, limitations, prior damage, or needed repairs.

18. All photographs, videos, audio recordings, or other media in your possession, custody, or control depicting (a) the Subject Stunt (including rehearsals, setup, and execution), (b) the Incident, and/or (c) the scene, vehicles, or injuries immediately before or after the Incident, whether taken with professional equipment or personal devices.

19. All incident reports, accident reports, written or recorded statements, notes, diaries, logs, or memoranda prepared by you, or prepared at your direction, concerning the Subject Stunt, the Incident, or Plaintiff's injuries.

20. All communications (emails, texts, messages, letters, social media messages, etc.) you sent or received after the Incident that discuss, describe, or analyze how the Incident occurred, why it occurred, who was involved, or who may be at fault, including communications with Production Company personnel, other crew, or third parties.

21. All documents relating to any internal or external investigation of the Incident in which you participated, including interview requests, interview notes or transcripts, statements, questionnaires, draft or final investigation reports provided to you, and any responses or comments you made.

22. All communications between you and any insurance company, insurance broker, insurance adjuster, or other insurance representative relating to the Subject Stunt or any claim arising from it.

23. All insurance policies, endorsements, declarations pages, or certificates of insurance in your possession or control that may provide coverage to you for claims arising from the

Subject Stunt including but not limited to general liability, professional liability, errors and omissions, or personal liability policies.

24. All documents in your possession or control that relate to any other accidents, injuries, complaints, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup,* including incident reports, emails, texts, or notes describing such events and any resulting safety changes.

25. All documents in your possession or control relating to any prior accidents, injuries, claims, or "near-miss" incidents involving similar automobile stunts on other productions in which you were involved, to the extent you retained or were provided with documents about those incidents.

26. All documents in your possession or control that relate to Plaintiff's role, duties, or status in connection with *The Pickup* or the Subject Stunt, including any communications regarding whether Plaintiff was an employee or independent contractor, who was believed to be Plaintiff's employer, and who had the right to direct and control Plaintiff's work.

27. All documents reflecting or relating to instructions, directions, or warnings given to Plaintiff regarding participation in the Subject Stunt, including any written communications, notes, or diagrams you used or provided to explain where Plaintiff should be positioned and what Plaintiff was to do.

28. All documents in your possession or control reflecting any post-incident reviews, "lessons learned," self-evaluations, emails, or notes in which you discussed changes to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident.

29. All entries from any personal or professional notebooks, journals, calendars (paper or electronic), or logs maintained by you that reference the Subject Stunt, Plaintiff, or any related planning meetings, rehearsals, or investigations of the Subject Stunt.

30. All remaining documents and electronically stored information in your possession, custody, or control that relate in any way to (a) the planning, approval, or execution of the Subject Stunt; (b) the Incident; (c) Plaintiff's injuries; or (d) any claim, complaint, or legal proceeding arising from the Incident, that are not otherwise produced in response to the preceding Requests.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

/s/ Blake Kilday
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
**JAN 23, 2026 11:01 AM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MARVIN HAVEN,** | |
| **Plaintiff,** | **CIVIL ACTION** |
| **vs.** | **FILE NO:** |
| **ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JEF GROFF

TO:     Defendant, Jef Groff
        11613 Teddington Court
        Bentonville, Arkansas 72712

COMES NOW Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-five (45) days after service hereof, in the form provided by law, the following interrogatories and request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is available to you, your attorneys or agents, and anyone else acting on your behalf.  If the complete

answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan, PLLC, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

## I.    <u>DEFINITIONS</u>

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not

limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)    an <u>individual</u>, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)    a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)    <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book,

telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## II.    <u>INTERROGATORIES</u>

1.  Describe in detail the nature of your engagement on *The Pickup*, including:

    (a) the date you were first contacted or hired;

    (b) whether you were an employee or independent contractor;

    (c) the person or entity that hired you; and

    (d) your job title, duties, and responsibilities as they relate to the Subject Stunt.

2.  Identify and describe any written or oral contracts, deal memos, agreements, or understandings that governed your work on *The Pickup*, and summarize any terms relating to your responsibilities, safety, and insurance.

3.  Identify all persons known to you who were involved in planning, coordinating, directing, or supervising the Subject Stunt, and state each person's role as you understood it.

4.  Describe in detail any participation you had in planning, designing, or modifying the Subject Stunt, including:

    (a) any input you provided regarding speed, distances, timing, or vehicle placement;

    (b) any concerns or suggestions you made; and

    (c) who you communicated those to and when.

5.  Describe, from your perspective, how the Subject Stunt was supposed to be performed, including:

(a) your starting position and intended path;

(b) your intended speed(s);

(c) the positions and movements of other Vehicles; and

(d) the expected location and activity of Plaintiff inside the vehicle at the time of the Incident.

6. State whether the original plan for the Subject Stunt changed in any way before the Incident. If yes, describe each change (e.g., speed, number of takes, camera setup, vehicle positions, safety equipment, weather contingency), the date the change was made, who proposed it, and whether you agreed with or objected to it.

7. Describe all safety policies, procedures, rules, manuals, or guidelines that you understood to apply to:

(a) the Subject Stunt; and

(b) your role as stunt driver on *The Pickup* (including any provided by the Production Company, union/guild, or your agent), and state how and when you learned of them.

8. Identify and describe all safety measures you understood were in place for the Subject Stunt, including but not limited to:

(a) safety meetings;

(b) safety gear (harnesses, helmets, restraints);

(c) vehicle modifications (roll cages, kill switches, special brakes);

(d) speed limits or distance markers; and

(e) emergency medical presence.

State whether you believed these measures were adequate and why.

9.  State whether you were shown, told about, or otherwise made aware of any risk assessment, hazard analysis, or job safety analysis for the Subject Stunt. If yes, identify who informed you, the approximate date, and describe your understanding of the risks identified and any recommendations made.

10. Identify all safety meetings or briefings you attended relating to the Subject Stunt or to stunts/vehicle operations on the day of the Incident, and for each state:

    (a) the date, time, and location;

    (b) who led the meeting;

    (c) who attended; and

    (d) the topics, warnings, and instructions you received.

11. Describe your training, education, and experience as a stunt driver, including:

    (a) any specialized driving schools or stunt training programs attended;

    (b) licenses, certifications, or union/guild memberships held;

    (c) years of experience doing vehicle stunts; and

    (d) prior work on similar stunts.

12. Identify each other stunt driver, stunt performer, or key crew member involved in the Subject Stunt, and state what you knew at the time about each person's training or experience relevant to their role.

13. State what you understood about Plaintiff's role in the Subject Stunt and on *The Pickup,* including:

    (a) whether you understood Plaintiff to be an employee or an independent contractor;

    (b) who you believed to be Plaintiff's employer; and

    (c) what you understood Plaintiff's duties to be in relation to the Subject Stunt.

14. Describe all verbal or written instructions, warnings, or explanations you personally gave to the crew regarding participation in the Subject Stunt, including where crewmembers were to be positioned in or around the vehicles, what crewmembers were to do, and any safety-related directions you provided.

15. For each vehicle you drove in connection with the Subject Stunt (including during rehearsals and the take in which the Incident occurred), state:

(a) year, make, and model;

(b) any special modifications or stunt rigging you were aware of;

(c) your understanding of the vehicle's mechanical condition; and

(d) any handling issues, limitations, or prior problems related to the vehicles you knew about prior to the Incident.

16. State whether you performed or observed any pre-use inspection, safety check, or test run of any vehicle involved in the Subject Stunt or of the Subject Stunt, itself, prior to the Incident. If yes, describe:

(a) when and where the inspection/test occurred;

(b) who participated;

(c) what was checked;

(d) any issues identified; and

(e) any corrective actions taken.

17. Describe the environmental and physical conditions at the time and place of the Subject Stunt as you understood them before the Incident, including:

(a) lighting;

(b) weather;

(c) surface conditions (e.g., pavement, gravel, moisture);

(d) visibility; and

(e) space or obstacle limitations;

and state whether you considered any of these conditions to present safety concerns and what, if anything, you did in response.

18. Provide a detailed, chronological narrative of everything you did, saw, and heard from the time you prepared to perform the Subject Stunt through the completion of the Incident and its immediate aftermath, including:

(a) your speed(s);

(b) your steering and braking actions;

(c) any deviations from the planned stunt; and

(d) any communications you heard over radio or otherwise.

19. State your understanding and contentions as to how and why the Incident occurred, including all factors you believe contributed (e.g., human error, mechanical issues, environmental conditions, inadequate safety measures), and identify any person or entity you contend bears responsibility and the factual basis for that contention.

20. State whether, before the Incident, you heard or became aware of any concerns, complaints, or objections raised by anyone (including you) about:

(a) the safety of the Subject Stunt;

(b) the condition of any Vehicle; or

(c) the conditions under which the stunt was to be performed.

For each, identify who raised the concern, when, to whom, and what response was given.

21. Identify all persons known to you who witnessed any aspect of the planning, rehearsal, or performance of the Subject Stunt, or the Incident itself, and briefly describe what you understand each such person saw or heard in relation to the Incident.

22. State whether you provided any written or recorded statement, report, email, text message, or notes about the Subject Stunt or the Incident to anyone (including the Production Company, insurers, attorneys, or investigators). For each, identify:

    (a) the date;

    (b) the person or entity to whom it was given; and

    (c) the general subject matter.

23. Describe any internal or external investigation of the Incident in which you participated, including:

    (a) who conducted the investigation;

    (b) when and where any interviews or meetings occurred;

    (c) information or documents you provided; and

    (d) any findings, conclusions, or recommendations that were communicated to you.

24. State whether, prior to the Incident, you were aware of any other accidents, injuries, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup.* If yes, for each event describe:

    (a) the approximate date;

    (b) what occurred;

    (c) who was involved; and

    (d) any safety changes you learned resulted from that event.

25. State whether you have ever been involved in, witnessed, or become aware of any accidents, injuries, or "near-miss" incidents involving similar automobile stunts on other productions. If yes, for each describe:

(a) the production title;

(b) approximate date and location;

(c) your role; and

(d) the nature of the incident and any lessons or changes to your practices that followed.

26. Identify all insurance policies that might provide coverage to you for claims arising from the Subject Stunt or the Incident, including but not limited to any policies held by you personally or through any business entity, union, or guild, stating for each:

(a) the insurer;

(b) type of policy (e.g., auto, general liability, professional liability);

(c) policy number; and

(d) policy period (effective dates).

27. State whether you have communicated with any insurance company, broker, or claims adjuster regarding the Subject Stunt, the Incident, or Plaintiff's injuries. If yes, identify:

(a) the insurer/broker/adjuster;

(b) the approximate dates of communication; and

(c) the general nature or purpose of each communication.

28. Identify all categories of documents and electronically stored information in your possession, custody, or control that relate to:

(a) the planning, approval, or execution of the Subject Stunt;

(b) the Incident;

(c) Plaintiff's involvement; or

(d) any investigation or claim arising from the Incident, including emails, texts, call sheets, photos, videos, notes, or reports, and state where each category is maintained/stored.

29. State whether you have changed any of your personal practices, decision-making, or procedures relating to stunt driving, vehicle safety, or participation in stunt planning as a result of the Incident. If yes, describe each change, when it was implemented, and the reasons for making the change.

30. State your contention, if any, as to whether Plaintiff was acting as an employee or an independent contractor at the time of the Incident, and identify all facts and documents on which you base that contention, including who you believed directed and controlled Plaintiff's work on the day of the Incident.

### III.    REQUEST FOR PRODUCTION OF DOCUMENTS

1. All documents that reflect, describe, or relate to your hiring, engagement, or role on *The Pickup*, such as contracts, deal memos, emails, offer letters, or other agreements, whether formal or informal, between you and any Production Company, agent, or other entity.

2. All documents that identify or describe your job title, duties, responsibilities, or authority in connection with *The Pickup* and the Subject Stunt, including any job descriptions, crew lists, call sheets, or written instructions.

3. All documents you created, reviewed, or received that relate to the planning, conception, design, choreography, or approval of the Subject Stunt, including stunt breakdowns, diagrams, written stunt descriptions, shot lists, and storyboards that reference your driving.

4.  All communications between you and any other person or entity that concern the planning, design, approval, modification, postponement, or cancellation of the Subject Stunt.

5.  All safety manuals, policies, procedures, rules, guidelines, or bulletins provided to you, or made available to you, in connection with *The Pickup* that address stunt work, vehicle operations, onset safety, or emergency response.

6.  All stunt-specific safety protocols, method statements, safe-work plans, or written procedures that relate specifically to the Subject Stunt and/or that you drafted, reviewed, or received, including all drafts, redlines, and final versions.

7.  All risk assessments, hazard analyses, job safety analyses, checklists, or similar safety evaluations concerning the Subject Stunt or any related vehicle stunt for *The Pickup* that you prepared, reviewed, or were provided, including any comments or annotations you made.

8.  All documents relating to any safety meetings or briefings that you attended or were invited to concerning the Subject Stunt or vehicle stunts on the day of the Incident, including agendas, notes, sign-in sheets, presentation materials, handouts, and your personal notes.

9.  All documents evidencing your training, education, certifications, licenses, union or guild memberships, resumes, CVs, or professional profiles that you used, provided, or maintained in connection with your work as a stunt driver.

10. All documents in your possession or control that reflect or relate to the training, certifications, or qualifications of any other stunt driver, stunt performer, or safety personnel involved in the Subject Stunt, to the extent such documents were provided to you or kept by you.

11. All shooting schedules, daily production reports, or similar production documents in your possession that reference any day on which the Subject Stunt was planned, rehearsed, or performed.

12. All documents relating to any rehearsal, test-run, or trial execution of the Subject Stunt in which you participated, observed, or were informed about, including rehearsal schedules, notes, diagrams, emails, or messages describing how rehearsals differed from the stunt as executed during the Incident.

13. All communications in your possession in which you or anyone else raised, discussed, or responded to concerns, complaints, questions, or objections about:

(a) the safety of the Subject Stunt;

(b) the condition or suitability of any vehicle used in the Subject Stunt; or

(c) the environmental or location conditions under which the stunt was to be performed.

14. All documents that relate to Plaintiff's role, duties, or status in connection with *The Pickup* or the Subject Stunt that were provided to you, came into your possession, or were created by you.

15. All documents reflecting or relating to any instructions, directions, diagrams, or warnings (written, electronic, or otherwise) that you provided or helped prepare for crewmembers (including Plaintiff) regarding participation in the Subject Stunt or conduct inside or around the vehicles used in the Subject Stunt.

16. All documents in your possession or control that identify or describe each vehicle you drove in connection with the Subject Stunt, including documents describing make, model, modifications, stunt rigging, safety equipment, and any special features relevant to the stunt.

17. All documents you created, received, or reviewed that relate to the condition, maintenance, inspection, repair, or any mechanical or handling problems involving any vehicle used in the Subject Stunt, including any reports of prior damage, malfunctions, or limitations.

18. All photographs, videos, audio recordings, or other media in your possession, custody, or control that depict:

(a) the planning, setup, or rehearsal of the Subject Stunt;

(b) the Subject Stunt as performed, including the Incident; or

(c) the Vehicles, location, or Plaintiff's injuries immediately before or after the Incident.

19. All incident reports, accident reports, written or recorded statements, notes, diaries, logs, or memoranda prepared by you, or at your direction, that discuss, describe, or analyze the Subject Stunt, the Incident, or Plaintiff's injuries.

20. All communications (emails, texts, messages, letters, social media messages, or other writings) you sent or received after the Incident that describe, reference, or discuss:

(a) how the Incident occurred;

(b) why it occurred;

(c) persons or entities believed to be at fault; or

(d) potential claims, lawsuits, or liability arising from the Incident.

21. All documents relating to any internal or external investigation of the Incident in which you participated, including inquiry letters, interview notices, interview notes or transcripts provided to you, questionnaires, draft or final reports sent to you, and any written responses, comments, or corrections you provided.

22. All documents in your possession or control that relate to any other accidents, injuries, safety complaints, or "near-miss" incidents involving stunts or vehicle operations during

the production of *The Pickup,* including incident reports, emails, texts, or notes describing such events and any resulting safety changes.

23. All documents in your possession or control relating to any prior accidents, injuries, claims, or "near-miss" incidents involving similar automobile stunts on other productions in which you were involved, to the extent you retained or were provided such documents.

24. All communications between you and any insurance company, insurance broker, claims adjuster, or other insurance representative relating to the Subject Stunt, the Incident, or any claim, complaint, or lawsuit arising out of the Incident.

25. All insurance policies, declaration pages, endorsements, certificates of insurance, or similar documents in your possession or control that may provide coverage to you for claims arising from the Subject Stunt, including but not limited to automobile, general liability, professional liability, or personal liability policies, whether purchased by you, a business entity associated with you, or a union/guild on your behalf.

26. All entries from any personal or professional notebooks, journals, diaries, calendars (paper or electronic), or logs maintained by you that reference:

(a) the planning or rehearsal of the Subject Stunt;

(b) the Incident;

(c) Plaintiff; or

(d) any post-Incident discussions or reflections on what occurred.

27. All documents that reflect or relate to any changes you made to your own practices, procedures, or decision-making concerning stunt driving, vehicle safety, participation in stunt planning, or risk assessment as a result of the Incident, including emails, notes, or written "lessons learned."

28. All remaining documents and electronically stored information in your possession, custody, or control that concern, refer, or relate in any way to:

(a) the planning, approval, or execution of the Subject Stunt;

(b) the Incident;

(c) Plaintiff's injuries or damages; or

(d) any claim, notice, complaint, or legal proceeding arising out of the Incident, that have not been produced in response to the preceding Requests.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

*/s/ Blake Kilday*
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
**JAN 23, 2026 11:01 AM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**IN STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| MARVIN HAVEN,<br><br>             **Plaintiff,**<br>**vs.**<br><br>ENTERTAINMENT PARTNERS, LLC;<br>ARMORED FILMS, LLC; STEVE<br>RITZI; LEX GEDDINGS; COREY<br>SKLOV; ANDREW WARD; GREG<br>WADDLE; JEF GROFF; KEITH<br>ADAMS; MINX NATION<br>PRODUCTIONS, INC.; A&A WARD<br>GROUP, INC.; DURHAM STUNTS,<br>INC.; RITZI, INC.; PERFORMANCE<br>STUNTS, LLC; GROFFUNIT ACTION,<br>INC.; JOHN DOE A-Z; and ABC<br>CORPORATIONS A-Z,<br><br>             **Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR**
**PRODUCTION OF DOCUMENTS TO DEFENDANT LEX GEDDINGS**

TO:    Defendant, Lex Geddings
        110 Berry Lane
        Canton, Georgia 30115

COMES NOW Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith

to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-

five (45) days after service hereof, in the form provided by law, the following interrogatories and

request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is

available to you, your attorneys or agents, and anyone else acting on your behalf.  If the complete

answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan, PLLC, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

## I.     DEFINITIONS

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not

limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)    an <u>individual</u>, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)    a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)    <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book,

telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## II.    <u>INTERROGATORIES</u>

1. Describe in detail your role, duties, and responsibilities with respect to the Subject Stunt, including any authority you had to design, approve, modify, supervise, postpone, or cancel the stunt.

2. Describe how you came to be involved with *The Pickup* and the Subject Stunt, including: (a) whether you were an employee, independent contractor, or otherwise engaged; (b) who hired or retained you; (c) the terms of your engagement; and (d) any written or oral agreements or understandings concerning your responsibilities.

3. Identify all persons who, to your knowledge, participated in the planning, approval, or supervision of the Subject Stunt and describe your interactions with each regarding the Subject Stunt.

4. Describe in detail how the Subject Stunt was conceived and designed, including: (a) who proposed it; (b) its intended visual effect; (c) the planned movements and speeds of each vehicle; (d) the positions and roles of occupants; and (e) any special effects, rigging, or camera considerations that influenced the design.

5. Provide a chronological timeline of key events relating to the Subject Stunt from initial conception through the day of the Incident, including dates of planning meetings,

rehearsals, risk assessments, safety reviews, and final approvals, and identify all persons who approved the stunt at each stage.

6.  State whether you had the authority to stop, postpone, or modify the Subject Stunt at any time for safety reasons, and if so, describe the scope of that authority and any instructions or limitations that were communicated to you concerning its exercise.

7.  Identify and describe all safety policies, procedures, guidelines, manuals, or industry standards that you understood to apply to the Subject Stunt and to your role, including any instructions you received from the film's Production Company or others about compliance with such policies.

8.  Describe in detail each safety measure that you personally proposed, approved, or implemented for the Subject Stunt, including but not limited to: (a) restraints or harnesses; (b) helmets or padding; (c) roll cages; (d) speed limitations; (e) communication protocols; (f) safety perimeters or exclusion zones; and (g) presence of medical personnel.

9.  State whether you participated in, ordered, reviewed, or were aware of any risk assessment, hazard analysis, job safety analysis, or similar evaluation relating to the Subject Stunt. For each such assessment, identify who conducted it, when it occurred, the risks identified, and any recommendations made—and describe whether and how those recommendations were implemented.

10. Describe all changes, if any, that were made to the original plan for the Subject Stunt (including vehicle speed, number of takes, camera positions, vehicle positions, safety equipment, or personnel) from the time of initial planning up to the Incident, including who proposed the changes, why they were made, and whether you agreed with or objected to any such changes.

11. Describe what you knew, before the Subject Stunt was performed, about the physical and environmental conditions under which it would occur (e.g., lighting, weather, road surface, obstacles, space limitations), and state whether you considered any of those conditions to present safety risks and what you did in response.

12. Identify each driver, stunt performer, and crew member involved in the Subject Stunt, and for each state what you knew regarding their training, experience with similar stunts, and qualifications at the time of the Incident.

13. Describe all training, briefings, demonstrations, or instructions you personally provided (verbally or in writing) to any person involved in the Subject Stunt, including Plaintiff, regarding how the stunt was to be performed, what safety procedures were to be followed, and what risks were associated with participation.

14. Identify and describe all safety meetings, toolbox talks, or briefings that you attended or led relating to the Subject Stunt or to stunts/vehicle operations on the day of the Incident, including the date, attendees, topics discussed, and any warnings or instructions you recall being given.

15. State whether, before the Incident, you received or were aware of any concerns, reservations, or objections raised by any person (including Plaintiff) about the safety of the Subject Stunt or the condition of any Vehicle. For each such concern, identify who raised it, when and how it was communicated, the substance of the concern, and what you did in response.

16. For each vehicle involved in the Subject Stunt, describe what you knew prior to the Incident about that vehicle's make, model, modifications, rigging, safety equipment, and

mechanical condition, including any issues, limitations, or prior damage that were known or reported to you.

17. State whether you performed, observed, requested, or were aware of any pre-use inspections, safety checks, or test runs of any vehicle or of the Subject Stunt as a whole, and for each such inspection or test run describe who performed it, when it occurred, what was checked, any problems discovered, and any corrective actions taken.

18. Describe your understanding, at the time of the Incident, of Plaintiff's role in connection with the Subject Stunt and *The Pickup,* including: (a) whether you understood Plaintiff to be an employee or independent contractor; (b) who, if anyone, you believed to be Plaintiff's employer; and (c) the extent to which you believed you had the right to direct and control Plaintiff's work.

19. Describe all directions, instructions, or commands you gave to Plaintiff on the day of the Incident concerning Plaintiff's participation in the Subject Stunt, including where to sit or stand, what to do inside the Vehicle, any safety measures to take, and any warnings about risks.

20. Provide a detailed, step-by-step narrative of the events as you recall them from immediately before the Subject Stunt began through the occurrence of the Incident and the immediate aftermath, including your location, what you observed, any communications you heard or made, and any deviations from the stunt plan that you noticed.

21. Identify all persons known to you who witnessed any aspect of the Subject Stunt or the Incident (including planning, rehearsals, and the accident itself), and for each describe what you understand that person saw, heard, or did in relation to the Incident.

22. State whether you prepared or gave any written or oral statements, notes, reports, emails, texts, or other communications concerning the Subject Stunt or the Incident (including to the Production Company, insurers, investigators, or regulatory agencies). For each, identify the date, the recipient(s), the general subject matter, and the current custodian of any written or recorded materials.

23. Describe any investigations of the Incident in which you participated (internal or external), including: (a) who conducted the investigation; (b) when it occurred; (c) what information or documents you provided; (d) whether you were interviewed; and (e) any findings, conclusions, or recommendations that were communicated to you.

24. State whether, before the Incident, you were aware of any other accidents, injuries, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup.* For each such event, describe the date, nature of the event, persons involved, and any safety changes you are aware were made as a result.

25. State whether you personally notified or communicated with any insurance company, insurance broker, or insurance representative regarding the Incident or claims arising from it. For each such communication, identify the insurer/representative, the date, the method of communication, and the subject matter.

26. Identify all insurance policies of which you are aware that might provide coverage to you for claims arising out of the Subject Stunt or the Incident, including the insurer, type of policy, policy number, and policy period.

27. State in detail your contentions and understanding as to how and why the Incident occurred, including all factors you believe contributed to it (e.g., human error, mechanical issues, environmental conditions, inadequate safety measures), and identify any person or entity

whom you contend bears responsibility, in whole or in part, and the factual basis for each such contention.

28. Describe any changes you have made to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident, including changes in how you plan, approve, supervise, or conduct risk assessments for stunts.

29. Identify all categories of documents and electronically stored information in your possession, custody, or control that relate to the Subject Stunt, the Incident, Plaintiff's involvement, or any investigation or claim arising from the Incident (including but not limited to emails, text messages, call sheets, stunt plans, notes, photographs, and videos), and state where each category is maintained/stored.

### III.      REQUEST FOR PRODUCTION OF DOCUMENTS

1. All contracts, deal memos, engagement letters, emails, or other documents that describe, reflect, or relate to your hiring, engagement, or role on *The Pickup,* including any documents describing your responsibilities regarding the planning, approval, supervision, or execution of the Subject Stunt.

2. All job descriptions, role summaries, crew lists, or similar documents that identify your title, position, or responsibilities on *The Pickup,* including any documents showing your authority regarding stunt safety, vehicle operations, or on-set decision-making.

3. All documents you created, received, or reviewed that relate to the conception, planning, design, or approval of the Subject Stunt, including stunt plans, diagrams, breakdowns, outlines, shot lists, or written descriptions of how the Subject Stunt was to be performed.

4. All communications between you and any person or entity concerning the design, choreography, approval, modification, postponement, or cancellation of the Subject Stunt.

5. All documents that describe or reflect the scope of your authority with respect to the Subject Stunt, including authority to approve, modify, supervise, postpone, or cancel the stunt for safety or any other reason.

6. All safety manuals, policies, procedures, guidelines, or similar documents provided to you, or made available to you, in connection with *The Pickup* that address stunts, vehicle operations, on-set safety, or emergency response.

7. All stunt-specific safety protocols, method statements, safe work plans, or written procedures that you drafted, reviewed, or received relating specifically to the Subject Stunt, including all drafts, revisions, and versions.

8. All risk assessments, hazard analyses, job safety analyses, checklists, or similar evaluations that you created, reviewed, or received relating to the Subject Stunt or any other automobile stunt performed for *The Pickup,* including notes you made on such documents.

9. All documents reflecting or relating to any safety meetings or briefings that you attended, led, or were invited to concerning the Subject Stunt or vehicle stunts from *The Pickup*, including agendas, notes, sign-in sheets, handouts, and any written talking points.

10. All documents in your possession or control reflecting the training, certifications, licenses, or qualifications of any stunt coordinator, assistant stunt coordinator, driver, or stunt performer involved in the Subject Stunt, to the extent such documents were provided to you or maintained by you.

11. All documents reflecting your own training, certifications, licenses, and experience relating to stunts, stunt coordination, vehicle operations, risk assessment, or safety management, including resumes, CVs, union or guild records, or professional profiles you used or provided in connection with *The Pickup.*

12. All call sheets, shooting schedules, daily production reports, or similar documents in your possession or control that relate to any day on which the Subject Stunt was planned, rehearsed, or performed.

13. All documents relating to any rehearsals, test runs, or trial versions of the Subject Stunt that you participated in, observed, or were informed about, including rehearsal schedules, notes, videos, emails, or messages describing differences between rehearsals and the stunt as executed during the Incident.

14. All communications in your possession or control in which any person raised, discussed, or responded to safety concerns, reservations, complaints, or objections regarding the Subject Stunt or the condition of any vehicle used in it, including any suggestions for changes or recommendations to cancel or postpone the stunt.

15. All communications sent or received by you on the day of the Incident that reference or relate to the Subject Stunt, the vehicles used, staffing or crew availability, weather or environmental conditions, time pressures, or safety issues.

16. All documents in your possession or control that identify, describe, or relate to any vehicle used in the Subject Stunt, including descriptions of modifications or rigging, safety equipment, or any special features relevant to the stunt.

17. All documents you created, received, or reviewed that relate to the condition, maintenance, repair, inspection, or mechanical issues of any vehicle used in the Subject

Stunt, including any reports or communications about problems, limitations, prior damage, or needed repairs.

18. All photographs, videos, audio recordings, or other media in your possession, custody, or control depicting (a) the Subject Stunt (including rehearsals, setup, and execution), (b) the Incident, and/or (c) the scene, vehicles, or injuries immediately before or after the Incident, whether taken with professional equipment or personal devices.

19. All incident reports, accident reports, written or recorded statements, notes, diaries, logs, or memoranda prepared by you, or prepared at your direction, concerning the Subject Stunt, the Incident, or Plaintiff's injuries.

20. All communications (emails, texts, messages, letters, social media messages, etc.) you sent or received after the Incident that discuss, describe, or analyze how the Incident occurred, why it occurred, who was involved, or who may be at fault, including communications with Production Company personnel, other crew, or third parties.

21. All documents relating to any internal or external investigation of the Incident in which you participated, including interview requests, interview notes or transcripts, statements, questionnaires, draft or final investigation reports provided to you, and any responses or comments you made.

22. All communications between you and any insurance company, insurance broker, insurance adjuster, or other insurance representative relating to the Subject Stunt or any claim arising from it.

23. All insurance policies, endorsements, declarations pages, or certificates of insurance in your possession or control that may provide coverage to you for claims arising from the

Subject Stunt including but not limited to general liability, professional liability, errors and omissions, or personal liability policies.

24. All documents in your possession or control that relate to any other accidents, injuries, complaints, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup,* including incident reports, emails, texts, or notes describing such events and any resulting safety changes.

25. All documents in your possession or control relating to any prior accidents, injuries, claims, or "near-miss" incidents involving similar automobile stunts on other productions in which you were involved, to the extent you retained or were provided with documents about those incidents.

26. All documents in your possession or control that relate to Plaintiff's role, duties, or status in connection with *The Pickup* or the Subject Stunt, including any communications regarding whether Plaintiff was an employee or independent contractor, who was believed to be Plaintiff's employer, and who had the right to direct and control Plaintiff's work.

27. All documents reflecting or relating to instructions, directions, or warnings given to Plaintiff regarding participation in the Subject Stunt, including any written communications, notes, or diagrams you used or provided to explain where Plaintiff should be positioned and what Plaintiff was to do.

28. All documents in your possession or control reflecting any post-incident reviews, "lessons learned," self-evaluations, emails, or notes in which you discussed changes to your own practices, procedures, or decision-making regarding stunts, vehicle operations, or safety as a result of the Incident.

29. All entries from any personal or professional notebooks, journals, calendars (paper or electronic), or logs maintained by you that reference the Subject Stunt, Plaintiff, or any related planning meetings, rehearsals, or investigations of the Subject Stunt.

30. All remaining documents and electronically stored information in your possession, custody, or control that relate in any way to (a) the planning, approval, or execution of the Subject Stunt; (b) the Incident; (c) Plaintiff's injuries; or (d) any claim, complaint, or legal proceeding arising from the Incident, that are not otherwise produced in response to the preceding Requests.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

/s/ Blake Kilday
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER
JAN 23, 2026 11:01 AM

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MARVIN HAVEN,**<br><br>                    **Plaintiff,**<br>**vs.**<br><br>**ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,**<br><br>                    **Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT KEITH ADAMS

TO:     Defendant, Keith Adams
        2897 North Druid Hills Road NE
        Atlanta, Georgia 30329

COMES NOW Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-five (45) days after service hereof, in the form provided by law, the following interrogatories and request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is available to you, your attorneys or agents, and anyone else acting on your behalf.  If the complete

answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan, PLLC, 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

## I.  **DEFINITIONS**

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not

limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)     an <u>individual</u>, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)     a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)     <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book,

telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## II.     **INTERROGATORIES**

1. Describe in detail the nature of your engagement on *The Pickup*, including:

   (a) the date you were first contacted or hired;

   (b) whether you were an employee or independent contractor;

   (c) the person or entity that hired you; and

   (d) your job title, duties, and responsibilities as they relate to the Subject Stunt.

2. Identify and describe any written or oral contracts, deal memos, agreements, or understandings that governed your work on *The Pickup*, and summarize any terms relating to your responsibilities, safety, and insurance.

3. Identify all persons known to you who were involved in planning, coordinating, directing, or supervising the Subject Stunt, and state each person's role as you understood it.

4. Describe in detail any participation you had in planning, designing, or modifying the Subject Stunt, including:

   (a) any input you provided regarding speed, distances, timing, or vehicle placement;

   (b) any concerns or suggestions you made; and

   (c) who you communicated those to and when.

5. Describe, from your perspective, how the Subject Stunt was supposed to be performed, including:

(a) your starting position and intended path;

(b) your intended speed(s);

(c) the positions and movements of other Vehicles; and

(d) the expected location and activity of Plaintiff inside the vehicle at the time of the Incident.

6. State whether the original plan for the Subject Stunt changed in any way before the Incident. If yes, describe each change (e.g., speed, number of takes, camera setup, vehicle positions, safety equipment, weather contingency), the date the change was made, who proposed it, and whether you agreed with or objected to it.

7. Describe all safety policies, procedures, rules, manuals, or guidelines that you understood to apply to:

(a) the Subject Stunt; and

(b) your role as stunt driver on *The Pickup* (including any provided by the Production Company, union/guild, or your agent), and state how and when you learned of them.

8. Identify and describe all safety measures you understood were in place for the Subject Stunt, including but not limited to:

(a) safety meetings;

(b) safety gear (harnesses, helmets, restraints);

(c) vehicle modifications (roll cages, kill switches, special brakes);

(d) speed limits or distance markers; and

(e) emergency medical presence.

State whether you believed these measures were adequate and why.

9. State whether you were shown, told about, or otherwise made aware of any risk assessment, hazard analysis, or job safety analysis for the Subject Stunt. If yes, identify who informed you, the approximate date, and describe your understanding of the risks identified and any recommendations made.

10. Identify all safety meetings or briefings you attended relating to the Subject Stunt or to stunts/vehicle operations on the day of the Incident, and for each state:

    (a) the date, time, and location;

    (b) who led the meeting;

    (c) who attended; and

    (d) the topics, warnings, and instructions you received.

11. Describe your training, education, and experience as a stunt driver, including:

    (a) any specialized driving schools or stunt training programs attended;

    (b) licenses, certifications, or union/guild memberships held;

    (c) years of experience doing vehicle stunts; and

    (d) prior work on similar stunts.

12. Identify each other stunt driver, stunt performer, or key crew member involved in the Subject Stunt, and state what you knew at the time about each person's training or experience relevant to their role.

13. State what you understood about Plaintiff's role in the Subject Stunt and on *The Pickup,* including:

    (a) whether you understood Plaintiff to be an employee or an independent contractor;

    (b) who you believed to be Plaintiff's employer; and

    (c) what you understood Plaintiff's duties to be in relation to the Subject Stunt.

14. Describe all verbal or written instructions, warnings, or explanations you personally gave to the crew regarding participation in the Subject Stunt, including where crewmembers were to be positioned in or around the vehicles, what crewmembers were to do, and any safety-related directions you provided.

15. For each vehicle you drove in connection with the Subject Stunt (including during rehearsals and the take in which the Incident occurred), state:

    (a) year, make, and model;

    (b) any special modifications or stunt rigging you were aware of;

    (c) your understanding of the vehicle's mechanical condition; and

    (d) any handling issues, limitations, or prior problems related to the vehicles you knew about prior to the Incident.

16. State whether you performed or observed any pre-use inspection, safety check, or test run of any vehicle involved in the Subject Stunt or of the Subject Stunt, itself, prior to the Incident. If yes, describe:

    (a) when and where the inspection/test occurred;

    (b) who participated;

    (c) what was checked;

    (d) any issues identified; and

    (e) any corrective actions taken.

17. Describe the environmental and physical conditions at the time and place of the Subject Stunt as you understood them before the Incident, including:

    (a) lighting;

    (b) weather;

(c) surface conditions (e.g., pavement, gravel, moisture);

(d) visibility; and

(e) space or obstacle limitations;

and state whether you considered any of these conditions to present safety concerns and what, if anything, you did in response.

18. Provide a detailed, chronological narrative of everything you did, saw, and heard from the time you prepared to perform the Subject Stunt through the completion of the Incident and its immediate aftermath, including:

(a) your speed(s);

(b) your steering and braking actions;

(c) any deviations from the planned stunt; and

(d) any communications you heard over radio or otherwise.

19. State your understanding and contentions as to how and why the Incident occurred, including all factors you believe contributed (e.g., human error, mechanical issues, environmental conditions, inadequate safety measures), and identify any person or entity you contend bears responsibility and the factual basis for that contention.

20. State whether, before the Incident, you heard or became aware of any concerns, complaints, or objections raised by anyone (including you) about:

(a) the safety of the Subject Stunt;

(b) the condition of any Vehicle; or

(c) the conditions under which the stunt was to be performed.

For each, identify who raised the concern, when, to whom, and what response was given.

21. Identify all persons known to you who witnessed any aspect of the planning, rehearsal, or performance of the Subject Stunt, or the Incident itself, and briefly describe what you understand each such person saw or heard in relation to the Incident.

22. State whether you provided any written or recorded statement, report, email, text message, or notes about the Subject Stunt or the Incident to anyone (including the Production Company, insurers, attorneys, or investigators). For each, identify:

(a) the date;

(b) the person or entity to whom it was given; and

(c) the general subject matter.

23. Describe any internal or external investigation of the Incident in which you participated, including:

(a) who conducted the investigation;

(b) when and where any interviews or meetings occurred;

(c) information or documents you provided; and

(d) any findings, conclusions, or recommendations that were communicated to you.

24. State whether, prior to the Incident, you were aware of any other accidents, injuries, or "near-miss" incidents involving stunts or vehicle operations during the production of *The Pickup.* If yes, for each event describe:

(a) the approximate date;

(b) what occurred;

(c) who was involved; and

(d) any safety changes you learned resulted from that event.

25. State whether you have ever been involved in, witnessed, or become aware of any accidents, injuries, or "near-miss" incidents involving similar automobile stunts on other productions. If yes, for each describe:

(a) the production title;

(b) approximate date and location;

(c) your role; and

(d) the nature of the incident and any lessons or changes to your practices that followed.

26. Identify all insurance policies that might provide coverage to you for claims arising from the Subject Stunt or the Incident, including but not limited to any policies held by you personally or through any business entity, union, or guild, stating for each:

(a) the insurer;

(b) type of policy (e.g., auto, general liability, professional liability);

(c) policy number; and

(d) policy period (effective dates).

27. State whether you have communicated with any insurance company, broker, or claims adjuster regarding the Subject Stunt, the Incident, or Plaintiff's injuries. If yes, identify:

(a) the insurer/broker/adjuster;

(b) the approximate dates of communication; and

(c) the general nature or purpose of each communication.

28. Identify all categories of documents and electronically stored information in your possession, custody, or control that relate to:

(a) the planning, approval, or execution of the Subject Stunt;

(b) the Incident;

(c) Plaintiff's involvement; or

(d) any investigation or claim arising from the Incident, including emails, texts, call sheets, photos, videos, notes, or reports, and state where each category is maintained/stored.

29. State whether you have changed any of your personal practices, decision-making, or procedures relating to stunt driving, vehicle safety, or participation in stunt planning as a result of the Incident. If yes, describe each change, when it was implemented, and the reasons for making the change.

30. State your contention, if any, as to whether Plaintiff was acting as an employee or an independent contractor at the time of the Incident, and identify all facts and documents on which you base that contention, including who you believed directed and controlled Plaintiff's work on the day of the Incident.

### III.    REQUEST FOR PRODUCTION OF DOCUMENTS

1. All documents that reflect, describe, or relate to your hiring, engagement, or role on *The Pickup*, such as contracts, deal memos, emails, offer letters, or other agreements, whether formal or informal, between you and any Production Company, agent, or other entity.

2. All documents that identify or describe your job title, duties, responsibilities, or authority in connection with *The Pickup* and the Subject Stunt, including any job descriptions, crew lists, call sheets, or written instructions.

3. All documents you created, reviewed, or received that relate to the planning, conception, design, choreography, or approval of the Subject Stunt, including stunt breakdowns, diagrams, written stunt descriptions, shot lists, and storyboards that reference your driving.

4. All communications between you and any other person or entity that concern the planning, design, approval, modification, postponement, or cancellation of the Subject Stunt.

5. All safety manuals, policies, procedures, rules, guidelines, or bulletins provided to you, or made available to you, in connection with *The Pickup* that address stunt work, vehicle operations, onset safety, or emergency response.

6. All stunt-specific safety protocols, method statements, safe-work plans, or written procedures that relate specifically to the Subject Stunt and/or that you drafted, reviewed, or received, including all drafts, redlines, and final versions.

7. All risk assessments, hazard analyses, job safety analyses, checklists, or similar safety evaluations concerning the Subject Stunt or any related vehicle stunt for *The Pickup* that you prepared, reviewed, or were provided, including any comments or annotations you made.

8. All documents relating to any safety meetings or briefings that you attended or were invited to concerning the Subject Stunt or vehicle stunts on the day of the Incident, including agendas, notes, sign-in sheets, presentation materials, handouts, and your personal notes.

9. All documents evidencing your training, education, certifications, licenses, union or guild memberships, resumes, CVs, or professional profiles that you used, provided, or maintained in connection with your work as a stunt driver.

10. All documents in your possession or control that reflect or relate to the training, certifications, or qualifications of any other stunt driver, stunt performer, or safety personnel involved in the Subject Stunt, to the extent such documents were provided to you or kept by you.

11. All shooting schedules, daily production reports, or similar production documents in your possession that reference any day on which the Subject Stunt was planned, rehearsed, or performed.

12. All documents relating to any rehearsal, test-run, or trial execution of the Subject Stunt in which you participated, observed, or were informed about, including rehearsal schedules, notes, diagrams, emails, or messages describing how rehearsals differed from the stunt as executed during the Incident.

13. All communications in your possession in which you or anyone else raised, discussed, or responded to concerns, complaints, questions, or objections about:

(a) the safety of the Subject Stunt;

(b) the condition or suitability of any vehicle used in the Subject Stunt; or

(c) the environmental or location conditions under which the stunt was to be performed.

14. All documents that relate to Plaintiff's role, duties, or status in connection with *The Pickup* or the Subject Stunt that were provided to you, came into your possession, or were created by you.

15. All documents reflecting or relating to any instructions, directions, diagrams, or warnings (written, electronic, or otherwise) that you provided or helped prepare for crewmembers (including Plaintiff) regarding participation in the Subject Stunt or conduct inside or around the vehicles used in the Subject Stunt.

16. All documents in your possession or control that identify or describe each vehicle you drove in connection with the Subject Stunt, including documents describing make, model, modifications, stunt rigging, safety equipment, and any special features relevant to the stunt.

17. All documents you created, received, or reviewed that relate to the condition, maintenance, inspection, repair, or any mechanical or handling problems involving any vehicle used in the Subject Stunt, including any reports of prior damage, malfunctions, or limitations.

18. All photographs, videos, audio recordings, or other media in your possession, custody, or control that depict:

    (a) the planning, setup, or rehearsal of the Subject Stunt;

    (b) the Subject Stunt as performed, including the Incident; or

    (c) the Vehicles, location, or Plaintiff's injuries immediately before or after the Incident.

19. All incident reports, accident reports, written or recorded statements, notes, diaries, logs, or memoranda prepared by you, or at your direction, that discuss, describe, or analyze the Subject Stunt, the Incident, or Plaintiff's injuries.

20. All communications (emails, texts, messages, letters, social media messages, or other writings) you sent or received after the Incident that describe, reference, or discuss:

    (a) how the Incident occurred;

    (b) why it occurred;

    (c) persons or entities believed to be at fault; or

    (d) potential claims, lawsuits, or liability arising from the Incident.

21. All documents relating to any internal or external investigation of the Incident in which you participated, including inquiry letters, interview notices, interview notes or transcripts provided to you, questionnaires, draft or final reports sent to you, and any written responses, comments, or corrections you provided.

22. All documents in your possession or control that relate to any other accidents, injuries, safety complaints, or "near-miss" incidents involving stunts or vehicle operations during

the production of *The Pickup,* including incident reports, emails, texts, or notes describing such events and any resulting safety changes.

23. All documents in your possession or control relating to any prior accidents, injuries, claims, or "near-miss" incidents involving similar automobile stunts on other productions in which you were involved, to the extent you retained or were provided such documents.

24. All communications between you and any insurance company, insurance broker, claims adjuster, or other insurance representative relating to the Subject Stunt, the Incident, or any claim, complaint, or lawsuit arising out of the Incident.

25. All insurance policies, declaration pages, endorsements, certificates of insurance, or similar documents in your possession or control that may provide coverage to you for claims arising from the Subject Stunt, including but not limited to automobile, general liability, professional liability, or personal liability policies, whether purchased by you, a business entity associated with you, or a union/guild on your behalf.

26. All entries from any personal or professional notebooks, journals, diaries, calendars (paper or electronic), or logs maintained by you that reference:

(a) the planning or rehearsal of the Subject Stunt;

(b) the Incident;

(c) Plaintiff; or

(d) any post-Incident discussions or reflections on what occurred.

27. All documents that reflect or relate to any changes you made to your own practices, procedures, or decision-making concerning stunt driving, vehicle safety, participation in stunt planning, or risk assessment as a result of the Incident, including emails, notes, or written "lessons learned."

28. All remaining documents and electronically stored information in your possession, custody, or control that concern, refer, or relate in any way to:

(a) the planning, approval, or execution of the Subject Stunt;

(b) the Incident;

(c) Plaintiff's injuries or damages; or

(d) any claim, notice, complaint, or legal proceeding arising out of the Incident, that have not been produced in response to the preceding Requests.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23rd day of January 2026.

                                        */s/ Blake Kilday*
                                        BLAKE L. KILDAY, ESQ.
                                        Georgia Bar No. 376645
                                        *Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

⏚ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
**JAN 23, 2026 11:01 AM**

*Anetta R. Stembridge*
Anetta D. Stembridge, Clerk
Douglas County, Georgia

# IN STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

|  |  |
|---|---|
| **MARVIN HAVEN,**<br><br>　　　　　**Plaintiff,**<br>**vs.**<br><br>**ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,**<br><br>　　　　　**Defendants.** | **CIVIL ACTION**<br>**FILE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ARMORED FILMS, LLC

TO:　Armored Films, LLC
　　　Registered Agent: Legal Inc Corporate Services, Inc.
　　　1870 The Exchange, STE 200#44
　　　Atlanta, Georgia 30339

Plaintiff, pursuant to O.C.G.A. §§ 9-11-33 and 9-11-34, submits herewith to the above-named Defendant (hereinafter referred to "you" or "your") for response within forty-five (45) days after service hereof, in the form provided by law, the following interrogatories and request for production of documents.

You are required, when answering these interrogatories, to furnish all information that is available to you, your attorneys or agents, and anyone else acting on your behalf. If the complete answer to an interrogatory is not known to you, you shall so state and answer the interrogatory to the fullest extent possible.

These interrogatories are deemed to be continuing and you are required to provide, by way of supplementary answers to these interrogatories, such additional information as may be obtained hereafter by you, your attorneys or agents, or anyone else acting on your behalf, which information will augment or modify any answer given to the attached interrogatories. All such supplemental answers must be filed and served upon the counsel of record for the above-named Plaintiff within a reasonable time after discovery or receipt of such additional information, but in no event later than the time of the trial.

The documents requested to be produced for inspection and copying are to be produced at the offices of Morgan & Morgan Atlanta, PLLC at 11605 Haynes Bridge Road, Suite 490, Alpharetta, GA 30009 within forty-five (45) days following receipt of this request unless the 45th day falls on a holiday or weekend, in which event the production will take place on the Monday following the 45th day; or in the event the time for response is shortened by court order, then the shorter time frame shall be applicable. In lieu of this, you may attach copies thereof to your answers to these interrogatories.

You are also required, pursuant to the Civil Practice Act, to produce at trial the materials and documents requested herein.

The following definitions and instructions are applicable to each interrogatory/request unless negated by the context:

I.    **<u>DEFINITIONS</u>**

"Document" means any written, recorded, or graphic matter in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access, including, but not limited to, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, contracts, agreements, checks, bills, invoices, pamphlets, pictures, films, voice recordings, maps, graphs, reports, surveys, minutes of statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control, and every copy of such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

"Person" shall mean a natural person, proprietorship, partnership, corporation, cooperative, association, firm, group, or any other organization or entity.

"Communication" means the transmittal of information from one or more persons to another person or persons, whether the medium for transmittal be oral, written or electronic.

"Date" shall mean the exact day, month and year, if ascertainable, or if not, the best available approximation (including relationship to other events).

"Subject Stunt" or "Incident" shall mean the automobile stunt, sequence, or scene filmed on April 20, 2024, during production of *The Pickup* during which Plaintiff was injured.

"Identify" or "Identity", when used in reference to:

(a)    an <u>individual</u>, shall mean to state the full name, present or last known residence address (designating which), residence telephone number, present or last known employment address (designating which), employment telephone number, and employment title or capacity.

(b)    a <u>firm, partnership, corporation, proprietorship, association or other organization or entity</u>, shall mean to state its full name and present or last known address (designating which) and the legal form of such entity or organization.

(c)    <u>document</u> shall mean to state: the title (if any), the date, author, sender, recipient, the identity of person signing it, type of document (i.e., a letter, memorandum, notation, book, telegram, chart, etc.) or some other means of identifying it, and its present location or custodian. In the case of a document that was, but is no longer, in the possession, custody or control of Defendant, state what disposition was made of it, why, when and by whom.

Whenever the context so requires, the plural shall include the singular, the singular the plural, the masculine the feminine and neuter, and the neuter the masculine and feminine.

## **INTERROGATORIES**

1.    Identify all persons who participated in the conception, planning, design, approval, budgeting, scheduling, or risk assessment of the Subject Stunt, and for each such person describe their role, responsibilities, and authority with respect to the stunt.

2.    Describe in detail the original concept, purpose, and intended appearance of the Subject Stunt, including how it was supposed to be executed, the planned movements of each vehicle, the positions of all occupants, and any special effects or rigging to be used.

3.    State the timeline from initial conception to final approval of the Subject Stunt, including key dates for (a) initial proposal, (b) risk assessment, (c) safety review, (d) rehearsals, and (e) final approval to perform the stunt on the date of the Incident, and identify all persons who granted or withheld approval at each stage.

4.    Identify each person who had decision-making authority to approve, modify, postpone, or cancel the Subject Stunt and describe the scope of that authority, including any limits placed upon it by Defendant or any insurer, studio, or other entity.

5.    Describe all safety policies, procedures, protocols, manuals, or guidelines in effect at the time of the Incident that governed or were intended to govern (a) automobile stunts, (b) on-set safety, and (c) emergency response, and explain how those policies were applied specifically to the Subject Stunt.

6.    Describe in detail each safety measure implemented for the Subject Stunt, including but not limited to restraints, harnesses, roll cages, kill switches, speed limitations, communication systems, safety zones, barriers, emergency medical presence, and any special rules for cast and crew positioning.

7.    State whether any safety meetings, toolbox talks, briefings, or rehearsals were conducted in connection with the Subject Stunt, and for each such meeting or briefing, identify: (a) the date and time; (b) the location; (c) the person who led it; (d) all persons in attendance; and (e) the topics discussed, including any warnings or instructions given.

8.    State whether any risk assessments, hazard analyses, job safety analyses, or similar evaluations were performed for the Subject Stunt. If so, identify who performed each assessment, the date, the methodology used, the risks identified, and any recommended controls or modifications, and state whether each recommendation was implemented.

9.    State whether the plan for the Subject Stunt changed in any way between initial conception and the moment of the Incident, including changes to vehicle speed, camera angles, positions of vehicles or occupants, safety equipment, or number/type of personnel involved; describe each change and explain the reason for it and who approved it.

10. Identify all stunt coordinators, assistant stunt coordinators, or other employees/contractors responsible for the Subject Stunt, and for each state their qualifications, training, certifications, years of experience with vehicle stunts, and prior work history on similar stunts.

11. Identify each driver and stunt performer involved in the Subject Stunt, and for each state (a) the nature of their role, (b) their driving or stunt-related training and certifications, (c) years of experience with similar stunts, and (d) any special instructions given to them for the Subject Stunt.

12. Describe any training, orientation, safety briefings, or written materials provided by Defendant to employees, independent contractors, stunt personnel, and other crew concerning stunt safety, vehicle operations, or emergency procedures for *The Pickup*, including dates, content, and attendees.

13. For each Vehicle involved in the Subject Stunt, identify the year, make, model, VIN, owner, lessor, or supplier, any special modifications or rigging made for the stunt, and the purpose or function of each vehicle in the stunt.

14. Describe the maintenance history and mechanical condition of each vehicle used in the Subject Stunt for the twelve (12) months preceding the Incident, stating any known mechanical issues, prior accidents, repairs, or modifications, and whether any such issues were known to Defendant before the Incident.

15. State whether any pre-use inspections, safety checks, or test runs were conducted on each vehicle involved in the Subject Stunt on the day of or immediately before the Subject Stunt, and for each such inspection identify who performed it, what was inspected, any issues discovered, and any corrective actions taken.

16. Describe the weather, lighting, road surface, terrain, and any other physical or environmental conditions at the time and location of the Incident, and state whether any of these conditions were identified as potential hazards prior to the Subject Stunt.

17. Provide a detailed, step-by-step narrative of how the Incident occurred from Defendant's perspective, beginning with the moments before "action" was called through the conclusion of the emergency response, including the movements and speeds of each Vehicle, communications among personnel, and any deviations from the planned stunt.

18. Identify all persons who witnessed any aspect of the Subject Stunt or the Incident (including planning, rehearsals, and the accident itself), and for each witness describe what Defendant understands that person saw, heard, or did in relation to the Incident.

19. State whether any person raised concerns, reservations, or objections regarding the safety of the Subject Stunt before the Incident, and if so, identify each such person and describe the substance of their concerns, when and to whom they were communicated, and what response or action, if any, was taken by Defendant.

20. Describe all communications on the day of the Incident relating to the Subject Stunt, including but not limited to communications about weather, time pressures, changes to the stunt, vehicle issues, crew availability, or safety concerns, identifying each person involved and the substance of each communication.

21. State whether Defendant prepared any incident reports, accident reports, or internal memoranda concerning the Incident, and for each such report identify its author(s), date, recipients, purpose, and summarize its findings or conclusions (excluding only information withheld under a specific claim of privilege).

22.  Describe any internal investigation, root-cause analysis, or review conducted by or for Defendant as a result of the Incident, including (a) who conducted the investigation, (b) the methods used (e.g., interviews, site inspections, document review), (c) the conclusions reached regarding the cause of the Incident, and (d) any corrective or remedial measures recommended or implemented.

23.  State whether any governmental, regulatory, or industry body (including OSHA or state equivalent, film commissions, or workplace safety agencies) investigated or was notified of the Incident, and for each such body identify the agency, the nature and dates of its involvement, any citations or findings issued, and Defendant's response to such findings.

24.  State whether any other accidents, injuries, or "near-miss" incidents occurred during the production of *The Pickup* involving (a) vehicle stunts, (b) stunts generally, or (c) on-set safety issues, and for each describe the date, nature of the event, persons involved, injuries (if any), and any corrective actions taken.

25.  State whether Defendant is aware of any prior accidents, injuries, or claims involving similar automobile stunts or vehicle-related incidents on any other productions in which Defendant was involved, and for each such incident provide the date, general description, location, and nature of any claims made.

26.  Describe the budget and scheduling considerations that applied to the scenes involving the Subject Stunt, and state whether any financial constraints, time pressures, schedule changes, or production demands influenced decisions about how, when, or under what conditions the Subject Stunt was executed.

27.  Identify all insurance policies that may provide coverage for claims arising from the Incident, including the insurer, policy number, type of coverage (e.g., general liability,

workers' compensation, stunt coverage, auto, excess/umbrella), effective dates, and applicable limits of liability.

28.  State whether Defendant provided notice of the Incident to any insurer or insurance representative, and if so, identify each such insurer/representative and describe the nature of the notice, the date given, and summarize any coverage positions, reservations of rights, or claim-related communications known to Defendant (excluding only information withheld under a specific claim of privilege).

29.  Identify all categories of documents and electronically stored information (ESI) Defendant possesses, controls, or has access to that relate to the planning, approval, execution, or aftermath of the Subject Stunt and/or Incident, including but not limited to emails, texts, call sheets, stunt plans, risk assessments, meeting minutes, videos, photographs, and reports, and state their general locations or custodians.

30.  Describe Defendant's policies and procedures in effect at the time of the Incident for reporting, documenting, and responding to on-set injuries and workers' compensation claims, and explain how those policies were followed or not followed in connection with the Incident involving Plaintiff.

31.  State whether any employee, contractor, stunt coordinator, driver, or other person was counseled, disciplined, reassigned, terminated, or otherwise subject to personnel action as a result of or in connection with the Incident, and for each such person describe the action taken and the reasons given.

32.  State whether Defendant made any changes to its policies, procedures, training, equipment, or stunt practices following the Incident, including for future work on *The Pickup* or other

productions, and describe each change, the date it was implemented, and the reasons for the change.

33.   State in detail Defendant's contentions as to the cause or causes of the Incident, including all facts, circumstances, acts, or omissions that Defendant contends contributed to the Incident, and identify each person and entity (including Plaintiff, if applicable) whom Defendant contends bears responsibility, in whole or in part, and the factual basis for each such contention.

## REQUEST FOR PRODUCTION

Defendant is requested to produce and identify each of the following:

1.   All contracts, agreements, amendments, and addenda relating to the production of *The Pickup*, including but not limited to agreements with employees, independent contractors, producers, stunt coordinators, stunt performers, drivers, vehicle suppliers, transportation coordinators, and any third-party vendors involved in the Subject Stunt.

2.   All contracts, deal memos, work-for-hire agreements, and engagement letters specifically related to the planning, coordination, performance, or supervision of the Subject Stunt, including those for the stunt coordinator(s), assistant stunt coordinator(s), stunt drivers, precision drivers, and any consultants retained regarding vehicle stunts or safety.

3.   All written safety policies, safety manuals, standard operating procedures, and health and safety guidelines in effect during the production of *The Pickup* that governed or addressed stunts, vehicle operations, on-set safety, risk management, or emergency response.

4.   All stunt-specific safety protocols, method statements, safe work plans, standard operating procedures, or similar documents that were prepared, adopted, or utilized for the Subject Stunt, whether drafted by Defendant, an independent contractor, an employee, or others.

5.  All risk assessments, hazard analyses, job safety analyses, safety checklists, and risk matrices prepared at any time relating to the Subject Stunt or any other automobile stunts performed during *The Pickup*, including drafts, revisions, and any approvals or sign-offs.

6.  All stunt coordination plans, breakdowns, diagrams, drawings, storyboards, shot lists, and other planning documents that describe or depict the design, setup, choreography, timing, or execution of the Subject Stunt.

7.  All call sheets, shooting schedules, daily production reports, unit production reports, and related documents for all days on which the Subject Stunt was rehearsed or performed, including any revisions or annotated versions reflecting changes or issues regarding the stunt.

8.  All documents relating to any rehearsals, tests, or trial runs of the Subject Stunt, including rehearsal schedules, rehearsal notes, risk reassessments, safety meeting notes, and any documents showing differences between the planned stunt and the stunt as actually performed.

9.  All documents reflecting or relating to safety meetings, toolbox talks, tailgate meetings, or briefings held before, during, or after the Subject Stunt, including agendas, minutes, sign-in sheets, attendance logs, notes, handouts, and materials distributed to attendees.

10. All training records, certifications, licenses, and qualifications of all stunt coordinators, assistant stunt coordinators, stunt performers, and drivers involved in the Subject Stunt, including but not limited to driving certifications, stunt training, safety training, first aid/CPR training, union training, or industry safety programs.

11. All training and certification records of production managers, directors, assistant directors, safety officers, or other supervisory personnel responsible for safety oversight or approval

of the Subject Stunt, including any documents reflecting their authority and responsibilities regarding safety.

12. All written or electronic communications (including emails, text messages, messaging app communications, and internal platforms such as Slack, Teams, or similar) between and among Defendant's personnel, stunt personnel, insurers, and third parties concerning the conception, planning, design, budgeting, or approval of the Subject Stunt.

13. All communications in which any person raised, discussed, or responded to safety concerns, reservations, or objections regarding the Subject Stunt, including any suggestions for changes, alternative methods, modifications, or cancellations of the stunt.

14. All communications sent or received on the day of the Incident that reference or relate to the Subject Stunt, including communications about weather, timing, equipment, vehicles, personnel, safety conditions, delays, or any reported near-misses or problems.

15. All incident reports, accident reports, injury reports, near-miss reports, or similar documents created in connection with the Incident, whether prepared by Defendant, its insurers, safety officers, medical personnel, or any other person or entity.

16. All documents relating to any internal investigation, review, or analysis conducted by or for Defendant regarding the Incident, including investigatory notes, witness statements, recorded or transcribed interviews, timelines, internal memoranda, findings, conclusions, recommendations, and any corrective action plans.

17. All documents received from, provided to, or exchanged with any governmental, regulatory, or industry body (including OSHA or state equivalent, film commissions, or workplace safety regulators) regarding the Incident, including citations, notices, responses, and correspondence.

18. All insurance policies, binders, declarations pages, endorsements, riders, and certificates of insurance applicable to *The Pickup* or to the Subject Stunt, including but not limited to general liability, workers' compensation, employer's liability, stunt or hazardous activity coverage, automobile coverage, and any excess/umbrella policies.

19. All communications with any insurer or insurance representative concerning the Incident, any claim made as a result of the Incident, coverage analysis, reservation of rights, or claim handling, including notices of claim, claim forms, adjuster reports, and coverage position letters (with privileged mental impressions redacted as appropriate).

20. All documents identifying each vehicle involved in the Subject Stunt, including titles, registrations, rental or lease agreements, contracts with vehicle suppliers, and any documents showing the ownership, control, or custody of each such vehicle at the time of the Incident.

21. All maintenance logs, repair records, inspection reports, pre-use checklists, and service records for each vehicle involved in the Subject Stunt for the period of twelve (12) months preceding the Incident through six (6) months thereafter, including any documentation of mechanical problems, modifications, or customizations.

22. All documents describing or reflecting any modifications, rigging, special effects installations, remote driving systems, roll cages, harnesses, or other alterations made to any vehicle used in the Subject Stunt, including engineering drawings, specifications, approvals, and communications with vendors or fabricators.

23. All video, audio, still photographs, and raw or edited footage (including multi-camera footage, behind-the-scenes footage, rehearsals, dailies, and "B-roll") that depict any aspect

of the planning, setup, rehearsal, or performance of the Subject Stunt and the Incident, including any recordings made by crew members on personal devices.

24. All post-incident debrief reports, "lessons learned" documents, after-action reviews, safety meeting records, or other evaluations generated after the Incident that discuss its cause, contributing factors, preventability, or recommended changes to procedures or protocols.

25. The complete personnel files (subject to appropriate redaction of purely personal information such as Social Security numbers) for any stunt coordinator or assistant stunt coordinator responsible for or involved in the Subject Stunt, including performance evaluations, disciplinary records, incident histories, and prior complaints or concerns relating to safety or stunt performance.

26. The personnel files (similarly redacted for purely personal identifiers) for each driver and stunt performer involved in the Subject Stunt, including hiring documents, resumes, qualifications, prior incident or accident reports, disciplinary actions, and notes or evaluations regarding driving or stunt performance.

27. All documents reflecting any prior accidents, injuries, near-misses, or safety incidents involving stunts or vehicle operations on the production of *The Pickup*, including any incident logs, corrective action reports, or safety bulletins, and any documents comparing those incidents to the Incident or informing changes to the Subject Stunt.

28. All documents relating to the budget, time schedule, or production deadlines for the Subject Stunt or the scenes in which it appears, including any communications or notes that discuss time constraints, cost-cutting, staffing reductions, or other pressures that may have affected decisions about safety or the manner in which the Subject Stunt was executed.

29. All files, invoices, purchase orders, scopes of work, proposals, and communications with any third-party vendors, contractors, or consultants retained in connection with the Subject Stunt, including vehicle suppliers, stunt equipment providers, safety consultants, and any company providing drivers or stunt personnel.

30. All written policies, procedures, and guidelines in effect at the time of the Incident for reporting, responding to, and documenting employee injuries, workers' compensation claims, and medical treatment during production, as well as all documents showing how those policies were applied or not applied in connection with the Incident.

These Interrogatories and Request for Production of Documents are served upon you together with Plaintiff's Complaint.

This 23RD day of January 2026.

Respectfully submitted,

/s/ Blake Kilday
BLAKE L. KILDAY, ESQ.
Georgia Bar No. 376645
*Attorney for Plaintiff*

MORGAN & MORGAN ATLANTA, PLLC
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
Tel: (404) 965-1966
Fax: (404) 496-7364
blake.kilday@forthepeople.com

# IN THE STATE COURT OF DOUGLAS COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

---

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

---

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: ENTERTAINMENT PARTNERS, LLC

      You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

      If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

      Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

**IN THE STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

_____

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: ARMORED FILMS, LLC

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

_____

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: RITZI, STEVE

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>26SV00145</u>

Haven, Marvin

_____

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

**IN THE STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

### SUMMONS

TO: DURHAM STUNTS, INC.

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>26SV00145</u>

Haven, Marvin

_____

**PLAINTIFF**

<strong>VS.</strong>

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: MINX NATION PRODUCTIONS, INC.

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

**IN THE STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

_____

**PLAINTIFF**

                                        **VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: A & A WARD GROUP, INC.

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

_____

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: GROFFUNIT ACTION INC.

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>26SV00145</u>

Haven, Marvin

_____

**PLAINTIFF**

                                                    **VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

**SUMMONS**

TO: PERFORMANCE STUNTS, LLC

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

> **Blake Kilday**
> **Morgan and Morgan (blake.kilday@forthepeople.com)**
> **11605 Haynes Bridge Road**
> **Suite 490**
> **Alpharetta, Georgia 30009**
> **blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

_____

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: RITZI INC.

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

_Annetta D. Stembridge_

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

_____

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

SC-1
Rev'd 10/24

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: GEDDINGS, LEX

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

_Annetta D. Stembridge_

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>26SV00145</u>

Haven, Marvin

_____

**PLAINTIFF**

                                        **VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: SKLOV, COREY

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

**IN THE STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

_____

**PLAINTIFF**

VS.

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: WARD, ANDREW

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

_Annetta D. Stembridge_

Annetta D. Stembridge, Clerk
Douglas County, Georgia

**IN THE STATE COURT OF DOUGLAS COUNTY**
**STATE OF GEORGIA**

CIVIL ACTION NUMBER   26SV00145

Haven, Marvin

_____

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

SC-1
Rev'd 10/24

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: WADDLE, GREG

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>26SV00145</u>

Haven, Marvin

_____

**PLAINTIFF**

<b>VS.</b>

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

_____

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: GROFF, JEF

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

    If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

                    Clerk of State Court


_____
                    Annetta D. Stembridge, Clerk
                    Douglas County, Georgia

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  26SV00145

Haven, Marvin

---

**PLAINTIFF**

**VS.**

Entertainment Partners, LLC
Armored Films, LLC
Ritzi Inc.
Durham Stunts, Inc.
Minx Nation Productions, Inc.
A & A Ward Group, Inc.
Groffunit Action Inc.
Performance Stunts, LLC
Ritzi, Steve
Geddings, Lex
Sklov, Corey
Ward, Andrew
Waddle, Greg
Groff, Jef
Adams, Keith

---

**DEFENDANTS**

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: ADAMS, KEITH

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Blake Kilday**
**Morgan and Morgan (blake.kilday@forthepeople.com)**
**11605 Haynes Bridge Road**
**Suite 490**
**Alpharetta, Georgia 30009**
**blake.kilday@forthepeople.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 23rd day of January, 2026.**

Clerk of State Court

Annetta D. Stembridge, Clerk
Douglas County, Georgia

**General Civil and Domestic Relations Case Filing Information Form**

☐ Superior or ☑ State Court of  Douglas  County

| For Clerk Use Only |
| --- |
| Date Filed 01-23-2026  Case Number 26SV00145 |
| MM-DD-YYYY |

**Plaintiff(s)**

Haven, Marvin

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

**Defendant(s)**

Entertainment Partners, LLC

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

Armored Films, LLC

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

Ritzi Inc.

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

Durham Stunts, Inc.

| Last | First | Middle I. | Suffix | Prefix |
| --- | --- | --- | --- | --- |

**Plaintiff's Attorney** Kilday, Blake     **Bar Number** 376645     **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**

- ☑ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
Case Number                                Case Number

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____

_____

Version 1.1.20

Case Number: **26SV00145**

**State Court**

Date Filed:    **1/23/2026**

**Douglas County, Georgia**

<u>Plaintiff's / Attorney's Address:</u>
**BLAKE L. KILDAY**
**11605 HAYNES BRIDGE RD.**
**SUITE 490**
**ALPHARETTA, GA 30009**

**MARVIN HAVEN**

Plaintiff

VS.

**ENTERTAINMENT PARTNERS, LLC**

Defendant

<u>Name and Address of Party to be Served:</u>

**ENTERTAINMENT PARTNERS, LLC**

**900 OLD ROSWELL LAKES PKWY, SUITE 31**

**ROSWELL, GA 30076**

**MARSHAL / SHERIFF'S ENTRY OF SERVICE**

**PERSONAL**

□ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

□ I have this day served the defendant_____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about _____ years; weight, about _____ pounds; height, about_____ feet and _____inches, domiciled at the residence of defendant.

**CORPORATION**

□ Served the defendant_____, a corporation

by leaving a copy of the within action and summons with _____

in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

□ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

□ Diligent search made and defendant_____ not to be found in the jurisdiction of this Court.

This _____day of_____, 20____ .

_____
DEPUTY

SHERIFF DOCKET_____    PAGE_____

Case Number: **26SV00145**

Date Filed: **1/23/2026**

**State Court**

**Douglas County, Georgia**

Plaintiff's / Attorney's Address:
**BLAKE L. KILDAY**
**11605 HAYNES BRIDGE RD.**
**SUITE 490**
**ALPHARETTA, GA 30009**

**MARVIN HAVEN**

Plaintiff

VS.

**ENTERTAINMENT PARTNERS, LLC**

Defendant

Name and Address of Party to be Served:

**ARMORED FILMS, LLC**

**1870 THE EXCHANGE, STE 200 #44**

**ATLANTA, GA 30339**

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant_____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about_____years; weight, about_____pounds; height, about_____feet and _____inches, domiciled at the residence of defendant.

**CORPORATION**

☐ Served the defendant_____, a corporation

by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant_____
not to be found in the jurisdiction of this Court.

This_____day of_____, 20____ .

_____
DEPUTY

SHERIFF DOCKET_____ PAGE_____

Case Number: **26SV00145**

Date Filed:    **1/23/2026**

**State Court**

**Douglas County, Georgia**

Plaintiff's / Attorney's Address:
**BLAKE L. KILDAY**
**11605 HAYNES BRIDGE RD.**
**SUITE 490**
**ALPHARETTA, GA 30009**

**MARVIN HAVEN**

Plaintiff

VS.

**ENTERTAINMENT PARTNERS, LLC**

Defendant

Name and Address of Party to be Served:

**STEVE  RITZI**

**235 FORREST LAKE DRIVE**

**ATLANTA, GA 30327**

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant_____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about _____ years; weight, about _____ pounds; height, about_____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☐ Served the defendant_____, a corporation

by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ day of_____, 20____ .

_____
DEPUTY

SHERIFF DOCKET_____ PAGE_____

Case Number: **26SV00145**

Date Filed:    **1/23/2026**

**State Court**

**Douglas County, Georgia**

Plaintiff's / Attorney's Address:
**BLAKE L. KILDAY**
**11605 HAYNES BRIDGE RD.**
**SUITE 490**
**ALPHARETTA, GA 30009**

**MARVIN HAVEN**

**Plaintiff**

VS.

**ENTERTAINMENT PARTNERS, LLC**

**Defendant**

Name and Address of Party to be Served:

**LEX GEDDINGS**

**110 BERRY LANE**

**CANTON, GA 30115**

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☐ Served the defendant _____, a corporation

by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This _____ day of _____, 20____ .

_____
DEPUTY

SHERIFF DOCKET_____    PAGE_____

Case Number: **26SV00145**

Date Filed: **1/23/2026**

**State Court**

**Douglas County, Georgia**

Plaintiff's / Attorney's Address:
**BLAKE L. KILDAY**
**11605 HAYNES BRIDGE RD.**
**SUITE 490**
**ALPHARETTA, GA 30009**

**MARVIN HAVEN**

Plaintiff

VS.

**ENTERTAINMENT PARTNERS, LLC**

Defendant

Name and Address of Party to be Served:

**GREG  WADDLE**

**5362 MUIRWOOD PLACE**

**POWDER SPRINGS, GA 30127**

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant_____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☐ Served the defendant_____ _____, a corporation

by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant_____
not to be found in the jurisdiction of this Court.

This _____ day of_____, 20____ .

_____
DEPUTY

SHERIFF DOCKET_____ PAGE_____

**AFFIDAVIT OF SERVICE**

State of Georgia                     County of Douglas                     State Court

☀ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**FEB 03, 2026 11:23 AM**

Annetta D. Stembridge, Clerk
Douglas County, Georgia

Case Number 26SV00145

Plaintiff
MARVIN HAVEN,

Vs

Defendant
ENTERTAINMENT PARTNERS, LLC;
ARMORED FILMS, LLC; STEVE
RITZI; LEX GEDDINGS; COREY
SKLOV; ANDREW WARD; GREG
WADDLE; JEF GROFF; KEITH
ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT ACTION,
INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day of January 2026 to be served on **Entertainment Partners LLC, c/o Registered Agent: Cogency Global Inc 900 Old Roswell Lakes Parkway, Suite 310 Roswell, GA 30076.**

**I, Marc Perlson, being duly sworn, depose and say, that on the 29th day of January 2026 at 3:05 PM, I** Served **Entertainment Partners LLC, c/o Cogency Global Inc. RA** by delivering a true copy of the **SUMMONS, COMPLAINT FOR DAMAGES, PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ENTERTAINMENT PARTNERS, LLC, RULE 5.2 CERTIFICATE OF SERVICE,** to: **Cogency Global Inc,** as **Registered Agent BY LEAVING THE SAME WITH** Kiara Soldano, as **Process Specialist** at the address of **900 Old Roswell Lakes Parkway, Suite 310 Roswell, GA 30076.**

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and have been appointed by this Court to serve process.

Subscribed and Sworn to before me on the ____2nd____ day of
February 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

Marc Perlson
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077

JULIE PERLSON
MY COMMISSION EXPIRES
NOTARY
PUBLIC
JANUARY 10, 2027
FULTON COUNTY, GEORGIA

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
**FEB 05, 2026 08:26 AM**

Annetta D. Stembridge, Clerk
Douglas County, Georgia
**State Court**

## AFFIDAVIT OF SERVICE

**State of Georgia**            **County of Douglas**

Case Number: 26SV00145

Plaintiff:
**Marvin Haven**

vs.

Defendants:
**Entertainment Partners, LLC; et al.**

For:
Blake Kilday
Morgan & Morgan - Atlanta
11605 Haynes Bridge Rd
Ste 490
Alpharetta, GA 30009

Received by Perma Investigations on the 2nd day of February, 2026 at 5:02 pm to be served on **Ritzi Inc c/o Steve Ritzi - Reg Agent, 235 Forrest Lake Dr, Atlanta, GA 30327**.

I, Emmanuel Omuvwie, being duly sworn, depose and say that on the **3rd day of February, 2026** at **12:52 pm, I:**

served Ritzi Inc c/o Steve Ritzi - Reg Agent by delivering a true copy of the **Summons, Complaint for Damages** to: **Steve Ritzi** as **Registered Agent** at the address of: **235 Forrest Lake Dr, Atlanta, GA 30327** on behalf of **Ritzi Inc**

**Additional Information pertaining to this Service:**
2/3/2026  12:52 pm  Perfected corporate service to Steve Ritzi. Subject is a white male, 5'8", 45-55yrs old, 300lbs, brown hair. Subject was identified when he said yes and accepted documents when named. Subject is the registered agent and person authorized to accept.

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and I have been appointed by this Court to serve process.

Subscribed and Sworn to before me on the _____
day of _____, _____ by the affiant
who is personally known to me.

_____
NOTARY PUBLIC

**Emmanuel Omuvwie**
Perma

**Perma Investigations**
**2020 Hembree Grove Drive**
**Roswell, GA 30076**
**(770) 664-8005**

Our Job Serial Number: ANC-2026002009
Ref: 15873425

Copyright © 1992-2026 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0b

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
**FEB 05, 2026 08:26 AM**

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## AFFIDAVIT OF SERVICE

**State of Georgia**                    **County of Douglas**                    **State Court**

Case Number: 26SV00145

Plaintiff:
**Marvin Haven**

vs.

Defendants:
**Entertainment Partners, LLC; et al.**

For:
Blake Kilday
Morgan & Morgan - Atlanta
11605 Haynes Bridge Rd
Ste 490
Alpharetta, GA 30009

Received by Perma Investigations on the 2nd day of February, 2026 at 4:55 pm to be served on **Steve Ritzi, 235 Forrest Lake Dr, Atlanta, GA 30327**.

I, Emmanuel Omuvwie, being duly sworn, depose and say that on the **3rd day of February, 2026** at **12:52 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Summons, Complaint for Damages, Plaintiff's First Interrogatories and Request for Production of Documents to Defendant Steve Ritzi, Rule 5.2 Certificate** to: **Steve Ritzi** at the address of: **235 Forrest Lake Dr, Atlanta, GA 30327**.

**Additional Information pertaining to this Service:**
2/3/2026  12:52 pm  Perfected individual service to Steve Ritzi. Subject is a white male, 5'8", 45-55yrs old, 300lbs, brown hair. Subject was identified when he said yes and accepted documents when named.

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true.I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and I have been appointed by this Court to serve process.

Subscribed and Sworn to before me on the ___ 4th ___
day of __Febuary__ , __2026__ by the affiant
who is personally known to me.

_____
NOTARY PUBLIC

**Emmanuel Omuvwie**
Perma

**Perma Investigations**
**2020 Hembree Grove Drive**
**Roswell, GA 30076**
**(770) 664-8005**

Our Job Serial Number: ANC-2026002008
Ref: 15873425

Copyright © 1992-2026 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0b

⏚ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**FEB 05, 2026 08:26 AM**

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**State Court**

## AFFIDAVIT OF SERVICE

**State of Georgia**                    **County of Douglas**

Case Number: 26SV00145

Plaintiff:
**Marvin Haven**

vs.

Defendants:
**Entertainment Partners, LLC; et al.**

For:
Blake Kilday
Morgan & Morgan - Atlanta
11605 Haynes Bridge Rd
Ste 490
Alpharetta, GA 30009

Received by Perma Investigations on the 2nd day of February, 2026 at 4:35 pm to be served on **Armored Films - Legal Inc Corporate Services, Inc. c/o: Registered Agent, 1870 The Exchange, STE 200#44, Atlanta, GA 30339**.

I, James Stiggers, being duly sworn, depose and say that on the **3rd day of February, 2026** at **1:53 pm, I:**

served Armored Films - Legal Inc Corporate Services, Inc. c/o: Registered Agent by delivering a true copy of the **Summons; Complaint for Damages; Plaintiff's First Set of Interrogatories and Request for Production of Documents to Defendant Armored Films, LLC; Rule 5.2 Certificate of Service** to: **Haley Elder as Authorized to Accept** for **Armored Films - Legal Inc Corporate Services, Inc.**, at the address of: **1870 The Exchange, STE 200#44, Atlanta, GA 30339**.

**Additional Information pertaining to this Service:**
2/3/2026  1:53 pm  Perfected corporate service to Haley Elder authorized Agent. Uploading pictures

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and I have been appointed by this Court to serve process.

Subscribed and Sworn to before me on the 4th
day of _February_ , _2026_ by the affiant
who is personally known to me.

_____
NOTARY PUBLIC

**James Stiggers**
Perma

**Perma Investigations**
**2020 Hembree Grove Drive**
**Roswell, GA 30076**
**(770) 664-8005**

Our Job Serial Number: ANC-2026002003
Ref: 15873425



Copyright © 1992-2026 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0b



 ORIGINAL

**FILED**

**DEC 19 2024**

Annette D. Stembridge, Clerk
Superior & State Court
Douglas County, GA

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

In re application of   James L Stiggers
for appointment as a Permanent Process Server
for the Superior Court of Douglas County

### ORDER APPOINTING PERMANENT PROCESS SERVER

The court having read the application of James L Stiggers                for

appointment as a permanent process server for the Douglas Superior Court

pursuant to Ga. Code § 9-11-4, it is ordered said person is so appointed

until the expiration of the applicant's current process server certification as

issued by the Georgia Administrative Office of the Courts which expiration

date is 09/23/2027                , unless sooner revoked.

So ordered this *December 6*                , 2024.

_____

William H. McClain
Chief Judge
Superior Court

⬜ORIGINAL

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

**FILED**

**FEB 17 2025**

Annetta D. Stembridge, Clerk
Superior & State Court
Douglas County, GA

In re application of *Emmanuel Omuvwie*
for appointment as a Permanent Process Server
for the Superior Court of Douglas County

## ORDER APPOINTING PERMANENT PROCESS SERVER

The court having read the application of *Emmanuel Omuvwie* for

appointment as a permanent process server for the Douglas Superior Court

pursuant to Ga. Code § 9-11-4, it is ordered said person is so appointed

until the expiration of the applicant's current process server certification as

issued by the Georgia Administrative Office of the Courts which expiration

date is *01/12/28* , unless sooner revoked.

So ordered this *February 7,* 2025.

*[signature]*

Cynthia C. Adams
Chief Judge
Superior Court

RECORDED IN BOOK *76* PAGE *115*
DATE *2/18/25*



## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

**STANDING ORDER, RE:**

    :
    :
    :
    :
    :

**PERMANENT PROCESS SERVERS**

    :
    :
    :
    :
    :

**FILED**

DEC 17 2025

Annetta D. Stembridge, Clerk
Superior & State Court
Douglas County, GA

---

### STANDING ORDER

Pursuant to O.C.G.A. § 9-11-4 (c), this Court provides herein that any person who has completed the application process for appointment as a permanent process server in the Superior Court of Douglas County in 2019 or anytime thereafter, and has been appointed as a permanent process server in said Court for 2019 or anytime thereafter, shall be deemed to be appointed as a permanent process server in the State Court of Douglas County. Permanent process servers wishing to rely upon this Order shall be required to attach a copy of their Superior Court Order of Appointment to any Affidavit of Service that is required to be filed with the Court. All appointments arising pursuant to this Order shall be effective until midnight, December 31, 2026.

And it is **SO ORDERED** and **ADJUDGED** this 16th day of December, 2025.

**HON. EDDIE BARKER**, Chief Judge
State Court of Douglas County
Douglas Judicial Circuit

**HON. BRIAN K. FORTNER**, Judge
State Court of Douglas County
Douglas Judicial Circuit

RECORDED IN BOOK 78 PAGE 212
DATE 12/17/25

ORIGINAL

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

**FILED**

FEB 17 2025

Annetta D. Stembridge, Clerk
Superior & State Court
Douglas County, GA

In re application of EMMANUEL Omuvwie
for appointment as a Permanent Process Server
for the Superior Court of Douglas County

## ORDER APPOINTING PERMANENT PROCESS SERVER

The court having read the application of EMMANUEL Omuvwie for

appointment as a permanent process server for the Douglas Superior Court

pursuant to Ga. Code § 9-11-4, it is ordered said person is so appointed

until the expiration of the applicant's current process server certification as

issued by the Georgia Administrative Office of the Courts which expiration

date is 01|12|28 , unless sooner revoked.

So ordered this February 7, 2025.

_____
Cynthia C. Adams
Chief Judge
Superior Court

RECORDED IN BOOK 76 PAGE 115
DATE 2|18|25



# IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

STANDING ORDER, RE:

**FILED**

DEC 17 2025

Annetta D. Stembridge, Clerk
Superior & State Court
Douglas County, GA

PERMANENT PROCESS SERVERS

---

## STANDING ORDER

Pursuant to O.C.G.A. § 9-11-4 (c), this Court provides herein that any person who has completed the application process for appointment as a permanent process server in the Superior Court of Douglas County in 2019 or anytime thereafter, and has been appointed as a permanent process server in said Court for 2019 or anytime thereafter, shall be deemed to be appointed as a permanent process server in the State Court of Douglas County. Permanent process servers wishing to rely upon this Order shall be required to attach a copy of their Superior Court Order of Appointment to any Affidavit of Service that is required to be filed with the Court. All appointments arising pursuant to this Order shall be effective until midnight, December 31, 2026.

And it is **SO ORDERED** and **ADJUDGED** this _16th_ day of December, 2025.

**HON. EDDIE BARKER**, Chief Judge
State Court of Douglas County
Douglas Judicial Circuit

**HON. BRIAN K. FORTNER**, Judge
State Court of Douglas County
Douglas Judicial Circuit

RECORDED IN BOOK _78_ PAGE _212_
DATE _12/17/25_

⚖ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**FEB 06, 2026 12:42 PM**

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

January 15, 2026

TO:          All Judges, Clerks of Court, and Counsel of Record

FROM:     Blake L. Kilday

RE:          Notice of Leave of Absence for Blake Kilday, Esq.

## <u>NOTICE OF LEAVE OF ABSENCE</u>

      **COMES NOW,** BLAKE KILDAY, and respectfully notifies all Judges before whom he has cases pending, all affected Clerks of Court, and all opposing counsel, that he will be on leave pursuant to Georgia Uniform Superior Court Rule 16.

1.  The periods of leave during which time Blake Kilday, Esq., will be away from the practice of law are:  **4/27/2026 - 5/1/2026**.  The purpose of the leave is because counsel will be out of state for a personal matter.

2.  All affected Judges and opposing counsel shall have ten (10) days from the date of this Notice to object to it. If no objections are filed, the leave shall be granted.

3.  The case affected is listed in the attached Exhibit "A."

      The undersigned prays that he be excused from any proceedings and appearances as listed above including trials, hearings, conferences and depositions during this time.

Respectfully submitted,

*/s/ Blake Kilday*

_____

Blake Kilday
Georgia State Bar No.: 376645

Morgan & Morgan Atlanta, PLLC
11605 Haynes Bridge Rd, Suite 490
Alpharetta, GA 30009
Telephone:  (404) 965-1966

**AFFIDAVIT OF SERVICE**

⚡ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
FEB 06, 2026 04:09 PM

Anietta D. Stembridge, Clerk
Douglas County, Georgia

| Case: 26SV00145 | Court: State Court of Douglas County | County: Douglas, GA | Job: 1511781G |
|---|---|---|---|
| Plaintiff / Petitioner: MARVIN HAVEN | | Defendant / Respondent: ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z | | |
| Received by: Perma Investigations | | For: Blake Kilday, Morgan and Morgan | |
| To be served upon: GREG WADDLE | | | |

I, Catherina Pilar Folds, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Greg Waddle via service to Dana, co-resident., 5361 Muirwood Place, Powder Springs, GA 30127

**Manner of Service:**   Substitute Service - Abode, Feb 4, 2026, 6:04 pm EST

**Documents:**   SUMMONS, COMPLAINT FOR DAMAGES, PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT GREG WADDLE, RULE 5.2 CERTIFICATE OF SERVICE

**Additional Comments:**
1) Successful Attempt: Feb 4, 2026, 6:04 pm EST at 5361 Muirwood Place, Powder Springs, GA 30127 received by Greg Waddle via service to Dana, co-resident.. Age: 40's; Ethnicity: African American; Gender: Female; Weight: 130; Height: 5'3"; Hair: Black;
Service to Greg Waddle via service to Dana, who would only identify herself as a co-resident but she confirmed co-residency and accepted service on Greg Waddle's behalf.

_Catherina Pilar Folds_        2-5-26
Catherina Pilar Folds          Date

Subscribed and sworn to before me by the affiant who is
personally known to me.

_Alexis L Forsyth_
Notary Public

2·5·26
Date        Commission Expires

Case Number: 26SV00145

Date Filed:    1/23/2026

Plaintiff's / Attorney's Address:
BLAKE L. KILDAY
11605 HAYNES BRIDGE RD.
SUITE 490
ALPHARETTA, GA 30009

Name and Address of Party to be Served:

GREG WADDLE

5362 MUIRWOOD PLACE

POWDER SPRINGS, GA 30127

**State Court**

**Douglas County, Georgia**

MARVIN HAVEN

Plaintiff

VS.

ENTERTAINMENT PARTNERS, LLC

Defendant

FILED

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant_____ by leaving
a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**

☐ Served the defendant _____ , a corporation
by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of
the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United
States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with
adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the
summons.

**NON EST**

☐ Diligent search made and defendant ___Greg Waddle___
not to be found in the jurisdiction of this Court. ___Bad Address-Cobb county___
___Not located in Douglas County___

This ___9th___ day of ___Feb___, 20_26_ .

_____
DEPUTY

SHERIFF DOCKET_____ PAGE_____

Case Number: 26SV00145

Date Filed: 1/23/2026

**State Court**

**Douglas County, Georgia**

Plaintiff's / Attorney's Address:
BLAKE L. KILDAY
11605 HAYNES BRIDGE RD.
SUITE 490
ALPHARETTA, GA 30009

MARVIN HAVEN

Plaintiff

VS.

ENTERTAINMENT PARTNERS, LLC

Defendant

Name and Address of Party to be Served:

ENTERTAINMENT PARTNERS, LLC
900 OLD ROSWELL LAKES PKWY, SUITE 31
ROSWELL, GA 30076

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant_____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☐ Served the defendant _____, a corporation

by leaving a copy of the within action and summons with _____

in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

Diligent search made and defendant _Entertainment Partners LLC_
not to be found in the jurisdiction of this Court. _Bad Address - Fulton County_
_Not located in Douglas County_

This _9th_ day of _Feb_, 20_26_.

_____
_H J Price_
DEPUTY

SHERIFF DOCKET_____ PAGE_____

Case Number: 26SV00145

Date Filed:    1/23/2026

State Court

Douglas County, Georgia

Plaintiff's / Attorney's Address:
BLAKE L. KILDAY
11605 HAYNES BRIDGE RD.
SUITE 490
ALPHARETTA, GA 30009

MARVIN HAVEN

Plaintiff

VS.

ENTERTAINMENT PARTNERS, LLC

Defendant

Name and Address of Party to be Served:

LEX GEDDINGS

110 BERRY LANE

CANTON, GA 30115

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☐ Served the defendant _____, a corporation

by leaving a copy of the within action and summons with _____

in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☒ Diligent search made and defendant ~~The Lex Geddings~~ not to be found in the jurisdiction of this Court.     Bad Address - Cherokee county

This _____ 9th _____ day of _____ Feb _____, 20 26.

_____
DEPUTY

SHERIFF DOCKET _____    PAGE _____

Case Number: 26SV00145

State Court

Date Filed:    1/23/2026

Douglas County, Georgia

Plaintiff's / Attorney's Address:
BLAKE L. KILDAY
11605 HAYNES BRIDGE RD.
SUITE 490
ALPHARETTA, GA 30009

MARVIN HAVEN

Plaintiff

VS.

ENTERTAINMENT PARTNERS, LLC

Defendant

Name and Address of Party to be Served:

STEVE RITZI

235 FORREST LAKE DRIVE

ATLANTA, GA 30327

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of _____ described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

Served the defendant _____ , a corporation

☐ by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☒ Diligent search made and defendant _____ Steve Ritzi _____
not to be found in the jurisdiction of this Court.    Fulton County - Address
Not Located In Douglas County

This ___ 9th ___ day of ___ Feb ___, 20 _26_ .

_____
DEPUTY

SHERIFF DOCKET_____    PAGE_____

Case Number: 26SV00145

Date Filed:    1/23/2026

State Court

Douglas County, Georgia

Plaintiff's / Attorney's Address:
BLAKE L. KILDAY
11605 HAYNES BRIDGE RD.
SUITE 490
ALPHARETTA, GA 30009

MARVIN HAVEN

Plaintiff

VS.

Name and Address of Party to be Served:

ENTERTAINMENT PARTNERS, LLC

Defendant

ARMORED FILMS, LLC

1870 THE EXCHANGE, STE 200 #44

ATLANTA, GA 30339

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS**

☐ I have this day served the defendant_____ by leaving
a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about _____ years; weight, about _____ pounds; height, about_____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**

☐ Served the defendant _____ , a corporation

by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of
the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United
States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with
adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the
summons.

**NON EST**

☐ Diligent search made and defendant _Armored Films LLC_____
not to be found in the jurisdiction of this Court.     _Bad Address_

This ___9th___ day of _Feb_ , 20_26_.

_____
DEPUTY

SHERIFF DOCKET_____    PAGE_____

Case Number: **26SV00145**

Date Filed:     **1/23/2026**

**State Court**

**Douglas County, Georgia**

Plaintiff's / Attorney's Address:
**BLAKE L. KILDAY**
**11605 HAYNES BRIDGE RD.**
**SUITE 490**
**ALPHARETTA, GA 30009**

**MARVIN HAVEN**

Plaintiff

VS.

**ENTERTAINMENT PARTNERS, LLC**

Defendant

Name and Address of Party to be Served:

**GREG WADDLE**

**5362 MUIRWOOD PLACE**

**POWDER SPRINGS, GA 30127**

## MARSHAL / SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant_____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant _____ , a corporation

by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _Greg Waddle_
not to be found in the jurisdiction of this Court. _Bad Address—Cobb county_
_Not located in Douglas County_

This _9th_ day of _Feb_, 20_26_.

_____
Lt. J Prince
DEPUTY

SHERIFF DOCKET_____     PAGE_____

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
BRIAN FORTNER

FEB 11, 2026 09:29 AM

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# AFFIDAVIT OF PROCESS SERVER

**Client Info:**

Blake Kilday
Morgan and Morgan (blake.kilday@forthepeople.com)
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
blake.kilday@forthepeople.com

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | IN STATE COURT OF DOUGLAS COUNTY STATE OF GEORGIA |
| MARVIN HAVEN, | Court Case # **26SV00145** |
| -versus- | |
| **DEFENDANT:** | |
| ENTERTAINMENT PARTNERS, LLC; ET AL. | |

**Service Info:**

**Date Received: 2/3/2026 at 01:19 PM**
**Service:** I Served **Groffunit Action, Inc. C/O CORPORATION AGENTS, INC**
With: **SUMMONS; COMPLAINT**
by leaving with **Laeilani Kimura, General Manager**

At ( Business) **1003 BISHOP STREET, STE 2700, HONOLULU, HI 96813** On
**2/4/2026 at 02:06 PM**
**Manner of Service: CORPORATE**

**Served Description: (Approx)**

Age: **40**, Sex: **Female**, Race: **Asian**, Height: **5' 4"**, Weight: **130**, Hair: **Black** Glasses: **No**

Tad Oie, being duly sworn, affirms and says that I am over the age of eighteen years, and am not a party to this action. I affirm this 5th, day of February, 2026, under the penalties of perjury under the laws of Georgia, that the foregoing is true and correct to the best of my knowledge.

Signature of Server: _____
**TAD OIE**

**Perma Investigations**
PO Box 1742
Roswell, GA 30077

Client # 15873425
Job # 97859

This ____ page AFFIDAVIT OF PROCESS SERVER which is undated at the time of notary is SUBSCRIBED AND SWORN to before me this 5th, day of February, 2026, by **TAD OIE**, Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
NOTARY PUBLIC for the state of Hawaii
My commission expires on _____

MELISSA TOYOOKA
NOTARY
PUBLIC
Comm. No.
09-89
STATE OF HAWAII

MELISSA TOYOOKA, NOTARY PUBLIC
FIRST JUDICIAL CIRCUIT, STATE OF HAWAII
MY COMMISSION EXPIRES ON MARCH 15, 2029




**AFFIDAVIT OF SERVICE**

EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
BRIAN K. FORTNER
FEB 11, 2026 09:29 AM

Annetta D. Stembridge, Clerk
Douglas County, Georgia

| Case:<br>26SV00145 | Court:<br>State Court | County:<br>Douglas, GA | Job:<br>151247 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Marvin Haven | | Defendant / Respondent:<br>Jef Groff, et al | |
| Received by:<br>Patton Legal Services | | For:<br>Perma Investigations | |
| To be served upon:<br>Jef Groff | | | |

I, ROSAURA CRUZ , being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Ericka Goff, 11613 Teddington Court, Bentonville, AR 72712

**Manner of Service:** Substitute Service - Abode, Feb 6, 2026, 8:36 pm CST

**Documents:** Summons and Complaint, Interrogatories and Request for Production and Certificate of Service

**Additional Comments:**
1) Successful Attempt: Feb 6, 2026, 8:36 pm CST at 11613 Teddington Court, Bentonville, AR 72712 received by Ericka Goff. Age: 46; Ethnicity: Caucasian; Gender: Female; Relationship: Wife;

_Rosaura Cruz_                               02/09/2026
_____          _____
ROSAURA CRUZ                                   Date

Subscribed and sworn to before me by the affiant who is personally known to me.

_____

**Notary Public**
02/09/2026                        11/20/2030
_____
Date                          Commission Expires

Cody Patton
Benton County Arkansas
NOTARY PUBLIC — ARKANSAS
My Commission Expires November ,20,2030
Commission No. 12712550

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN FORTNER

FEB 12, 2026 09:13 AM

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

# AFFIDAVIT OF PROCESS SERVER

**Client Info:**

Blake Kilday
Morgan and Morgan (blake.kilday@forthepeople.com)
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
blake.kilday@forthepeople.com

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | IN STATE COURT OF DOUGLAS COUNTY STATE OF GEORGIA |
| MARVIN HAVEN, | Court Case # **26SV00145** |
| -versus- | |
| **DEFENDANT:** | |
| ENTERTAINMENT PARTNERS, LLC; ET AL. | |

**Service Info:**

**Date Received:** 2/3/2026 at 01:19 PM
**Service:** I Served **Groffunit Action, Inc. C/O CORPORATION AGENTS, INC**
With: **SUMMONS; COMPLAINT**
by leaving with **Laeilani Kimura, General Manager**

At ( Business) **1003 BISHOP STREET, STE 2700, HONOLULU, HI 96813**  On
**2/4/2026** at **02:06 PM**
**Manner of Service: CORPORATE**

**Served Description:  (Approx)**

Age: **40**, Sex: **Female**, Race: **Asian**, Height: **5' 4"**, Weight: **130**, Hair: **Black** Glasses:  **No**

Tad Oie, being duly sworn, affirms and says that I am over the age of eighteen years, and am not a party to this action. I affirm this 5th, day of February, 2026, under the penalties of perjury under the laws of Georgia, that the foregoing is true and correct to the best of my knowledge.

Signature of Server:_____
**TAD OIE**

**Perma Investigations**
PO Box 1742
Roswell, GA 30077

Client # 15873425
Job # 97859

This ___ page AFFIDAVIT OF PROCESS SERVER which is undated at the time of notary is SUBSCRIBED AND SWORN to before me this 5th, day of February, 2026, by **TAD OIE**, Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
NOTARY PUBLIC for the state of Hawaii
My commission expires on _____

MELISSA TOYOOKA, NOTARY PUBLIC
FIRST JUDICIAL CIRCUIT, STATE OF HAWAII
MY COMMISSION EXPIRES ON MARCH 15, 2029

MELISSA TOYOOKA
NOTARY
PUBLIC
★ Comm. No. ★
09-89
STATE OF HAWAII




1 of 1

AFFIDAVIT OF NON SERVICE

⬩ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
BRIAN K. FORTNER
FEB 18, 2026 08:16 AM

Annetta D. Stembridge, Clerk
Douglas County, Georgia

State of Georgia        County of Douglas     State Court

Case Number: 26SV00145

Plaintiff:
Marvin Haven,
vs.

Defendant
Entertainment Partners LLC etal

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day January 2026 to be served on **Lex Geddings 110 Berry Lane, Canton, Georgia 30115.**

**I,** Marc Perlson, being duly sworn, depose and say, that on the **11th day February, 2026 at 6:15 PM, I Non Served Lex Geddings,** the **SUMMONS, COMPLAINT FOR DAMAGES, PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LEX GEDDINGS, RULE 5.2 CERTIFICATE OF SERVICE,** for the reasons detailed in the comments below

**Additional information pertaining to this Service:**

Latest status 02/07/26 12:30 pm Arrived at 110 Berry Lane Canton, GA 30115 The gate to the driveway was open. Knocked on one door and heard a dog barking but suddenly the dog stopped barking. Walked to the garage and the garage doors were open. Inside the garage was a Black Cadillac, a black Land Rover and a large pick up truck/ There was another door with a ring door bell. I rang it and knocked and there was no answer.

Latest status 02/08/26 4:30 pm Arrived at 110 Berry Lane Canton, GA 30115 The gate to the driveway was closed. The garage doors to the house that were previously opened were closed. Could not gain access to the property.

Latest status 02/11/26 6:15 pm Arrived at 110 Berry Lane Canton, GA 30115 The gate to the driveway was closed. The garage doors to the house were open. I still could not gain access to the property. Tax records show that the subject owns this property.

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and I have been appointed by this Court to serve process.

Subscribed and Sworn to before me on the 17th day of February 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

_____
Marc Perlson
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077

JULIE PERLSON
MY COMMISSION EXPIRES
NOTARY PUBLIC
JANUARY 10, 2027
FULTON COUNTY, GEORGIA

AFFIDAVIT OF NON SERVICE

**State of Georgia**          **County of Douglas**          **State Court**

Case Number: 26SV00145

Plaintiff:
Marvin Haven,
vs.

Defendant
Entertainment Partners LLC etal

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day January 2026 to be served on **Durham Stunts Inc RA Lex Geddings 110 Berry Lane, Canton, Georgia 30115.**

**I,** Marc Perlson, being duly sworn, depose and say, that on the **11th day February, 2026 at 6:15 PM, I Non Served Durham Stunts Inc RA Lex Geddings,** the **SUMMONS, COMPLAINT FOR DAMAGES,** for the reasons detailed in the comments below

**Additional information pertaining to this Service:**

Latest status 02/07/26 12:30 pm  Arrived at 110 Berry Lane Canton, GA 30115  The gate to the driveway was open.  Knocked on one door and heard a dog barking but suddenly the dog stopped barking.  Walked to the garage and the garage doors were open.  Inside the garage was a Black Cadillac, a black Land Rover and a large pick up truck/ There was another door with a ring door bell.  I rang it and knocked and there was no answer.

Latest status 02/08/26 4:30 pm  Arrived at 110 Berry Lane Canton, GA 30115  The gate to the driveway was closed.  The garage doors to the house that were previously opened were closed.  Could not gain access to the property.

Latest status 02/11/26 6:15 pm  Arrived at 110 Berry Lane Canton, GA 30115  The gate to the driveway was closed.  The garage doors to the house were open. I still could not gain access to the property. Tax records show that the subject owns this property.

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein.  I have personal knowledge of the facts stated herein and know them to be true.  I have no interest in the outcome of this action and am not related to any of the parties.  I am 18 or more years of age and I have been appointed by this Court to serve process.

Subscribed and Sworn to before me on the ___17ᵗʰ___ day of
February 2026 by the affiant who is personally known to me.

Marc Perlson
Process Server

NOTARY PUBLIC

Perma Investigations
PO Box 1742
Roswell, GA 30077

🔥 EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER
FEB 23, 2026 08:20 AM

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

IN THE STATE COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

**Marvin Haven**

Case No.:     **26SV00145**

Plaintiff/Petitioner

vs.

**Entertainment Partners, LLC Armored, Films, LLC, Ritzi Inc., Durham Stunts, Inc., Minx Nation Productions, Inc., A & A Ward Group, Inc., Großlauf Action Inc., Performance Stunts, LLC, Ritzi, Steve, Geddings, Lex, Sklov, Corey, Ward, Andrew, Waddle, Greg, Groff, Jef, Adams, Keith**

Defendant/Respondent

AFFIDAVIT OF SERVICE OF
**SUMMONS; COMPLAINT FOR DAMAGES; PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LEX GEDDINGS; RULE 5.2 CERTIFICATE OF SERVICE**

Received by **Stine Atuokwu**, on the **18th day of February, 2026 at 1:32 PM** to be served upon **Durham Stunts, Inc. c/o Lex Geddings** at **110 Berry Ln, Canton, Cherokee County, GA 30115**.
On the **18th day of February, 2026 at 6:07 PM, I, Stine Atuokwu, SERVED Durham Stunts, Inc. c/o Lex Geddings** at **110 Berry Ln, Canton, Cherokee County, GA 30115** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Leesa Pate**, on behalf of said Corporation.
**THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
I delivered the documents to Leesa Pate who identified themselves as the subject's spouse with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 55-65 years of age, 5'4"-5'6" tall and weighing 120-140 lbs.**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: ___*Stine Atuokwu*___     N/A     **2 – 20 – 26**

Stine Atuokwu          Server ID #          Date

Notary Public: Subscribed and sworn before me on this __20__ day of __FEB__ in the year of 20__26__
Personally known to me __✓__ or _____ identified by the following document:

Notary Public (Legal Signature) _____

*[Notary seal: ROSANNE OKOREFE, COMMISSION EXPIRES, NOTARY PUBLIC, JANUARY 26, 2029, BANKS COUNTY, GEORGIA]*

REF: 15873425

Tracking #: 0209463632

Scanned with
CamScanner

**ORIGINAL**

FILED
Annetta D. Stembridge, Clerk

JUN 30 2025

Superior & State Court
Douglas County, GA

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

In re application of
for appointment as a Permanent Process Server
for the Superior Court of Douglas County

## ORDER APPOINTING PERMANENT PROCESS SERVER

The court having read the application of Stine O Atuokwu       for

appointment as a permanent process server for the Douglas Superior Court

pursuant to Ga. Code § 9-11-4, it is ordered said person is so appointed

until the expiration of the applicant's current process server certification as

issued by the Georgia Administrative Office of the Courts which expiration

date is June 24, 2028        , unless sooner revoked.

So ordered this   June   27  ,  2025.

Cynthia C. Adams

Chief Judge
Superior Court

RECORDED IN BOOK 77  PAGE 419
DATE 06/30/2025

EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN FORTNER

FEB 24, 2026 10:11 AM

*Annetta R. Stembridge*

Annetta D. Stembridge, Clerk
Douglas County, Georgia

# AFFIDAVIT OF PROCESS SERVER

**Client Info:**

Blake Kilday
Morgan and Morgan (blake.kilday@forthepeople.com)
11605 Haynes Bridge Road
Suite 490
Alpharetta, Georgia 30009
blake.kilday@forthepeople.com

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | IN STATE COURT OF DOUGLAS COUNTY STATE OF GEORGIA |
| MARVIN HAVEN, | Court Case # **26SV00145** |
| -versus- | |
| **DEFENDANT:** | |
| ENTERTAINMENT PARTNERS, LLC; ET AL. | |

**Service Info:**

Date Received: 2/3/2026 at 01:19 PM
Service: I Served **Groffunit Action, Inc. C/O CORPORATION AGENTS, INC**
With: **SUMMONS; COMPLAINT**
by leaving with **Laeilani Kimura, General Manager**

At ( Business) **1003 BISHOP STREET, STE 2700, HONOLULU, HI 96813** On
**2/4/2026 at 02:06 PM**
**Manner of Service: CORPORATE**

**Served Description: (Approx)**

Age: **40**, Sex: **Female**, Race: **Asian**, Height: **5' 4"**, Weight: **130**, Hair: **Black** Glasses: **No**

Tad Oie, being duly sworn, affirms and says that I am over the age of eighteen years, and am not a party to this action. I affirm this 5th, day of February, 2026, under the penalties of perjury under the laws of Georgia, that the foregoing is true and correct to the best of my knowledge.

Signature of Server: _____
**TAD OIE**

**Perma Investigations**
PO Box 1742
Roswell, GA 30077

Client # 15873425
Job # 97859

This ___ page AFFIDAVIT OF PROCESS SERVER which is undated at the time of notary is SUBSCRIBED AND SWORN to before me this 5th, day of February, 2026, by **TAD OIE**, Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
NOTARY PUBLIC for the state of Hawaii
My commission expires on _____

MELISSA TOYOOKA, NOTARY PUBLIC
FIRST JUDICIAL CIRCUIT, STATE OF HAWAII
MY COMMISSION EXPIRES ON MARCH 15, 2029

MELISSA TOYOOKA
NOTARY
PUBLIC
★ Comm. No. ★
09-89
STATE OF HAWAII




1 of 1

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER
FEB 25, 2026 07:56 AM

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

IN THE STATE COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

**Marvin Haven**

Case No.:    **26SV00145**

*Plaintiff/Petitioner*

vs.

**Entertainment Partners, LLC Armored, Films, LLC, Ritzi Inc., Durham Stunts, Inc., Minx Nation Productions, Inc., A & A Ward Group, Inc., Großlauf Action Inc., Performance Stunts, LLC, Ritzi, Steve, Geddings, Lex, Sklov, Corey, Ward, Andrew, Waddle, Greg, Groff, Jef, Adams, Keith**

*Defendant/Respondent*

**AFFIDAVIT OF SERVICE OF SUMMONS; COMPLAINT FOR DAMAGES; PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LEX GEDDINGS; RULE 5.2 CERTIFICATE OF SERVICE**

Received by **Stine Atuokwu**, on the **18th day of February, 2026 at 1:28 PM** to be served upon **Lex Geddings** at **110 Berry Ln, Canton, Cherokee County, GA 30115**.
On the **18th day of February, 2026 at 6:07 PM, I, Stine Atuokwu, SERVED Lex Geddings at 110 Berry Ln, Canton, Cherokee County, GA 30115** in the manner indicated below:

**SUBSTITUTE SERVICE**, by personally leaving **1** copy(ies) of the above-listed documents at his/her usual place of abode with **Leesa Pate**, who is 15 years of age or older, a person residing therein of who confirmed the Defendant resides at the above address and informed that person of the contents thereof.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to an individual who identified themselves as the subject's spouse with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 55-65 years of age, 5'4"-5'6" tall and weighing 120-140 lbs.**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: *Stine Atuokwu*              N/A          **2-24-26**

Stine Atuokwu              Server ID #              Date

Notary Public: Subscribed and sworn before me on this **24** day of **FEB** in the year of 20 **26**
Personally known to me ✓ or _____ identified by the following document:

_____
Notary Public (Legal Signature)

ROXANNE OKOREFE
COMMISSION EXPIRES
NOTARY PUBLIC
JANUARY 26, 2029
BANKS COUNTY, GEORGIA

---

REF: **15873425**

Page 1 of 1
Tracking #: **0210400759**

Scanned with CamScanner

**ORIGINAL**

FILED
Annetta D. Stembridge, Clerk

JUN 30 2025

Superior & State Court
Douglas County, GA

IN THE SUPERIOR COURT OF DOUGLAS COUNTY
STATE OF GEORGIA

In re application of
for appointment as a Permanent Process Server
for the Superior Court of Douglas County

## ORDER APPOINTING PERMANENT PROCESS SERVER

The court having read the application of Stine O Atuokwu        for

appointment as a permanent process server for the Douglas Superior Court

pursuant to Ga. Code § 9-11-4, it is ordered said person is so appointed

until the expiration of the applicant's current process server certification as

issued by the Georgia Administrative Office of the Courts which expiration

date is  June 24, 2028       , unless sooner revoked.

So ordered this  June  27  ,  2025.

Cynthia C. Adams

Chief Judge
Superior Court

RECORDED IN BOOK 77 PAGE 419
DATE 06/30/2025

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**FEB 26, 2026 05:41 PM**

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

MARVIN HAVEN,

          Plaintiff,

      v.

ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

          Defendants.

CIVIL ACTION FILE NO.
26SV00145

## NOTICE OF APPEARANCE OF DANIEL F. BARRETT

Daniel F. Barrett, attorney with the law firm, Fisher & Phillips, LLP, hereby enters his appearance as attorney of record for Defendant Entertainment Partners Services, LLC ("Defendant EP") in this action.[1] Defendant EP requests that Daniel F. Barrett be listed by the Court as attorney of record in this matter and be noticed via the Court's Odyssey/PeachCourt electronic filing system of all activity in this case.

Respectfully submitted this 26th day of February 2026.

---

[1] Defendant EP contends that it has been misidentified in the Complaint as "Entertainment Partners, LLC."

*/s/ Daniel F. Barrett*     
Daniel F. Barrett
Georgia Bar No. 475652
dbarrett@fisherphillips.com
**FISHER & PHILLIPS, LLP**
1230 Peachtree Street, N.E.
Suite 3300
Atlanta, GA 30309
(404) 231-1400
(404) 240-4249 (Facsimile)

*Attorney for Defendant Entertainment
Partners Services, LLC*

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

MARVIN HAVEN,

        Plaintiff,

  v.

ENTERTAINMENT PARTNERS,
LLC; ARMORED FILMS, LLC;
STEVE RITZI; LEX GEDDINGS;
COREY SKLOV; ANDREW WARD;
GREG WADDLE; JEF GROFF;
KEITH ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT
ACTION, INC.; JOHN DOE A-Z; and
ABC CORPORATIONS A-Z,

        Defendants.

CIVIL ACTION FILE
NO. 26SV00145

## CERTIFICATE OF SERVICE

I certify that on February 26, 2026, I served a true and correct copy of the foregoing **NOTICE OF APPEARANCE OF DANIEL F. BARRETT** by filing a true and correct copy of the same with the Court's Odyssey/PeachCourt e-filing system, which will automatically provide electronic service to all attorneys of record, and by U.S. Mail to the following:

ARMORED FILMS, LLC
c/o Legallnc Corporate Services, Inc.,
1870 The Exchange, STE 200#44
Atlanta, Georgia 30339

STEVE RITZI
235 Forrest Lake Drive
Atlanta, Georgia 30327

LEX GEDDINGS
110 Berry Lane
Canton, Georgia 30115

COREY SKLOV
1982 Lansdowne Avenue
Los Angeles, California 90032

ANDREW WARD
6316 Lomitas Drive
Los Angeles, California 90042

GREG WADDLE
5362 Muirwood Place
Powder Springs, Georgia 30127

JEF GROFF
11613 Teddington Court
Bentonville, Arkansas 72712

KEITH ADAMS
8383 Wilshire Boulevard, Ste. 260
Beverly Hills, California 90211

MINX NATION PRODUCTIONS, INC.
c/o Miranda Pacheco
1982 Lansdowne Avenue
Los Angeles, CA 90032

A&A WARD GROUP, INC.
c/o Andrew Ward
6316 Lomitas Drive
Los Angeles, California 90042

DURHAM STUNTS, INC.
c/o Lex Geddings
2514 Gates Circle, Apt 22
Baton Rouge, Louisiana 70809

RITZI, INC.
c/o Steven Ritzi
17 Tiffany Circle
Ormond Beach, Florida 32174

PERFORMANCE STUNTS, LLC
c/o Keith Adams
8383 Wilshire Boulevard, Ste 260
Beverly Hills, California 90211

GROFFUNIT ACTION, INC.
c/o United States Corporation Agents, Inc.
1003 Bishop Street, Ste 2700
Honolulu, Hawaii 96813


*/s/ Daniel F. Barrett*
Daniel F. Barrett
Georgia Bar No. 475652
dbarrett@fisherphillips.com
**FISHER & PHILLIPS, LLP**
1230 Peachtree Street, N.E.
Suite 3300
Atlanta, GA 30309
(404) 231-1400
(404) 240-4249 (Facsimile)

*Attorney for Defendant Entertainment Partners Services, LLC*

- 3 -

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**FEB 26, 2026 05:41 PM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

MARVIN HAVEN,

        Plaintiff,

    v.

ENTERTAINMENT PARTNERS, LLC; ARMORED FILMS, LLC; STEVE RITZI; LEX GEDDINGS; COREY SKLOV; ANDREW WARD; GREG WADDLE; JEF GROFF; KEITH ADAMS; MINX NATION PRODUCTIONS, INC.; A&A WARD GROUP, INC.; DURHAM STUNTS, INC.; RITZI, INC.; PERFORMANCE STUNTS, LLC; GROFFUNIT ACTION, INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

        Defendants.

CIVIL ACTION FILE NO.
26SV00145

## STIPULATION TO EXTEND TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT

Plaintiff Marvin Haven and Defendant Entertainment Partners Services, LLC ("Defendant EP") stipulate, under O.C.G.A. § 9-11-6(b), to an extension of time through and including March 16, 2026, for Defendant EP to file and serve an answer, motion, or other responsive pleading—if any—to Plaintiff's Complaint.[1] Plaintiff and Defendant EP timely file this stipulation before the existing deadline of March 2, 2026, for Defendant EP to respond to the Complaint.

---

[1] Defendant EP contends that it has been misidentified in the Complaint as "Entertainment Partners, LLC."

Respectfully submitted this 26th day of February 2026.


/s/ *Blake L. Kilday*                              /s/ *Daniel F. Barrett*

Blake L. Kilday                                    Daniel F. Barrett

Georgia Bar No. 376645                             Georgia Bar No. 475652

Blake.kilday@forthepeople.com                      dbarrett@fisherphillips.com

**MORGAN & MORGAN**                                **FISHER & PHILLIPS, LLP**

**ATLANTA, PLLC**                                  1230 Peachtree Street, N.E.

11605 Haynes Bridge Road                           Suite 3300

Suite 490                                          Atlanta, GA 30309

Alpharetta, GA 30009                               (404) 231-1400

(404) 965-1966                                     (404) 240-4249 (Facsimile)

(404) 496-7364 (Facsimile)


*Attorney for Plaintiff*                           *Attorney for Defendant Entertainment
                                                   Partners Services, LLC*

## IN THE STATE COURT OF DOUGLAS COUNTY
## STATE OF GEORGIA

MARVIN HAVEN,

        Plaintiff,

  v.

ENTERTAINMENT PARTNERS,
LLC; ARMORED FILMS, LLC;
STEVE RITZI; LEX GEDDINGS;
COREY SKLOV; ANDREW WARD;
GREG WADDLE; JEF GROFF;
KEITH ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT
ACTION, INC.; JOHN DOE A-Z; and
ABC CORPORATIONS A-Z,

        Defendants.

CIVIL ACTION FILE
NO. 26SV00145

## CERTIFICATE OF SERVICE

I certify that on February 26, 2026, I served true and correct copies of the foregoing **STIPULATION TO EXTEND TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT** by filing a true and correct copy of the same with the Court's Odyssey/PeachCourt e-filing system, which will automatically provide electronic service to all attorneys of record, and by U.S. Mail to the following:

ARMORED FILMS, LLC
c/o Legallnc Corporate Services, Inc.,
1870 The Exchange, STE 200#44
Atlanta, Georgia 30339

STEVE RITZI
235 Forrest Lake Drive
Atlanta, Georgia 30327

LEX GEDDINGS
110 Berry Lane
Canton, Georgia 30115

COREY SKLOV
1982 Lansdowne Avenue
Los Angeles, California 90032

ANDREW WARD
6316 Lomitas Drive
Los Angeles, California 90042

GREG WADDLE
5362 Muirwood Place
Powder Springs, Georgia 30127

JEF GROFF
11613 Teddington Court
Bentonville, Arkansas 72712

KEITH ADAMS
8383 Wilshire Boulevard, Ste. 260
Beverly Hills, California 90211

MINX NATION PRODUCTIONS, INC.
c/o Miranda Pacheco
1982 Lansdowne Avenue
Los Angeles, CA 90032

A&A WARD GROUP, INC.
c/o Andrew Ward
6316 Lomitas Drive
Los Angeles, California 90042

DURHAM STUNTS, INC.
c/o Lex Geddings

- 2 -

2514 Gates Circle, Apt 22
Baton Rouge, Louisiana 70809

RITZI, INC.
c/o Steven Ritzi
17 Tiffany Circle
Ormond Beach, Florida 32174

PERFORMANCE STUNTS, LLC
c/o Keith Adams
8383 Wilshire Boulevard, Ste 260
Beverly Hills, California 90211

GROFFUNIT ACTION, INC.
c/o United States Corporation Agents, Inc.
1003 Bishop Street, Ste 2700
Honolulu, Hawaii 96813

*/s/ Daniel F. Barrett*
Daniel F. Barrett
Georgia Bar No. 475652
dbarrett@fisherphillips.com
**FISHER & PHILLIPS, LLP**
1230 Peachtree Street, N.E.
Suite 3300
Atlanta, GA 30309
(404) 231-1400
(404) 240-4249 (Facsimile)

*Attorney for Defendant Entertainment Partners Services, LLC*

- 3 -

## AFFIDAVIT OF SERVICE

⊕ **EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
**BRIAN K. FORTNER**
**MAR 03, 2026 02:36 PM**

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**State of Georgia**                    **County of Douglas**        **State Court**

Case Number: 26SV00145

Plaintiff
MARVIN HAVEN,

Vs

Defendant
ENTERTAINMENT PARTNERS, LLC;
ARMORED FILMS, LLC; STEVE
RITZI; LEX GEDDINGS; COREY
SKLOV; ANDREW WARD; GREG
WADDLE; JEF GROFF; KEITH
ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT ACTION,
INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day of January 2026 to be served on **Andrew Ward 6316 Lomitas Drive Los Angeles, CA 90042.**

**I, Luis Verjan, being duly sworn, depose and say, that on the 13th day of February, 2026 at 9:55 AM I SUBSTITUTE** served **Andrew Ward** by delivering a true copy of the **SUMMONS, COMPLAINT FOR DAMAGES, PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ANDREW WARD, RULE 5.2 CERTIFICATE OF SERVICE,** to **Alexandra Ward,** spouse and co-resident at the address of **6316 Lomitas Drive Los Angeles, CA 90042.**

**Additional information pertaining to this Service:**
Latest status 02/13/26 9:55 am  FEMALE, 50+YRS, HISPANIC, 5-5; 140LBS, BROWN HAIR

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and have been appointed by the Court to serve process..

STATE OF CALIFORNIA, COUNTY OF ORANGE
Subscribed and Sworn to before me on the ___24th___ day of
February 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

_____
Luis Verjan
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077

CRYSTAL ODA
COMM. # 2478284
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES JAN. 2, 2028

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## AFFIDAVIT OF NON SERVICE

EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
BRIAN K. FORTNER
MAR 03, 2026 02:36 PM

Annetta D. Stembridge, Clerk
Douglas County, Georgia

**State of Georgia**                    **County of Douglas**          **State Court**

Case Number: 26SV00145

Plaintiff
MARVIN HAVEN,

Vs

Defendant
ENTERTAINMENT PARTNERS, LLC;
ARMORED FILMS, LLC; STEVE
RITZI; LEX GEDDINGS; COREY
SKLOV; ANDREW WARD; GREG
WADDLE; JEF GROFF; KEITH
ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT ACTION,
INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day January 2026 to be served on **Performance Stunts, LLC c/o: Keith Adams - Registered Agent 8388 Wilshire Blvd Suite 260 Beverly Hills, CA 90211.**

**I,** Roberto Zambrano Jr, being duly sworn, depose and say, that on the **9th day February, 2026 at 12:26 PM, I Non Served Performance Stunts, LLC c/o: Keith Adams - Registered Agent,** the **Summons; Complaint,** for the reasons detailed in the comments below

**Additional information pertaining to this Service:**
2/9/2026 12:26 pm Attempted Service. PER EMPLOYEE IN SUITE 260 THE SUBJECT AND BUSINESS IN QUESTION ARE UNKNOWN / THE BUSINESS LISTED ON THE OUTSIDE PLAQUE IS CALLED 'ACQUIRED

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and I have been appointed by this Court to serve process.

STATE OF CALIFORNIA, COUNTY OF ORANGE
Subscribed and Sworn to before me on the ____24____ day of
February 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

CRYSTAL ODA
COMM. # 2478284
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES JAN. 2, 2028

_____
Roberto Zambrano Jr
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## AFFIDAVIT OF NON SERVICE

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER
MAR 03, 2026 02:36 PM

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**State of Georgia**                    **County of Douglas**          **State Court**

Case Number: 26SV00145

Plaintiff
MARVIN HAVEN,

Vs

Defendant
ENTERTAINMENT PARTNERS, LLC;
ARMORED FILMS, LLC; STEVE
RITZI; LEX GEDDINGS; COREY
SKLOV; ANDREW WARD; GREG
WADDLE; JEF GROFF; KEITH
ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT ACTION,
INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day January 2026 to be served on **Keith Adams 8388 Wilshire Blvd Suite 260 Beverly Hills, CA 90211.**

**I,** Roberto Zambrano Jr, being duly sworn, depose and say, that on the **9h day February, 2026 at 12:26 PM, I Non Served Keith Adams, the Summons; Complaint for Damages; Plaintiff's First Set of Interrogatories and Request for Production of Documents to Defendant Keith Adams; Rule 5.2 Certificate of Service, Verified Petition for Declaratory Judgment, Case Initiation Form,** for the reasons detailed in the comments below

**Additional information pertaining to this Service:**
2/9/2026 12:26 pm Attempted Service. PER EMPLOYEE IN SUITE 260 THE SUBJECT AND BUSINESS IN QUESTION ARE UNKNOWN / THE BUSINESS LISTED ON THE OUTSIDE PLAQUE IS CALLED 'ACQUIRED

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and I have been appointed by this Court to serve process.

STATE OF CALIFORNIA, COUNTY OF ORANGE
Subscribed and Sworn to before me on the _____24_____ day of
February 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

_____
Roberto Zambrano Jr
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077

CRYSTAL ODA
COMM. # 2478284
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES JAN. 2, 2028

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## AFFIDAVIT OF SERVICE

⊕ EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**
BRIAN K. FORTNER
MAR 03, 2026 02:36 PM

*Annetta R. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**State of Georgia**                **County of Douglas**        **State Court**

Case Number: 26SV00145

Plaintiff
MARVIN HAVEN,

Vs

Defendant
ENTERTAINMENT PARTNERS, LLC;
ARMORED FILMS, LLC; STEVE
RITZI; LEX GEDDINGS; COREY
SKLOV; ANDREW WARD; GREG
WADDLE; JEF GROFF; KEITH
ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT ACTION,
INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day of January 2026 to be served on **A&A Ward Group, 6316 Lomitas Drive Los Angeles, CA 90042.**

**I, Luis Verjan, being duly sworn, depose and say, that on the 13th day of February, 2026 at 9:55 AM, I** Served **A&A Ward Group** by delivering a true copy of the **SUMMONS, COMPLAINT FOR DAMAGES ,** to: Alexandra Ward as **Authorized to Accept and Co-Owner** at the address of **6316 Lomitas Drive Los Angeles, CA 90042.**
**Additional information about this serve**
Latest status 02/13/26 9:55 AM  Served Alexandra Ward can be described as a FEMALE, 50+YRS, HISPANIC, 5-5; 140LBS, BROWN HAIR

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein.  I have personal knowledge of the facts stated herein and know them to be true.  I have no interest in the outcome of this action and am not related to any of the parties.  I am 18 or more years of age and have been appointed by this Court to serve process.

STATE OF CALIFORNIA, COUNTY OF ORANGE
Subscribed and Sworn to before me on the _____24th_____ day of
February 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

_____
Luis Verjan
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077

CRYSTAL ODA
COMM. # 2478284
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES JAN. 2, 2028

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

### AFFIDAVIT OF SERVICE

EFILED IN OFFICE
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

BRIAN K. FORTNER
MAR 03, 2026 02:36 PM

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**State of Georgia**              **County of Douglas**        **State Court**

Case Number: 26SV00145

Plaintiff
MARVIN HAVEN,

Vs

Defendant
ENTERTAINMENT PARTNERS, LLC;
ARMORED FILMS, LLC; STEVE
RITZI; LEX GEDDINGS; COREY
SKLOV; ANDREW WARD; GREG
WADDLE; JEF GROFF; KEITH
ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT ACTION,
INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day of January 2026 to be served on **Corey Sklov 1982 Lansdowne Ave Los Angeles, CA 90032.**

**I, Luis Verjan, being duly sworn, depose and say, that on the 13th day of February, 2026 at 9:55 AM I SUBSTITUTE served Corey Sklov by delivering a true copy of the SUMMONS, COMPLAINT FOR DAMAGES, PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT COREY SKLOV, RULE 5.2 CERTIFICATE OF SERVICE, to Patricia Namuli, co-resident at the address of 1982 Lansdowne Ave Los Angeles, CA 90032.**

**Additional information pertaining to this Service:**
Latest status 02/13/26 11:32 am  40+YRS, FEMALE, BLACK, 5-5, 160LBS, BLACK HAIR

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of this action and am not related to any of the parties. I am 18 or more years of age and have been appointed by the Court to serve process..

STATE OF CALIFORNIA, COUNTY OF ORANGE
Subscribed and Sworn to before me on the ___24th___ day of
February 2026 by the affiant who is personally known to me.


_____
NOTARY PUBLIC

_____
Luis Verjan
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077



CRYSTAL ODA
COMM. # 2478284
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES JAN. 2, 2028

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

## AFFIDAVIT OF SERVICE

**EFILED IN OFFICE**
CLERK OF STATE COURT
DOUGLAS COUNTY, GEORGIA

**26SV00145**

**BRIAN K. FORTNER**
**MAR 05, 2026 03:14 PM**

*Annetta D. Stembridge*
Annetta D. Stembridge, Clerk
Douglas County, Georgia

**State of Georgia**                    **County of Douglas**          **State Court**

Case Number: 26SV00145

Plaintiff
MARVIN HAVEN,

Vs

Defendant
ENTERTAINMENT PARTNERS, LLC;
ARMORED FILMS, LLC; STEVE
RITZI; LEX GEDDINGS; COREY
SKLOV; ANDREW WARD; GREG
WADDLE; JEF GROFF; KEITH
ADAMS; MINX NATION
PRODUCTIONS, INC.; A&A WARD
GROUP, INC.; DURHAM STUNTS,
INC.; RITZI, INC.; PERFORMANCE
STUNTS, LLC; GROFFUNIT ACTION,
INC.; JOHN DOE A-Z; and ABC CORPORATIONS A-Z,

For:
B Kilday
Morgan & Morgan

Received by Perma Investigations on the 27th day of January 2026 to be served on **Minx Nation Productions Inc, c/o RA Miranda Pacheco 1982 Lansdowne Ave Los Angeles, CA 90032.**

I, Luis Verjan, being duly sworn, depose and say, that on the **13th** day of February, 2026 at 11:32 AM,
I Served **Minx Nation Productions Inc, c/o RA Miranda Pacheco** by delivering a true copy of the
**SUMMONS, COMPLAINT FOR DAMAGES ,** to: Patricia Namuli as **Authorized to Accept** at the
address of **1982 Lansdowne Ave Los Angeles, CA 90032.**
**Additional information about this serve**
Latest status 02/13/26 11:32 AM  Served Patricia Namuli can be described as a40+YRS, FEMALE,
BLACK, 5-5, 160LBS, BLACK HAIR

I am an agent of Perma Investigations and am competent in all respects to testify regarding the matters set
forth herein.  I have personal knowledge of the facts stated herein and know them to be true.  I have no
interest in the outcome of this action and am not related to any of the parties.  I am 18 or more years of age
and have been appointed by this Court to serve process.

STATE OF CALIFORNIA, COUNTY OF ORANGE
Subscribed and Sworn to before me on the ____24TH____ day of
February 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

_____
Luis Verjan
Process Server

Perma Investigations
PO Box 1742
Roswell, GA 30077

CRYSTAL ODA
COMM. # 2478284
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES JAN. 2, 2028

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.